Carolyn Hunt Cottrell (SBN 166977)
Caroline N. Cohen (SBN 278154)
Kristabel Sandoval (SBN 323714)
Andrew D. Weaver (SBN 318935)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105
ccottrell@schneiderwallace.com
ccohen@schneiderwallace.com
ksandoval@schneiderwallace.com
aweaver@schneiderwallace.com

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RITO LOPEZ, on behalf of himself and the putative Class members;<br><br>   Plaintiff,<br><br>vs.<br><br>EUROFINS SCIENTIFIC, INC., ENVIRONMENTAL SAMPLING SUPPLY, INC., TESTAMERICA LABORATORIES, INC., and DOES 1-10, inclusive.<br><br>   Defendants. | Case No. 3:21-cv-08652-LB<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: June 22, 2023<br>Time: 9:30 a.m.<br>Courtroom: B<br>Judge: Hon. Laurel Beeler |

1    TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF

2    RECORD:

3    NOTICE IS HEREBY GIVEN that on June 22, 2023, at 9:30 a.m., or as soon thereafter as the

4    Court may hear them, in Courtroom B, before Hon. Laurel Beeler of the United States District Court,

5    Northern District of California, Plaintiff Rito Lopez, on behalf of himself and all others similarly

6    situated ("Plaintiff"), will and hereby does move the Court for preliminary approval of the Class

7    Action and Private Attorneys General Act ("PAGA") Settlement Agreement and Release (the

8    "Settlement Agreement" or the "Settlement," attached as **Exhibit A** to the accompanying Declaration

9    of Carolyn Hunt Cottrell). The Settlement resolves all of the claims in this action on a class basis. In

10   particular, Plaintiff moves for an order:

11       (1)    Granting preliminary approval of the Settlement Agreement;

12       (2)    Conditionally certifying the Settlement Class for settlement purposes;

13       (3)    Approving the proposed schedule and procedure for completing the final approval

14   process for the Settlement, including setting the Final Approval Hearing;

15       (4)    Approving the Class Notice as it pertains to the Settlement Class (attached as **Exhibit**

16   **1** to the Settlement Agreement) and the Reminder Letter (attached as **Exhibit 4** to the Settlement

17   Agreement);

18       (5)    Preliminarily appointing and approving Schneider Wallace Cottrell Konecky LLP as

19   Class Counsel for the Settlement Class;

20       (6)    Preliminarily approving Class Counsel's request for attorneys' fees and costs;

21       (7)    Preliminarily appointing and approving Plaintiff Rito Lopez as Class Representative

22   for the Settlement Class;

23       (8)    Preliminarily appointing and approving Phoenix Class Action Administration

24   Solutions as the Settlement Administrator for the Settlement Class; and

25       (9)    Authorizing the Settlement Administrator to mail and email the approved Class Notice

26   to the Settlement Class as set forth in the Settlement Agreement.

27   Plaintiff brings this Motion pursuant to Federal Rule of Civil Procedure 23(e). The Motion is

28

1    based on this notice and Memorandum of Points and Authorities, the Declaration of Carolyn Hunt

2    Cottrell, the Declaration of Plaintiff Rito Lopez, and all other records, pleadings, and papers on file in

3    the consolidated action and such other evidence or argument as may be presented to the Court at the

4    hearing on this Motion. Plaintiff also submits a Proposed Order Granting Preliminary Approval of

5    Class Action Settlement with his moving papers.

6

7    Date: May 8, 2023                          Respectfully submitted,

8

9                                              */s/ Andrew D. Weaver*
                                               Carolyn Hunt Cottrell
10                                             Caroline N. Cohen
                                               Kristabel Sandoval
11                                             Andrew D. Weaver
                                               SCHNEIDER WALLACE
12                                             COTTRELL KONECKY LLP

13                                             *Attorneys for Plaintiff and the Putative Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1

**TABLE OF CONTENTS**

2

I.      INTRODUCTION ........................................................................................................... 1

3

II.     FACTUAL BACKGROUND ......................................................................................... 1

4

III.    PROCEDURAL HISTORY ........................................................................................... 3

5

      A.      Plaintiff's Claims ................................................................................................. 3

6

      B.      Discovery ............................................................................................................. 4

7

      C.      Mediation ............................................................................................................. 4

8

IV.     THE SETTLEMENT ...................................................................................................... 5

9

      A.      Basic Terms and Value of the Settlement ........................................................... 5

10

      B.      Class Definition ................................................................................................... 8

11

      C.      Allocation and Awards ........................................................................................ 8

12

      D.      Scope of Release ................................................................................................. 9

13

      E.      Settlement Administration ................................................................................. 10

14

V.      ARGUMENT ............................................................................................................... 10

15

      A.      The Court Should Grant Preliminary Approval of the Settlement ..................... 10

16

      B.      The Court Should Certify the Settlement Class ................................................. 11

17

            1.      The Class Members are numerous and ascertainable. ............................. 11

18

            2.      Plaintiff's claims raise common issues of fact or law. ............................ 12

19

            3.      Plaintiff's claims are typical of the claims of the Class. .......................... 12

20

            4.      Plaintiff and Class Counsel will adequately represent the Class ............. 12

21

            5.      The Rule 23(b)(3) requirements for class certification are also met. ....... 13

22

      C.      The Settlement Is Fair, Reasonable, and Adequate ........................................... 14

23

            1.      The terms of the Settlement are fair, reasonable, and adequate. .............. 15

24

            2.      The PAGA Allocation is also reasonable. ............................................... 16

25

            3.      The Parties' discovery enabled them to make informed decisions regarding

26

                    settlement…….................................................................................... 18

27

            4.      Litigating the Action not only would delay recovery, but would be expensive,
                    time consuming, and involve substantial risk. ......................................... 18

28

iii

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al.*, Case No. 3 :21-cv-08652-LB

5.     The Settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel. ................................................ 19

D.     The Service Award to Representative Plaintiff is Reasonable ........................... 20

E.     The Requested Attorneys' Fees and Costs are Reasonable. ............................... 21

F.     The Proposed Notice of Settlement and Claims Process Are Reasonable .......... 23

G.     The Court Should Approve the Proposed Implementation Schedule. ................. 25

VI.     CONCLUSION ............................................................................................................. 25

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1

2

### TABLE OF AUTHORITIES

**Cases**

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................................................... 14

*Balderas v. Massage Envy Franchising, LLP*,
   2014 WL 3610945 (N.D. Cal. July 21, 2014)............................................................... 15

*Benton v. Telecom Network Specialists, Inc.*,
   220 Cal.App.4th 701 (Cal. App. 2014) ........................................................................ 14

*Boyd v. Bechtel Corp.*,
   485 F.Supp. 610 (N.D. Cal. 1979) ............................................................................... 18

*Carter v. Anderson Merchandisers, LP*,
   2010 WL 1946784 (C.D. Cal. May 11, 2010) ............................................................. 19

*Caudle v. Sprint/United Mgmt. Co.*,
   2018 WL 6618280 (N.D. Cal. Dec. 18, 2018) ............................................................. 11

*Churchill Village, LLC. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................................. 15, 23

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ...................................................................................................... 23

*Fry v. Hayt, Hayt & Landau*,
   198 F.R.D. 461 (E.D. Pa. 2000)............................................................................. 12, 13

*Gilmore v. McMillan-Hendryx Inc.*,
   Case No. 1:20-cv-00483-HBK, 2022 U.S. Dist. LEXIS 11032 (E.D. Cal. Jan. 20, 2022) ............ 17

*Guilbaud v. Sprint/United Mgmt Co., Inc.*,
   No. 3:13-cv-04357-VC (N.D. Cal. Apr. 15, 2016) ...................................................... 20

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)............................................................................... passim

*Haralson v. U.S. Aviation Servs. Corp.*,
   383 F. Supp. 3d 959 (N.D.Cal. 2019)........................................................................... 17

*Hartley v. On My Own, Inc.*,
   2020 U.S. Dist. LEXIS 154315, 2020 WL 5017608 (E.D. Cal. Aug. 25, 2020).......... 17

*Ikonen v. Hartz Mountain Corp.*,
   122 F.R.D. 258 (S.D. Cal. 1988).................................................................................. 11

v

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

*In re Activision Sec. Litig.*,
 723 F.Supp. 1373 (N.D. Cal. 1989)........................................................................22

In re Autozone, Inc. Wage & Hour Emp't  Practices Litig.,
 2019 WL 4898684 (9th Cir. Oct. 4, 2019) .............................................................19

*In re AutoZone, Inc., Wage & Hour Emp't Practices Litig.*,
 289 F.R.D. 526 (N.D. Cal. 2012) ...........................................................................19

*In re Mego Fin. Corp. Sec. Litig.*,
 213 F.3d 454 (9th Cir. 2000) ..................................................................................15

*In re Syncor ERISA Litig.*,
 516 F.3d 1095 (9th Cir. 2008)................................................................................15

*Jordan v. NCI Grp., Inc.*,
 EDCV 16-1701 JVS (SPx) 2018 U.S. Dist. LEXIS 25297 (C.D. Cal. Jan. 5, 2018)....................17

*Kilbourne v. Coca-Cola Co.*,
 2015 WL 5117080 (S.D. Cal. July 29, 2015) .........................................................19

*Knight v. Red Door Salons, Inc.*,
 2009 WL 248367 (N.D. Cal. 2009).........................................................................22

*Laffitte v. Robert Half International, Inc.*,
 1 Cal.5th 480 (2016)...............................................................................................21

*Lewis v. Starbucks Corp.*,
 2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) .......................................................18

*Lynn's Food Stores v. US Dep't of Labor*,
 679 F.2d (11 Cir. 1982) ..........................................................................................15

*Ma v. Covidien Holding, Inc.*,
 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ...........................................................15

*Mangold v. Cal. Pub. Utils. Comm'n*,
 67 F.3d 1470 (9th Cir. 1995) ..................................................................................21

*Monterrubio v. Best Buy Stores, L.P.*,
 291 F.R.D. 443 (E.D. Cal. 2013) ............................................................................18

*Mullane v. Cent. Hanover Bank & Trust Co.*,
 339 U.S. 306 (1950) ................................................................................................23

*Noyes v. Kelly Servs., Inc.*,
 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008)..........................................................22

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ........................................................................ 15, 16

*Otey v. Crowdflower, Inc.*,
Case No. 12-cv-05524-JST, 2015 WL 6091741 (N.D. Cal., Oct. 16, 2015)................................ 15

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ............................................................................... 23

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000)...................................................................... 22

*Ramirez v. Benito Valley Farms, LLC*,
Case No. 16-CV-04708-LHK, 2017 U.S. Dist. LEXIS 137272 (N.D. Cal. Aug. 25, 2017).......... 16

*Regino Primitivo Gomez v. H&R Gunlund Ranches, Inc.*,
Case No. CV F 10-1163-LJO, 2011 WL 5884224 (E.D. Cal. 2011) ............................ 21

*Rodriguez v. Disner*,
688 F.3d 645 (9th Cir. 2012) ...................................................................... 21

*Romero v. Producers Dairy Foods, Inc.*,
235 F.R.D. 474 (E.D. Cal. 2006) ................................................................. 11

*Shaw v. AMN Healthcare, Inc.*,
326 F.R.D. 247 (N.D. Cal. 2018) ................................................................. 11

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) ..................................................................... 23

*Soto v. O.C. Communications, Inc.*,
Case No. 3:17-cv-00251-VC (N.D. Cal. Oct. 23, 2019) ........................................ 20, 21

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ................................................................. 20, 22

*Stovall-Gusman v. W.W. Granger, Inc.*,
2015 WL 3776765 (N.D. Cal. June 17, 2015) ..................................................... 15

*Van Liew v. North Star Emergency Serv., Inc.*,
No. RG17876878 (Alameda Co. Super. Ct., Dec. 11, 2018)....................................... 21

*Vargas v. Cent. Freight Lines, Inc.*,
Case No. 16-cv-00507-JLB, 2017 U.S. Dist. LEXIS 157976 (S.D. Cal. Sep. 25, 2017)............... 16

*Vasquez v. Coast Valley Roofing*,
266 F.R.D. 482 (E.D. Cal. 2010) ................................................................. 22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Viceral v. Mistras Grp., Inc.*,
   2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ............................................................. 15

*Vizcaino v. Microsoft Corp.*,
   290 F. 3d 1043 (9th Cir. 2002) .................................................................................... 21

*Wang v. Chinese Daily News, Inc.*,
   737 F.3d 538 (9th Cir. 2013) ................................................................................. 12, 13

*Wren v. RGIS Inventory Specialists*,
   2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ..................................................15, 19, 21

*Yokoyama v. Midland Nat. Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2010) ..................................................................................... 13

*York v. Starbucks Corp.*,
   2011 WL 8199987 (C.D. Cal. Nov. 23, 2011) ............................................................. 19

**Statutes and Regulations**

Fed. R. Civ. P. 23 .....................................................................................1, 10, 13, 23

**Other Authorities**

Conte, Newberg on Class Actions (3rd Ed. 1992) ............................................................. 24

Posner, Economic Analysis of the Law (4th ed. 1992) ...................................................... 22

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3

Plaintiff Rito Lopez on behalf of himself and all others similarly situated ("Plaintiff"), having

4

reached a class-wide settlement with Defendants Eurofins Scientifics, Inc. ("Eurofins"),

5

Environmental Sampling Supply, Inc. ("ESS"), and TestAmerica Laboratories, Inc. ("TestAmerica")

6

(collectively "Defendants"), seeks preliminary approval of the Settlement.  After nearly a year of

7

litigation, including discovery, amendments to the complaints, outreach to class members, a mediation,

8

and extensive arm's-length negotiations between counsel, the Parties have reached a global settlement

9

of the Actions, memorialized in the proposed Settlement Agreement and Release ("Settlement").[1]

10

Plaintiff brought this class and Private Attorneys' General Act ("PAGA") action on behalf of

11

approximately 579 current and former hourly, non-exempt workers employed by Defendants in

12

California between November 5, 2017, and Preliminary Approval or June 1, 2023, whichever is sooner

13

(the "Class Members"). Plaintiff contends that Defendants violated California wage and hour laws by

14

failing to compensate Class Members for time spent undergoing COVID-19 screenings and waiting in

15

line to clock back in after lunch, among other wage and hour allegations.

16

The Settlement resolves the Class claims for a total non-reversionary settlement of

17

$1,700,000.00. The Settlement provides excellent average recoveries of approximately $1,744.96 per

18

Settlement Class Member. With this Settlement, the Parties are resolving numerous wage and hour

19

claims unlikely to have been prosecuted as individual actions. The Settlement is fair, reasonable, and

20

adequate in all respects, and Plaintiff respectfully requests that the Court grant the requested approval.

21

## II.   FACTUAL BACKGROUND

22

Defendant Eurofins is a Delaware corporation headquartered in Iowa and doing business in

23

California that provides analytical testing services to clients in multiple industries. (Cottrell Decl., ¶

24

9). Defendant ESS is a Delaware corporation headquartered in California and doing business in

25

---

26

[1] The Settlement is attached as **Exhibit A** to the accompanying Declaration of Carolyn Hunt Cottrell
("Cottrell Decl.") in Support of Plaintiff's Motion for Preliminary Approval of Class and PAGA

27

Representative Action Settlement. The Settlement was submitted to the LWDA pursuant to pursuant
to Labor Code § 2699(l)(2) on May 18, 2023. (Cottrell Decl., ¶ 100).

28

California that manufactures products for environmental sampling and analysis. (Cottrell Decl., ¶ 9.) TestAmerica is a Delaware corporation headquartered in Ohio and doing business in California, and an analytical laboratory for environmental testing services in the United States. (Cottrell Decl., ¶ 9.)

Plaintiff Lopez currently works for Defendants as a packer in Oakland, California. (Cottrell Decl., ¶ 8). He began employment in January 1990 and is classified as an hourly, non-exempt employee. (Cottrell Decl., ¶ 8). The Class Members are all current or former hourly, non-exempt employees of Defendants throughout California, between November 5, 2017, and Preliminary Approval or June 1, 2023, whichever is sooner. (Cottrell Decl., ¶ 8; Settlement Agreement, ¶ 2c). The Class is comprised of approximately 579 individuals. (Cottrell Decl., ¶ 8).

As alleged in the operative complaint and amended letter to the LWDA, Plaintiff alleges that he and other Class Members experience wage and hour violations in their work for Defendants. (Cottrell Decl., ¶ 10).  In particular, Plaintiff alleges that Defendants fail to compensate employees for time spent undergoing COVID-19 screenings prior to clocking in for work. (Cottrell Decl., ¶ 11).  He also alleges that Defendants require employees to spend at least one minute, and often longer, going through a line, undergoing temperature checks, and answering COVID-19 screening questionnaires before the beginning of each shift. (Cottrell Decl., ¶ 11).  Plaintiff contends this time is unrecorded and therefore uncompensated. (Cottrell Decl., ¶ 11).

Additionally, Plaintiff further alleges that he and other Class Members are not compensated for time spent waiting in line prior to clocking back in after their lunch breaks. (Cottrell Decl., ¶ 12). Plaintiff alleges that employees must wait in line at least two minutes before clocking back in after their meal breaks and before their afternoon shifts. (Cottrell Decl., ¶ 12). Plaintiff alleges that this time spent in lines was unrecorded and therefore uncompensated. (Cottrell Decl., ¶ 12).

Plaintiff further alleges that Defendants utilize and apply the COVID-19 screening protocols, policies, and practices across all of Defendants' facilities in California. (Cottrell Decl., ¶ 13). Plaintiff also alleges that Defendants institute a policy of not compensating employees while waiting in line to clock in after meal breaks across all of Defendants' facilities in California. (Cottrell Decl., ¶ 13).

In this lawsuit, Plaintiff asserts Labor Code claims for failure to pay for all hours worked,

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

overtime, minimum wages, and meal and rest break violations, on a putative class and PAGA basis. (Cottrell Decl., ¶ 14). Plaintiff also alleges derivative violations for failure to provide accurate, itemized wage statements and failure to pay all amounts owed following voluntary or involuntary termination. (Cottrell Decl., ¶ 14). Lastly, Plaintiff alleges violations of the California Business and Professions Code § 17200 as a result of the claims alleged above. (Cottrell Decl., ¶ 14).

## III.   PROCEDURAL HISTORY

### A.   Plaintiff's Claims

Plaintiff Lopez provided notice to the Labor and Workforce Development Agency ("LWDA") when he filed a PAGA notice on October 25, 2021. (Cottrell Decl., ¶ 15). Plaintiff filed his initial Class Action Complaint on November 5, 2021, in this Court, alleging claims under the California Labor Code and Unfair Competition Law for: (1) failure to pay for all hours worked; (2) failure to pay minimum wage; (3) failure to pay overtime wages; (4) failure to provide timely and accurate itemized wage statements; and (5) violations of the California Unfair Competition Law. (Cottrell Decl., ¶ 16). Plaintiff then filed an initial PAGA Complaint against Eurofins on December 30, 2021, in Alameda Superior Court, Case Number 21CV004840, on behalf of himself and Aggrieved Employees after the 65-day LWDA waiting period. (Cottrell Decl., ¶ 17).

On February 7, 2022, Plaintiff filed an amended PAGA notice adding ESS and TestAmerica as Defendants. (Cottrell Decl., ¶ 18). Subsequently on February 14, 2022, Plaintiff filed his First Amended PAGA Complaint in Alameda Superior Court adding ESS and TestAmerica as Defendants. (Cottrell Decl., ¶ 19). On February 14, 2022, Plaintiff also filed a First Amended Class Action Complaint in this Court adding ESS and TestAmerica as Defendants. (Cottrell Decl., ¶ 20).

On February 28, 2022, Eurofins moved to dismiss the First Amended Class Action Complaint. (Cottrell Decl., ¶ 21). On March 14, 2021, Plaintiff filed an opposition to such motion. (Cottrell Decl., ¶ 22). On March 30, 2022, Eurofins and TestAmerica file an Answer to the First Amended PAGA Complaint. (Cottrell Decl., ¶ 23). On April 4, 2022, the parties met and conferred via telephone call and Defendants expressed their interest in mediation and informal discovery. (Cottrell Decl., ¶ 24).

On May 2, 2022, ESS and TestAmerica moved to dismiss the First Amended Class Action

1  Complaint. (Cottrell Decl., ¶ 25). On May 16, 2022, Plaintiff filed an opposition to this motion.

2  (Cottrell Decl., ¶ 26). On June 6, 2022, the parties ultimately agreed to mediate before Gail Andler on

3  September 20, 2022, and submitted a stipulation requesting to vacate the hearing on the motion to

4  dismiss pending the mediation. (Cottrell Decl., ¶ 27).

5  On May 9, 2023, Plaintiff filed an amended PAGA letter with the LWDA pursuant to

6  Paragraph 16 of the Settlement. (Cottrell Decl., ¶ 99). On May 10, 2023, Plaintiff filed a stipulation to

7  amend the complaint, which among other changes, added in claims under PAGA which were

8  previously filed in State Court. (Cottrell Decl., ¶ 99). The Second Amended Complaint is now before

9  the Court as the operative complaint in this Action. (Cottrell Decl., ¶ 99).

10  **B.    Discovery**

11  The parties engaged in extensive discovery throughout the litigation and in preparation for

12  mediation. (Cottrell Decl., ¶ 28). In the lead-up to mediation on September 2, 2022, Defendants

13  produced significant documents and information. (Cottrell Decl., ¶ 28.) The production included time-

14  punch records (*i.e.,* clock-in and clock-out times) and payroll information, and COVID-19 policies

15  applicable to hourly, non-exempt employees. (Cottrell Decl., ¶ 28.) Class Counsel used this

16  information to perform a detailed investigation of Defendants' timekeeping and payroll policies and

17  practices, which included a comprehensive damages analysis. (Cottrell Decl., ¶ 29).

18  **C.    Mediation**

19  On September 20, 2022, the parties participated in a mediation before Gail Andler, a highly

20  skilled mediator with years of experience in wage and hour actions. (Cottrell Decl., ¶ 30).  With the

21  assistance of Ms. Andler, counsel engaged in serious and arm's-length negotiations. (Cottrell Decl., ¶

22  30.) Although the parties did not reach a deal the day of the mediation, the parties continued

23  negotiating afterwards with the mediator's assistance. (Cottrell Decl., ¶ 30.) The mediator issued a

24  mediator's proposal of $1,700,000.00, which was accepted by the parties on September 29, 2022.

25  (Cottrell Decl., ¶ 31).

26  After the agreement to settle, counsel for the Parties agreed that the global gross settlement

27  would resolve all the claims alleged in the class and PAGA actions. (Cottrell Decl., ¶ 32). Thereafter,

28

1    they memorialized the basic terms of their agreement in a Memorandum of Understanding and

2    negotiated the full terms of and executed a long-form Settlement Agreement, subject to the Court's

3    approval. (Cottrell Decl., ¶ 32). The parties fully executed the Settlement Agreement on May 3, 2023.

4    (Cottrell Decl., ¶ 33).

5    **IV.    THE SETTLEMENT**

6        **A.    Basic Terms and Value of the Settlement**

7        Defendants have agreed to pay a non-reversionary Gross Settlement Amount of $1,700,000.00

8    to settle all aspects of the case. (Cottrell Decl., ¶ 34; Settlement Agreement, ¶ 2q). The Net Settlement

9    Amount is defined as the Gross Settlement Amount, less deductions for: Service Payment Award to

10   the Plaintiff (not to exceed $10,000.00), attorneys' fees to Class Counsel (not to exceed 33 1/3%, or

11   $566,666.67) Class Counsel costs (not to exceed $25,000.00), administrative expenses to the

12   Settlement Administrator (estimated not to exceed $13,000), the Labor & Workforce Development

13   Agency ("LWDA") payment for its 75% share of the PAGA penalties ($56,250.00), and the Net

14   PAGA Amount ($18,750.00).[2] (Cottrell Decl., ¶ 34, Settlement Agreement, ¶ 2s). Defendants have

15   also agreed to pay the employers' portion of payroll taxes on Settlement Awards to Participating

16   Individuals. (Settlement Agreement, ¶ 2q) For the remainder of each individual Settlement Award that

17   is provided from the Net Settlement Amount, 20% of each Settlement Award shall be allocated as

18   wages, and 80% of each Settlement Award shall be allocated as penalties and interest. (Settlement

19   Agreement, ¶ 37).

20       The Gross Settlement Amount is a negotiated amount that resulted from substantial arms'

21   length negotiations and significant investigation and analysis by Class Counsel. (Cottrell Decl., ¶ 35).

22   Class Counsel based their damages analysis and settlement negotiations on the discovery propounded,

23   including payroll and timekeeping data. (Cottrell Decl., ¶ 35). Based on the analysis of the documents

24

25   _____

[2] The PAGA Payment is the amount of the Gross Settlement Amount allocated to settle all claims

26   and remedies under PAGA. (Settlement Agreement, ¶ 2v). The PAGA Payment shall be $75,000.00
     total, of which 75% (or $56,250.00) shall be paid to the LWDA out of the Gross Settlement Amount

27   ("LWDA Payment"), and 25% (or $18,750.00) shall be paid to the Aggrieved Employees out of the
     Net Settlement Amount ("Net PAGA Amount").

28

1    and data produced by Defendants estimates by the Plaintiff, Plaintiff made reasonable assumptions

2    regarding the wage and hour violation rates, including that waiting in line to complete the COVID-19

3    checks took approximately one minute and waiting in line to clock back in from a meal took

4    approximately two minutes. (Cottrell Decl., ¶ 36). Plaintiff also calculated that the 579 Class Members

5    worked approximately 47,232 work weeks during the relevant time period, at an average hourly rate

6    of $19.96. (Cottrell Decl., ¶ 36).

7        Using these assumptions and other datapoints derived from the timekeeping and payroll

8    information, and further assuming that Plaintiff and the Class Members would certify all of their claims

9    and prevail at trial, Class Counsel calculated the total potential exposure if Plaintiff prevailed on all of

10   his claims at approximately $12,148,264.63 (Cottrell Decl., ¶ 37).

11       Plaintiff calculated the substantive unpaid wages and unpaid meal/rest period premiums

12   incurred because of the COVID-19 screenings and waiting time at approximately $5,169,354.03.

13   (Cottrell Decl., ¶ 38). Based on the average hourly rate of $19.96, the approximately 47,232 weeks

14   worked by the class, and the approximately 3 minutes per day worked off-the-clock, Plaintiff

15   calculated there were approximately $49,676.12 in unpaid regular wages, $206,671.40 in unpaid

16   overtime wages, and $132,475.34 in liquidated damages for minimum wage. (Cottrell Decl., ¶ 38).

17   Plaintiff also calculated the amount of penalties for missed meal or rest breaks. (Cottrell Decl., ¶ 38).

18   Plaintiff analyzed time records and found an average of about 80% of shifts worked by employees

19   were over five hours. (Cottrell Decl., ¶ 38). Based on the same average rates of pay and number of

20   shifts worked over five hours, Plaintiff estimated that one meal break premium per shift over five

21   hours would amount to approximately $3,824,424.94. (Cottrell Decl., ¶ 38). Additionally, Plaintiff

22   estimated that employees had one missed rest break per week, which amounts to approximately

23   $956,106.24 in rest break premiums. (Cottrell Decl., ¶ 38). However, Plaintiff's primary meal break

24   theory depended on waiting in line to clock out, and some of the employees waiting would have

25   necessarily been at the front of the line and therefore not had to wait. (Cottrell Decl., ¶ 38).

26   Additionally, Plaintiff typically was provided the opportunity to take off duty breaks most shifts and

27   observed other employees taking rest breaks as well. (Cottrell Decl., ¶ 38). For settlement purposes,

28

1   Plaintiff applied a risk factor of 50% to account for the chance that other employees' experiences

2   varied from those of Plaintiff, and that it would be difficult to prove the off-the-clock claims which

3   are based on the testimony of employees, as opposed to written records. (Cottrell Decl., ¶ 38).

4   Therefore, for settlement purposes, Plaintiff valued the underlying claims at approximately

5   $2,584,677.02. (Cottrell Decl., ¶ 38).

6        The Class Members also have derivative claims under the California Labor Code for waiting

7   time penalties, wage statements, and PAGA penalties. (Cottrell Decl., ¶ 39). As there are no known

8   findings by a court or the Labor Commissioner that Defendant has violated the Labor Code, Plaintiff

9   applied the $100 penalty amount for all violations. (Cottrell Decl., ¶ 39). These claims are premised

10  on, and rise and fall with, the substantive violations. (Cottrell Decl., ¶ 39). Plaintiff's reasonable

11  assessment for the total value of these derivative claims is approximately $6,617,055.81, of which

12  $2,521,677.50 are PAGA penalties. (Cottrell Decl., ¶ 39). Totaling these estimated substantive and

13  derivative damages across the Settlement Class and adding interest to the damages portion yields the

14  total estimated damages amount for the entire action of approximately $12,148,264.63. (Cottrell Decl.,

15  ¶ 39). However, these derivative penalties can be, and often are, limited by courts. (Cottrell Decl., ¶

16  39). PAGA penalties in particular are subject to reduction pursuant to Labor Code §2699 (e)(2).

17  (Cottrell Decl., ¶ 39). Plaintiff therefore only assigns a 50% valuation to the derivative claims from

18  the total potential violations. (Cottrell Decl., ¶ 39). This would reduce the value of the derivative

19  claims to approximately $3,489,455.30 and $6,074,132.31 for all claims for settlement purposes.

20  (Cottrell Decl., ¶ 39).

21       After accounting for the risks of litigation, the $1,700,000.00 Gross Settlement amount

22  represents approximately 66% of the $2,584,677.02 Plaintiff valued for the substantive unpaid wages

23  and meal/rest break claims and 28% of the risk adjusted estimated damages for all claims. (Cottrell

24  Decl., ¶ 40).

25       The Settlement will result in immediate and certain payment to Class Members of meaningful

26  amounts. (Cottrell Decl., ¶ 41). The average recovery is approximately $1,744.96 per Class Member

27  (this amount divides the Net Settlement Amount of approximately $1,010,333.33 by total number of

28

579 putative Class Members).[3] (Cottrell Decl., ¶ 41) This amount provides significant compensation to the Class Members, and the Settlement provides an excellent recovery in the face of expanding and uncertain litigation. (Cottrell Decl., ¶ 41). In light of all of the risks, the settlement amount is fair, reasonable, and adequate. (Cottrell Decl., ¶ 41).

### B.    Class Definition

The Settlement Class to be certified for settlement purposes only under Federal Rule of Civil Procedure 23, includes: all persons who are employed, have been employed, or alleged in the action to have been employed by Defendants as a non-exempt employee in the State of California between November 5, 2017, and Preliminary Approval or June 1, 2023, whichever comes sooner.  (Cottrell Decl., ¶ 42; Settlement Agreement, ¶ 2c).

### C.    Allocation and Awards

The Net Settlement Amount to be paid to Class Members is approximately $1,010,333.33.[4] (Cottrell Decl., ¶ 43). Class Members will receive a settlement award check without the need to submit a claim form. (Cottrell Decl., ¶ 44; Settlement Agreement ¶ 33).   Participating Class Members shall be eligible to receive a share of the Net Settlement Amount based on their *pro-rata* percentage of weeks worked in California between November 5, 2017 and the date of Preliminary Approval or June 1, 2023, whichever is sooner. (Cottrell Decl., ¶ 45; Settlement Agreement, ¶ 34a). Aggrieved Employees shall be eligible to receive a share of the Net PAGA Amount based on their pro-rata percentage of weeks worked in California between October 25, 2020 and the date of Preliminary Approval or June 1, 2023, whichever is sooner. (Cottrell Decl., ¶ 45, Settlement Agreement, ¶ 34b).

The Settlement Administrator shall mail all Settlement Awards to Participating Individuals

---

[3] The averages provided here assume all Class Members participate in the Settlement and that each member worked identical lengths of employment.

[4] The Net Settlement Amount is calculated as follows:
    $1,700,000.00 (Gross Settlement Amount)
    -$75,000.00 (PAGA Payment)
    -$13,000.00 (Settlement Administrator costs)
    -$25,000.00 (Class Counsel costs)
    -$566,666.67 (Class Counsel fees)
    - $10,000.00 (Plaintiff's Service Award)
    = $1,010,333.33 (Net Settlement Amount)

1  who do not timely request exclusion within ten days after the Defendants' deadline to deposit the

2  Gross Settlement Amount into the Settlement Administrator's designated account or as soon as

3  reasonably practicable thereafter. (Cottrell Decl., ¶ 46; Settlement Agreement, ¶ 41). Settlement

4  Award checks will remain valid for 180 days from the date of their issuance. (Cottrell Decl., ¶ 47;

5  Settlement Agreement, ¶ 42). If not cashed within that time, the Settlement Award checks may

6  automatically be canceled, at which time the right to recover any Settlement Award will be deemed

7  void and of no further force and effect, and Participating Individuals shall be deemed to have finally

8  and forever released their claims. (Settlement Agreement, ¶ 42). If, at the conclusion of the 180-day

9  check cashing period, any funds remain from checks returned as undeliverable or are not negotiated,

10 those monies shall be distributed, subject to the Court's approval, to the California State Controller

11 Unclaimed Property Fund in the name of the Participating Individual. (Cottrell Decl., ¶ 47; Settlement

12 Agreement, ¶ 43).

13     **D.     Scope of Release**

14        The parties agreed that for settlement purposes only, Plaintiff would file an amended

15 Complaint in this Action ("Operative Complaint") after execution of the Settlement Agreement that

16 consolidates the claims, legal allegations, and factual allegations pled in both the Class Action in this

17 Court and the PAGA action in Alameda Superior Court, and to assert additional legal and factual

18 allegations, and claims, necessary to effectuate the Release in the Settlement Agreement. (Cottrell

19 Decl., ¶ 48; Settlement Agreement, ¶ 16). This was filed on May 15, 2023. (Cottrell Decl., ¶ 99).

20        Upon the Final Approval by the Court, and subject to the exclusions described below, each

21 Participating Individual fully releases all claims that were raised in the litigation and all claims that

22 could have been brought based on the facts alleged in the action, between November 5, 2017 and the

23 date of Preliminary Approval or June 1, 2023, whichever is sooner. (Cottrell Decl., ¶ 49; Settlement

24 Agreement, ¶ 20a.) Plaintiff also releases all claims on behalf of Aggrieved Employees and the LWDA

25 that could have been brought based on facts alleged in the action, between October 25, 2020 and the

26 date of Preliminary Approval or June 1, 2023, whichever is sooner. (Cottrell Decl., ¶ 49, Settlement

27 Agreement, ¶ 20b). Plaintiff also agrees to a general release from all known and unknown claims he

28

1    may have against the Released Parties, through the date of Preliminary Approval or June 1, 2023,

2    whichever is sooner. (Cottrell Decl., ¶ 50; Settlement Agreement, ¶ 21).

3    **E.      Settlement Administration**

4    The Parties have agreed to use Phoenix Class Action Administration Solutions to administer

5    the Settlement, whose costs shall be paid from the Gross Settlement Amount. (Cottrell Decl., ¶ 51;

6    Settlement Agreement, ¶ 2bb, 2cc, 30d). The Settlement Administrator will distribute the Notices of

7    Settlement via U.S. mail and email, re-mail any Notice Packets returned as non-deliverable but with

8    forwarding addresses, and re-mail the Notice Packet to any new address obtained by way of skip-trace.

9    (Cottrell Decl. ¶ 52; Settlement Agreement, ¶ 22f). The Settlement Administrator will receive and

10   process disputes regarding workweeks, objections, and requests for exclusion. (Cottrell Decl., ¶53;

11   Settlement Agreement, ¶23-25). The Settlement Administrator will calculate Settlement Payments,

12   calculate applicable payroll taxes, withholdings, and deductions, and issue disbursements to Class

13   Members, the Service Award to Plaintiff, payment to the LWDA, payment to Class Counsel for fees

14   and costs, and payment to itself. (Cottrell Decl., ¶ 54; Settlement Agreement, ¶ 30).

15   **V.      ARGUMENT**

16   **A.      The Court Should Grant Preliminary Approval of the Settlement**

17   A certified class action may only be settled with court approval. *See* Fed. R. Civ. P. 23 (e).

18   Court approval of a class action settlement requires three steps: (1) preliminary approval of the

19   proposed settlement upon a written motion; (2) dissemination of notice of the settlement to all class

20   members; and (3) a final settlement approval hearing at which objecting class members may be heard,

21   and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the

22   settlement is presented. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class*

23   *Action Settlement*, § 21.61 (4th ed. 2004. The decision to approve or reject a proposed settlement is

24   committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027

25   (9th Cir. 1998). Rule 23 requires that all class action settlements satisfy two primary prerequisites

26   before a court may grant certification for purposes of preliminary approval: (1) that the settlement

27   class meets the requirements for class certification if it has not yet been certified; and (2) that the

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1  settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(a), (e)(2); *Hanlon*, 150 F.3d at 1020.

2  As discussed below, this class action settlement satisfies the requirements of Rule 23(a) and (b), and

3  it is fair, reasonable, and adequate in accordance with Rule 23(e)(2). (Cottrell Decl. ¶ 55). Accordingly,

4  the Court should preliminarily approve the Settlement. (Cottrell Decl., ¶ 55).

5              **B.     The Court Should Certify the Settlement Class**

6         A class may be certified under Rule 23 if (1) the class is so numerous that joinder of all

7  members individually is "impracticable;" (2) questions of law or fact are common to the class; (3) the

8  claims or defenses of the class representative are typical of the claims or defenses of the class; and (4)

9  the person representing the class is able to fairly and adequately protect the interests of all members

10  of the class. Fed. R. Civ. P. 23(a). Furthermore, Rule 23(b)(3) provides that a class action seeking

11  monetary relief may only be maintained if "the court finds that the questions of law or fact common

12  to class members predominate over any questions affecting only individual members, and that a class

13  action is superior to other available methods for fairly and efficiently adjudicating the controversy."

14  Fed. R. Civ. P. 23(b)(3). Applying this standard, numerous cases like this case have certified classes

15  of employees who have allegedly suffered wage and hour violations under California wage and hour

16  laws.[5] While Defendants deny that class treatment is appropriate in the litigation context or of trial,

17  the parties agree that the Settlement Class meets all of these requirements for settlement purposes.

18  (Settlement Agreement, ¶ 14).

19              **1.     The Class Members are numerous and ascertainable.**

20         The numerosity prerequisite demands that a class be large enough that joinder of all members

21  would be impracticable. Fed. R. Civ. P. 23(a)(1). Courts routinely find numerosity satisfied with

22  classes of at least 40 members. *See, e.g., Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D.

23  Cal. 1988); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). The

24

25  [5] *See, e.g., Caudle v. Sprint/United Mgmt. Co.,* 2018 WL 6618280, at *7 (N.D. Cal. Dec. 18, 2018)
   (certifying California Rule 23 class in a case asserting policy-driven wage violations); *Shaw v. AMN*
26  *Healthcare, Inc.*, 326 F.R.D. 247, 275 (N.D. Cal. 2018) (certifying California Rule 23 class in a case
27  asserting policy-driven off-the-clock, overtime, and meal and rest break violations, in joint
   employment context).

28

---

1    approximately 579 Class Members are readily identifiable from Defendants' payroll records, and

2    render the class so large as to make joinder impracticable. (Cottrell Decl., ¶ 56).

3                    **2.      Plaintiff's claims raise common issues of fact or law.**

4            The commonality requirement of Rule 23(a)(2) "is met if there is at least one common question

5    or law or fact." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000). Plaintiffs "need

6    not show that every question in the case, or even a preponderance of questions, is capable of class

7    wide resolution." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). "[E]ven a

8    single common question" can satisfy the commonality requirement of Rule 23(a)(2). (*Id.*) Plaintiff

9    contends that common questions of law and fact predominate here. (Cottrell Decl., ¶ 57). The primary

10   wage and hour violations at issue are borne of Defendants' standardized policies, practices, and

11   procedures regarding COVID-19 screenings and waiting in line to clock-in that Defendants impose,

12   creating pervasive issues of fact and law that are amenable to resolution on a class-wide basis. (Cottrell

13   Decl., ¶ 57). Plaintiff's other derivative claims will rise or fall with the primary claims. (Cottrell Decl.,

14   ¶ 57). Because these questions can be resolved at the same juncture, Plaintiff contends the

15   commonality requirement is satisfied for the Class. (Cottrell Decl., ¶ 57).

16                   **3.      Plaintiff's claims are typical of the claims of the Class.**

17           "Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the

18   members of the class." *Fry*, 198 F.R.D. at 468. "[A] representative's claims are 'typical' if they are

19   reasonably coextensive with those of absent class members; they need not be substantially identical."

20   *Hanlon*, 150 F.3d at 1020. Here, Plaintiff contends that his claims are typical of those of all other Class

21   Members. (Cottrell Decl., ¶ 58). They were subject to the alleged illegal policies and practices that

22   form the basis of the claims asserted in this case. (Cottrell Decl., ¶ 58). Review of documents and data

23   confirm that the employees throughout California were subjected to the same alleged illegal policies

24   and practices to which Plaintiff was subjected. (Cottrell Decl., ¶ 58). Thus, Plaintiff contends that the

25   typicality requirement is also satisfied. (Cottrell Decl., ¶ 58).

26                   **4.      Plaintiff and Class Counsel will adequately represent the Class.**

27           To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiffs must show

28

"(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469. Plaintiff's claims are in line with the claims of the Class Members, and Plaintiff's claims are not antagonistic to the claims of Class Members. (Cottrell Decl., ¶ 59). Plaintiff has prosecuted this case with the interests of the Class Members in mind. (Cottrell Decl., ¶ 59). Moreover, Class Counsel has extensive experience in class action and employment litigation, including wage and hour class actions, and do not have any conflict with the Class. (Cottrell Decl., ¶ 59).

### 5. The Rule 23(b)(3) requirements for class certification are also met.

Under Rule 23(b)(3), Plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang,* 737 F.3d at 545.

Here, Plaintiff contends the common questions raised in this action predominate over any individualized questions concerning the Class Members. (Cottrell Decl., ¶ 60). The Class is entirely cohesive because resolution of Plaintiff's claims hinges on the uniform policies and practices of Defendants, rather than the treatment the Class Members experienced on an individual level. (Cottrell Decl., ¶ 60). Namely, the predominant questions relate to whether Class Members are entitled to be compensated for the time spent undergoing COVID-19 screenings and waiting in line to clock-in.  As a result, Plaintiff contends that the resolution of these alleged class claims would be achieved with common forms of proof, such as Defendants' policies, and would not require inquiries specific to individual Class Members.[6] (Cottrell Decl., ¶ 60).

---

[6] Although the amount of time off-the-clock during the COVID-19 checks and waiting in line may vary, these are damages questions and should not impact class certification. *Yokoyama v. Midland Nat. Life Ins. Co*., 594 F.3d 1087, 1094 (9th Cir. 2010). The fact that individual inquiry might be necessary

1    Further, Plaintiff contends that the class action mechanism is a superior method of adjudication

2    compared to a multitude of individual suits. (Cottrell Decl., ¶ 61). To determine whether the class

3    approach is superior, courts are to consider: (A) the class members' interests in individually controlling

4    the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning

5    the controversy already begun by or against class members; (C) the desirability or undesirability of

6    concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in

7    managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

8    Here, the Class Members do not have a strong interest in controlling their individual claims.

9    (Cottrell Decl., ¶ 62). The action involves hundreds of workers with very similar, but relatively small,

10   claims for monetary injury. (Cottrell Decl., ¶ 62). If the Class Members proceeded on their claims as

11   individuals, their many individual suits would require duplicative discovery and duplicative litigation,

12   and each Class Member would have to personally participate in the litigation effort to an extent that

13   would never be required in a class proceeding. (Cottrell Decl., ¶ 62). Thus, Plaintiff contends that the

14   class action mechanism would efficiently resolve numerous substantially identical claims at the same

15   time while avoiding a waste of judicial resources and eliminating the possibility of conflicting

16   decisions from repetitious litigation and arbitrations. (Cottrell Decl., ¶ 62).

17   The issues raised by the present case are much better handled collectively by way of a

18   settlement. (*Id., ¶* 63). Manageability is not a concern in the settlement context. *Amchem Prod., Inc.*

19   *v. Windsor*, 521 U.S. 591, 593 (1997). The Settlement presented by the Parties provides finality,

20   ensures that workers receive redress for their relatively modest claims, and avoids clogging the legal

21   system with numerous cases. (Cottrell Decl., ¶ 64).  Class treatment is efficient and warranted, and the

22   Court should conditionally certify the Class for settlement purposes. (Cottrell Decl., ¶ 64).

23       **C.    The Settlement Is Fair, Reasonable, and Adequate**

24   In deciding whether to approve a proposed class settlement, the Court must find that the

25   proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice*

26   ───────────────────────

27   to determine the amount of time each individual employee spent in the health screenings and in line,
     despite the Defendant's allegedly unlawful policy, is not a proper basis for denying certification.

28   *Benton v. Telecom Network Specialists, Inc.*, 220 Cal.App.4th 701 (Cal. App. 2014).

*v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Lynn's Food Stores v. United States Department of Labor*, 679 F.2d at 1354-55 (11 Cir. 1982); *Otey v. Crowdflower, Inc.*, Case No. 12-cv-05524-JST, 2015 WL 6091741, at \*4 (N.D. Cal., Oct. 16, 2015). Included in this analysis are considerations of: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). Importantly, courts apply a presumption of fairness, where, as is the case here, "the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at \*6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Considering these factors, the proposed settlement is fair, reasonable, and adequate.

### 1.    The terms of the Settlement are fair, reasonable, and adequate.

In evaluating the fairness of a proposed settlement, courts compare the settlement amount with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000). Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See, e.g.*, *Officers for Justice,* 688 F.2d at 623; *Viceral v. Mistras Grp., Inc.*, 2016 WL 5907869, at \*7 (N.D. Cal. Oct. 11, 2016) (approving wage and hour settlement which represented 8.1% of the total verdict value).[7] A review of the Settlement Agreement reveals the fairness, reasonableness, and adequacy of its terms. (Cottrell Decl., ¶ 65). The Gross Settlement Amount of $1,700,000.00 represents approximately 66% of the approximately $2,584,677.02 that

---

[7] *See also Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at \*4 (N.D. Cal. June 17, 2015); ("10% gross and 7.3% net figures are 'within the range of reasonableness'"); *Balderas v. Massage Envy Franchising, LLP*, 2014 WL 3610945, at \*5 (N.D. Cal. July 21, 2014) (gross settlement amount of 8% of maximum recovery and net settlement amount of 5%); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at \*4-5 (C.D. Cal. Jan. 31, 2014) (9.1% of "the total value of the action" is within the range of reasonableness).

Plaintiff calculated for the risk adjusted substantive unpaid wages and meal/rest break violation claims. ((Cottrell Decl., ¶ 65). When including the derivative claims, interest, and potential PAGA penalties that would have been owed to all Class Members, the Gross Settlement Amount represents approximately 28% of the approximate risk adjusted total exposure. (Cottrell Decl., ¶ 65). Again, these figures are based on Plaintiff's assessment of an optimistic scenario. (Cottrell Decl., ¶ 66). To obtain such a result at trial(s), Plaintiff would have to prove that each Class Member worked off-the-clock for at least one minute during each COVID-19 check and two minutes while waiting to clock back in, and that Defendants acted knowingly or in bad faith. (Cottrell Decl., ¶ 66). These figures would of course be disputed. (Cottrell Decl., ¶ 66).

The final settlement amount considers the substantial risks inherent in any class action wage and hour case, as well as the procedural posture of the Actions and the specific defenses asserted by Defendants, many of which are unique to this case. (Cottrell Decl., ¶ 67)*; see Officers for Justice*, 688 F.2d at 623. The result is within the reasonable standard when considering the difficulty and risks presented by pursuing further litigation. (Cottrell Decl., ¶ 67).

### 2.   The PAGA Allocation is also reasonable.

Under the Settlement, Aggrieved Employees release certain PAGA claims between October 26, 2020, and the date of Preliminary Approval or June 1, 2023, whichever comes sooner. (Settlement Agreement ¶ 20(b)). These "PAGA Released Claims" include "any Labor Code or Wage Order violation alleged or could have been alleged based on the facts alleged, related to, or ascertained in the Action, including but not limited to the Operative Complaint and Amended PAGA Letter(s)" which includes claims pursuant to PAGA for meal break, rest break, overtime, minimum wage, off the clock, waiting time, and wage statement violations. *Id.* Courts have recognized that PAGA settlements must be viewed in light of the PAGA's public purpose, namely augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance with California's labor laws. (See, e.g., *Vargas v. Cent. Freight Lines, Inc.*, (No. 16-cv-00507-JLB) 2017 U.S. Dist. LEXIS 157976 (S.D. Cal. Sep. 25, 2017); *Ramirez v. Benito Valley Farms, LLC*, Case No. 16-CV-04708-LHK, 2017 U.S. Dist. LEXIS 137272., (N.D. Cal. Aug. 25, 2017); see also *Jordan v.*

*NCI Grp., Inc.*, EDCV 16-1701 JVS (SPx) 2018 U.S. Dist. LEXIS 25297 at *5 (C.D. Cal. Jan. 5, 2018) ("The Court will approve the PAGA settlement upon a showing that the settlement terms are fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes."). Plaintiff performed an in-depth analysis of data provided by Defendant, and the underlying state law provisions to develop Defendant's potential exposure. (Cottrell Decl., ¶ 28-29.) As there are no known findings by a court or the Labor Commissioner that Defendant has violated the Labor Code, Plaintiff applied the $100 penalty amount for all violations. (Cottrell Decl., ¶ 39). Based on records provided by Defendants at mediation, and based on representations made by counsel at mediation, Plaintiff calculated 5,164 pay periods where PAGA violations could have occurred. (*Id*. ¶ 36.) Based on Plaintiff's testimony and data, Plaintiff calculated Defendant's total exposure for PAGA claims is approximately $2,521,677.50. (*Id*. ¶ 39). The Settlement here allocates $75,000 for the release of PAGA claims. (Cottrell Decl., ¶ 34). This recovery is fair and reasonable in light of the purposes of the PAGA and authority cited herein finding similar PAGA settlements to warrant approval. See *Hartley v. On My Own, Inc.*, 2020 U.S. Dist. LEXIS 154315, 2020 WL 5017608, * 4 (E.D. Cal. Aug. 25, 2020) (approving settlement at 3.47% of verdict value of PAGA penalty, resulting in average payment per employee of $61); see *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 972-74 (N.D.Cal. 2019) (citing cases reflecting approval of settlements at 0.2% to 1.1% of verdict value of PAGA penalty); *Gilmore v. McMillan-Hendryx Inc*., Case No. 1:20-cv-00483-HBK, 2022 U.S. Dist. LEXIS 11032 at * 9 (E.D. Cal. Jan. 20, 2022) (recognizes the inherent risks and costs in any litigation matter, and approving a PAGA settlement that amounted to approximately 4.2% of the total exposure calculated by plaintiff).

Here, the PAGA settlement amount assumes that Plaintiff prevails on liability and proves up the violations at the levels described directly above for every single Aggrieved Employee and every pay period. (Cottrell Decl., ¶ 37-40). Plaintiff faced risks in proving up his claims in this manner. (Cottrell Decl., ¶ 72-76). In light of these risks discussed in this Motion and in the supporting Declaration Carolyn Cottrell, and under an analysis of similar PAGA settlements, $75,000.00

1    constitutes a material percentage of the total damage exposure and is a reasonable overall settlement

2    sum. (Cottrell Decl., ¶ 72-76).

### 3. The Parties' discovery enabled them to make informed decisions regarding settlement.

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g.*, *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617, 625 (N.D. Cal. 1979); *Lewis v. Starbucks Corp.*, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008). Informal discovery may also assist parties with "form[ing] a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).   The Parties engaged in extensive discovery that has enabled both sides to assess the claims and potential defenses in this action, including discovery, amendments to the complaints, mediation, and arm's-length negotiations. (Cottrell Decl., ¶ 68). This allowed the Parties to accurately assess the legal and factual issues that would arise if the case proceeded to trial. (Cottrell Decl., ¶ 68). In addition, in reaching this Settlement, Class Counsel relied on their substantial litigation experience in similar wage and hour class actions. (Cottrell Decl., ¶ 69). Class Counsel's liability and damages evaluation was premised on a careful and extensive analysis of the effects of Defendants' policies and practices on Class Members' pay. (Cottrell Decl., ¶ 70). Ultimately, facilitated by mediator Gail Andler, the Parties used this information and discovery to fairly resolve the litigation. (Cottrell Decl., ¶ 71.)

### 4. Litigating the Action not only would delay recovery, but would be expensive, time consuming, and involve substantial risk.

The monetary value of the proposed Settlement represents a fair compromise given the risks and uncertainties posed by continued litigation. (Cottrell Decl., ¶ 72). If the Action were to go to trial as a class action, the fees and costs would certainly exceed the fees and costs requested here. (Cottrell Decl., ¶ 73). Litigating the class action claims would require substantial additional preparation and discovery. (Cottrell Decl., ¶ 73). It would require depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of voluminous documentary evidence and the preparation and analysis of expert reports. (Cottrell Decl., ¶ 73).

Recovery of the damages and penalties previously referenced would also require complete success and certification of all of Plaintiff's claims, a questionable feat in light of developments in wage and hour and class action law as well as the legal and factual grounds that Defendants have asserted to defend this action. (Cottrell Decl., ¶ 74). Off-the-clock claims may pose difficulty to certify for class treatment, given that the nature, cause, and amount of the off-the-clock work may vary based on the individualized circumstances of the worker.[8] In addition, certification of off-the-clock work claims is complicated by the lack of documentary evidence and reliance on employee testimony. (Cottrell Decl., ¶ 75). While Plaintiff is confident that he would establish that common policies and practices give rise to the off-the-clock work for Class Members, Plaintiff faces the risk that the Court would decline to certify the Class altogether, or for at least some claims. (Cottrell Decl., ¶ 76).

In contrast to litigating this suit, resolving this case by means of the Settlement will yield a prompt, certain, and very substantial recovery for the Class Members. (Cottrell Decl., ¶ 77). Such a result will benefit the Parties and the court system. (Cottrell Decl., ¶ 77).It will bring finality to the Action and will foreclose the possibility of expanding litigation. (Cottrell Decl., ¶ 77).

### 5.    The Settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel.

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. Furthermore, where counsel are well-qualified to represent the proposed class in a settlement based on their extensive class action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Carter v. Anderson Merchandisers, LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

Here, the settlement was a product of non-collusive, arm's-length negotiations. (Cottrell Decl. ¶ 78). The Parties participated in a lengthy mediation session before Gail Andler, a skilled mediator

---

[8] *See, e.g., In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), aff'd, 2019 WL 4898684 (9th Cir. Oct. 4, 2019); *Kilbourne v. Coca-Cola Co.*, 2015 WL 5117080, at *14 (S.D. Cal. July 29, 2015); *York v. Starbucks Corp.*, 2011 WL 8199987, at *30 (C.D. Cal. Nov. 23, 2011).

with many years of experience mediating employment matters. (Cottrell Decl. ¶ 78).The Parties then spent over a week discussing settlement and negotiating the settlement agreement, with several rounds of edits related to the terms and details of the Settlement. (Cottrell Decl. ¶ 79). Plaintiff is represented by experienced and respected class action litigators who feel strongly that the proposed Settlement achieves an excellent result for the Class Members. (Cottrell Decl. ¶ 80).

### D.    The Service Award to Representative Plaintiff is Reasonable

Named plaintiffs in class action litigation are eligible for reasonable service awards. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).[9]  The service payment not to exceed $10,000.00 for Plaintiff is intended to compensate him for the critical role he played in this case, including but not limited to responding to discovery and the time, effort, and risks undertaken in helping secure the result obtained on behalf of the Class Members. (Cottrell Decl., ¶ 81; Settlement Agreement, ¶ 2aa). In agreeing to serve as a Class representative, Plaintiff formally agreed to accept the responsibilities of representing the interests of all Class Members. (Cottrell Decl., ¶ 82; Lopez Decl.[10] ¶ 6). Plaintiff also agreed to a general release as well as an arbitration agreement to cover any future claims in order to make the Settlement a reality. (Lopez Decl. ¶ 12). Defendants do not oppose the requested payment as a reasonable service award. (Cottrell Decl., ¶ 83).

Moreover, the enhancement payments are fair when compared to the payments approved in similar cases. *See, e.g., Soto v. O.C. Communications, Inc.,* Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving $15,000.00 and $10,000.00 service awards in recent hybrid FLSA/Rule 23 settlement); *Guilbaud v. Sprint/United Management Co., Inc.,* No. 3:13-cv-04357-VC, Dkt. No. 181 (N.D. Cal. Apr. 15, 2016) (approving $10,000.00 service payments for each class representative in FLSA and California state law representative wage and hour action); *Van Liew v.*

---

[9] "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995)
 (named plaintiff received $50,000 for work in class action).

[10] Declaration of Plaintiff Rito Lopez in Support of Preliminary Approval, Exhibit B to Cottrell Decl.

1    *North Star Emergency Services, Inc.,* No. RG17876878 (Alameda Co. Super. Ct., Dec. 11, 2018)

2    (approving $15,000.00 and $10,000.00 service awards, respectively, to class representatives in

3    California Labor Code wage and hour class action).

4    **E.    The Requested Attorneys' Fees and Costs are Reasonable.**

5    In their fee motion to be submitted with the final approval papers, Class Counsel will request

6    a percentage of the common fund, up to 33 1/3% of the Gross Settlement Amount, or $566,666.67,

7    plus reimbursement of costs up to $25,000.00. (Cottrell Decl. ¶ 84; Settlement Agreement ¶¶ 2e, 2*l).*

8    At final approval, Class Counsel will provide detailed lodestar information to show the requested fee

9    is reasonable under both the percentage method and a lodestar "cross-check." (Cottrell Decl.*, ¶* 85).

10    At final approval, Plaintiff will present the factors that district courts in the Ninth Circuit

11    normally consider in awarding attorneys' fees, including: (1) the results achieved; (2) the risk of

12    litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the

13    financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See Vizcaino v.*

14    *Microsoft Corp.,* 290 F. 3d 1043, 1048-50 (9th Cir. 2002).  These factors will support the requested

15    fee award.[11]

16    In California, federal and state courts routinely approve payments of attorneys' fees amounting

17    to one-third of the common fund in comparable wage and hour class actions. *See, e.g., Soto v. O.C.*

18    *Communications, Inc.,* Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving

19    attorneys' fees of one-third of the gross settlement in recent hybrid FLSA/Rule 23 settlement); *Regino*

20    *Primitivo Gomez v. H&R Gunlund Ranches, Inc.*, 2011 WL 5884224 (E.D. Cal. 2011) (approving

21    attorneys' fees award equal to 45% of the settlement fund); *Wren,* 2011 WL 1230826 (approving

22

23    [11] When a district court exercises diversity jurisdiction over a case consisting of exclusively California claims, as here, California substantive law applies to the calculation of the attorney fee award. *See*

24    *Mangold v. Cal. Pub. Utils. Comm'n,* 67 F.3d 1470, 1478-79 (9th Cir. 1995) (finding state law to be applicable in "in determining not only the right to fees, but also the method of calculating the fees.");

25    *see also Rodriguez v. Disner*, 688 F.3d 645, 653 fn. 6 (9th Cir. 2012) ("If … we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method

26    of calculating such fees").  Here, Plaintiff's claims arise exclusively from California law.  Accordingly, the Court should apply the method for calculating attorney's fees as set forth by California

27    jurisprudence.  *See, e.g., Laffitte v. Robert Half International, Inc.,* 1 Cal.5th 480, 503-06 (2016) (percentage method with a lodestar crosscheck is appropriate in common fund cases).

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1    attorneys' fee award of just under 42% of common fund). These awards fall within the typical range

2    of acceptable attorneys' fees in the Ninth Circuit of 20% to 33 1/3% of the total settlement value.

3    *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (citing *Powers v. Eichen*,

4    229 F.3d 1249, 1256 (9th Cir. 2000)); *Hanlon*, 150 F.3d at 1029; *Staton*, 327 F.3d at 952.[12]

5        In this case, given the excellent results achieved and the effort expended to achieve it, 33 1/3%

6    is warranted. (Cottrell Decl., ¶ 86). There was no guarantee of compensation or reimbursement.

7    (Cottrell Decl., ¶ 86). Rather, counsel undertook all the risks of this litigation on a completely

8    contingent fee basis. These risks were front and center. (Cottrell Decl., ¶ 86). Plaintiff's counsel

9    incurred the risk of non-recovery after a substantial investment of time, money, and resources, and

10   have done so since the inception of the cases without any payment or compensation. (Cottrell Decl., ¶

11   86). Defendants' defense further confronted Class Counsel with the prospect of recovering nothing or

12   close to nothing for their commitment to and investment in the case. (Cottrell Decl., ¶ 86). This is no

13   easy burden for any firm. (Cottrell Decl., ¶ 86).

14       Nevertheless, Plaintiffs and Class counsel committed themselves to developing and pressing

15   Plaintiffs' legal claims to enforce the employees' rights and maximize the class recovery. (Cottrell

16   Decl., ¶ 87). The challenges that Class Counsel had to confront and the risks they had to fully absorb

17   on behalf of the class here are precisely the reasons for multipliers in contingency fee cases. *See, e.g*.,

18   *Noyes v. Kelly Servs., Inc.,* 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008); Posner, Economic Analysis

19   of the Law, 534, 567 (4th ed. 1992) ("A contingent fee must be higher than a fee for the same legal

20   services paid as they are performed… because the risk of default (the loss of the case, which cancels

21   the debt of the client to the lawyer) is much higher than that of conventional loans").

22       Attorneys who litigate on a wholly or partially contingent basis expect to receive significantly

23   higher effective hourly rates in cases where compensation is contingent on success, particularly in

24   hard-fought cases where, like in the case at bar, the result is uncertain. (Cottrell Decl., ¶ 88). In the

25

─────────────

26   [12] The exact percentage varies depending on the facts of the case, and in "most common fund cases,
     the award exceeds that benchmark." *Id.* (citing *Knight v. Red Door Salons, Inc.*, 2009 WL 248367
27   (N.D. Cal. 2009); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly
     all common fund awards range around 30%")).

28

─────────────

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1    legal marketplace, a lawyer who assumes a significant financial risk on behalf of a client rightfully

2    expects that his or her compensation will be significantly greater than if no risk was involved (*i.e.,* if

3    the client paid the bill monthly), and that the greater the risk, the greater the "enhancement." (Cottrell

4    Decl., ¶ 88). Adjusting court-awarded fees upward in contingent fee cases to reflect the risk of

5    recovering no compensation whatsoever for hundreds of hours of labor simply makes those fee awards

6    consistent with the legal marketplace, and in so doing, helps to ensure that meritorious cases will be

7    brought to enforce important public interest policies and that clients who have meritorious claims will

8    be better able to obtain qualified counsel. (Cottrell Decl., ¶ 88).

9         The amount of fees and costs requested are clearly set forth in the Notice.  (Cottrell Decl., ¶

10   89; Settlement Agreement Ex. 1). Accordingly, Plaintiffs respectfully request the Court preliminarily

11   approve the terms of the settlement, including the request for fees and costs.  (Cottrell Decl., ¶ 90).

12   Any objections by Class Members to the request for fees and costs may be considered by the Court at

13   final approval. (Cottrell Decl., ¶ 91).

14        **F.      The Proposed Notice of Settlement and Claims Process Are Reasonable**

15        The Court must ensure that Class Members receive the best notice practicable under the

16   circumstances of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen

17   v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process does not guarantee any

18   particular procedure but rather requires only notice reasonably calculated "to apprise interested parties

19   of the pendency of the action and afford them an opportunity to present their objections." *Mullane v.

20   Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th

21   Cir. 1994). A settlement notice "is satisfactory if it 'generally describes the terms of the settlement in

22   sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

23   heard.'" *Churchill Village LLC*, 361 F.3d at 575.

24        The Notice of Settlement, attached as **Exhibit 1** to the Settlement Agreement, is "the best

25   notice practicable." (See Cottrell Decl., ¶ 92; see also Fed. R. Civ. P. 23(c)(2)(B)). All Class Members

26   have been identified and the Notice of Settlement will be mailed directly to each Class Member.

27   (Cottrell Decl., ¶ 93). The proposed Notice is clear and straightforward and provides information on

28

1  the nature of the action and the proposed, the terms and provisions of the Settlement Agreement, and

2  the monetary awards that the Settlement will provide Class Members. (Cottrell Decl., ¶ 93; Settlement

3  Agreement Ex. 1).

4      The proposed Notice fulfills the requirement of neutrality in class notices. (Cottrell Decl., ¶

5  94; *see* Conte, Newberg on Class Actions, § 8.39 (3rd Ed. 1992). It summarizes the proceedings

6  necessary to provide context for the Settlement Agreement and summarizes the terms and conditions

7  of the Settlement, including an explanation of how the settlement amount will be allocated between

8  the Named Plaintiff, Class Counsel, the Settlement Administrator, the LWDA, the putative Class

9  Members and Aggrieved Employees, in an informative, coherent and easy-to-understand manner, all

10  in compliance with the Manual for Complex Litigation's recommendation that "the notice contain a

11  clear, accurate description of the terms of the settlement." (Cottrell Decl., ¶ 94; Manual for Complex

12  Litigation, Settlement Notice § 21.312 (4th ed. 2004).

13      The Notice of Settlement clearly explains the procedures and deadlines for requesting

14  exclusion from the Settlement and objecting to the Settlement, as well as the consequences of taking

15  or foregoing the various options available to Class Members, and the date, time, and place of the Final

16  Approval Hearing. (Cottrell Decl., ¶ 95). Pursuant to Rule 23(h), the proposed Notice of Settlement

17  also sets forth the amount of attorneys' fees and costs sought by Plaintiff, as well as an explanation of

18  the procedure by which Class Counsel will apply for them. (Cottrell Decl., ¶ 95). The Notice of

19  Settlement clearly states that the Settlement does not constitute an admission of liability by

20  Defendants. (Cottrell Decl., ¶ 96). Accordingly, the Notice of Settlement complies with the standards

21  of fairness, completeness, and neutrality required of a settlement class notice disseminated under

22  authority of the Court. *See* Conte, Newberg on Class Actions, §§ 8.21 and 8.39 (3rd Ed. 1992); Manual

23  for Complex Litigation, Certification Notice, Settlement Notice, § 21.312 (4th ed. 2004).

24      Furthermore, reasonable steps will be taken to ensure that all Class Members receive the

25  Notice. (Cottrell Decl., ¶ 97; Settlement Agreement, ¶ 22f). Before mailing the Notice of Settlement,

26  the Settlement Administrator shall perform a search based on the National Change of Address

27  Database information to update and correct for any known or identifiable mailing address changes.

28

1  (Cottrell Decl., ¶ 97; Settlement Agreement, ¶ 22e). Within 14 calendar days of receipt of the Class

2  List, the Settlement Administrator will mail the Notice of Settlement to each Class Member. (Cottrell

3  Decl., ¶ 97; Settlement Agreement, ¶ 22f). With respect to Notices returned as undelivered, the

4  Settlement Administrator will re-mail any Notices returned to the Settlement Administrator with a

5  forwarding address following receipt of the returned mail. (Cottrell Decl., ¶ 97; Settlement Agreement,

6  ¶ 22f). If any Notice is returned to the Settlement Administrator without a forwarding address, the

7  Settlement Administrator will undertake reasonable efforts to search for the correct address, including

8  skip tracing, and will promptly re-mail the Notice of Settlement to any newly found address. (Cottrell

9  Decl., ¶ 97; Settlement Agreement, ¶ 22f). Class Members will have 45 days from the mailing of the

10  Notice of Settlement to dispute workweeks, object to the Settlement, or request exclusion. (Cottrell

11  Decl., ¶ 97; Settlement Agreement, ¶¶ 2s, 23, 24, 25).

12       Because the proposed Notice of Settlement clearly and concisely describes the terms of the

13  Settlement and the awards and obligations for Class Members who participate, and because the Notice

14  will be disseminated in a way calculated to provide notice to as many Class Members as possible, the

15  Notice of Settlement should be preliminarily approved. (Cottrell Decl., ¶ 98).

16       **G.**    **The Court Should Approve the Proposed Implementation Schedule.**

17       Plaintiffs respectfully request this Court approve the schedule set forth the Proposed Order.

18  **VI.**    **CONCLUSION**

19       For the foregoing reasons, Plaintiff respectfully requests that this Court grant preliminary

20  approval of the Settlement Agreement, in accordance with the schedule set forth herein.

21  Date: May 18, 2023                Respectfully submitted,

22                          */s/ Andrew D. Weaver*
                        Carolyn Hunt Cottrell

23                          Caroline N. Cohen
                        Kristabel Sandoval

24                          Andrew D. Weaver
                        SCHNEIDER WALLACE

25                          COTTRELL KONECKY LLP

26

27                          *Attorneys for Plaintiff and the Putative Class*

28

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that I caused the foregoing document to be electronically filed with the Clerk

3

of the Court for the United States District Court, Northern District of California, by using the Court's

4

CM/ECF system on May 18, 2023. Service will be accomplished on all parties by the Court's CM/ECF

5

system.

6

7

8

Dated: May 18, 2023

9

*/s/ Andrew D. Weaver*
Andrew D. Weaver

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28