EXHIBIT A

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

1.      This Class Action Settlement Agreement and Release (the "Settlement Agreement," "Settlement" or "Agreement") is entered into between Plaintiff Rito Lopez, individually and on behalf of all other similarly situated persons, and Defendants Environmental Sampling Supply, Inc., TestAmerica Laboratories, Inc., and Eurofins Scientific, Inc. ("Defendants"), subject to the approval of the Court. Plaintiff and Defendants are collectively referred to as the "Parties."

## DEFINITIONS

2.      The following terms used in this Settlement Agreement shall have the meanings ascribed to them below:

a.      "Action" means the Federal Action and the PAGA Action.

b.      "Aggrieved Employees" means all persons who are employed, have been employed, or are alleged in the Action to have been employed by Defendants as a non-exempt employee in the State of California at any time between October 25, 2020 and Preliminary Approval or June 1, 2023 or whichever comes sooner.

c.      The "California Class" or "Members of the California Class" means all persons who are employed, have been employed, or alleged in the Action to have been employed by Defendants as a non-exempt employee in the State of California between November 5, 2017 and Preliminary Approval or June 1, 2023, whichever comes sooner.

d.      "Class Counsel" means Schneider Wallace Cottrell Konecky LLP.

e.      "Class Counsel's Costs" refers to the amount of reasonable litigation expenses Class Counsel incurred in connection with this Action, which shall not exceed $25,000, including their pre-filing investigation, their filing of the Action and all related litigation activities, translation of the Settlement Agreement and Settlement Notices, and all post-Settlement compliance procedures.

f.      "Class List" means an electronic database containing a list of Settlement Class Members that Defendants will compile from their records. The Class List shall include: each Settlement Class Members': (1) full name; (2) last known address; (3) last known telephone number (if any); and (4) Social Security number or tax ID number. The Class List shall also include: (5) the total number of workweeks that each Settlement Class Member worked in the state of California between November 5, 2017 and Preliminary Approval or June 1, 2023, whichever comes sooner; and (6) the total number of workweeks that Aggrieved Employees worked in the state of California between October 26, 2020 and Preliminary Approval or June 1, 2023, whichever comes sooner. The total number of workweeks may be determined by reference to weeks worked as reflected in timekeeping, payroll, and/or other records.

g.      "Class Period" shall mean November 5, 2017 through the date of Preliminary Approval or June 1, 2023, whichever comes sooner.

h.      "Court" means the Northern District of California, where the Federal Action was filed, and where the Parties mutually agree to seek approval of this Settlement.

i.      "Defendants" means Environmental Sampling Supply, Inc., TestAmerica

Laboratories, Inc., and Eurofins Scientific, Inc.

j.      "Defendants' Counsel" means Constangy, Brooks, Smith & Prophete LLP.

k.      "Effective Date" means the first day following the later of: (i) if there is a timely objection, then after such objection or appeal is resolved without any possibility of further review; or (ii) if there are no timely objections or appeals to the settlement, then thirty calendar days after the Court's order granting Final Approval of the Settlement (as defined in 2.o).  The word "objection" in this section is intended to refer to, but is not limited to, any objection, petition or motion to intervene or writ.

l.      "Federal Action" means the action *Rito Lopez v. Eurofins Scientific, Inc., et al.,* United States District Court, Northern District of California, Case No. 3:21-cv-08652.

m.      "Fee Award" means the award of attorneys' fees that the Court authorizes to be paid to Class Counsel for the services they rendered to Named Plaintiff and the Settlement Class in the Action. Class Counsel will not seek more than one-third i.e., thirty-three and a third percent (33 1/3%) of the Gross Settlement Amount as their Fee Award.

n.      "Final" shall mean, with respect to a judgment or order, that the judgment or order is final and appealable and either (a) no appeal, motion, or petition to review or intervene has been taken with respect to the judgment or order as of the date on which all times to appeal, move, or petition to review or intervene therefrom have expired, or (b) if an appeal, motion or petition to intervene or other review proceeding of the judgment or order has been commenced, such appeal, motion or petition to intervene or other review is finally concluded and no longer is subject to review by any court, whether by appeal, petitions for rehearing or re-argument, petitions for rehearing *en banc*, petitions for writ of certiorari or otherwise, and such appeal or other review has been finally resolved in such manner that affirms the judgment or order in its entirety.

o.      "Final Approval" or "Final Approval Order" means the Court's Final Approval Order approving the Settlement and entering judgment.

p.      "Final Approval Hearing" means the hearing to be held by the Court to consider the Final Approval of the Settlement.

q.      "Gross Settlement Amount" means the maximum non-reversionary total amount that Defendants shall pay in connection with this Settlement in exchange for the release of the Participating Individuals' Released Claims. The Gross Settlement Amount is the gross sum of One Million Seven Hundred Thousand Dollars ($1,700,000.00). The Gross Settlement Amount includes: (a) all Settlement Awards to Participating Individuals; (b) payments to the Labor Workforce Development Agency from the PAGA Payment; (c) Class Representative's Service Award; (d) Attorneys' Fees and Costs to Class Counsel; and (e) Settlement Administration Costs to the Settlement Administrator. The Parties agree that Defendants will have no obligation to pay any amount in connection with this Settlement Agreement apart from the Gross Settlement Amount and Defendants' employers' portion of payroll taxes on Settlement Awards to Participating Individuals. There will be no reversion.

r.      "Net PAGA Amount" means the Twenty-Five Percent (25%) of the PAGA Payment payable to the Aggrieved Employees, or $18,750.

s.     "Net Settlement Amount" means the Gross Settlement Amount less: (i) Named Plaintiff's Service Award; (ii) Class Counsel's Fee Award; (iii) Class Counsel's Costs; (iv) Settlement Administrator Costs; (v) the payment to the Labor and Workforce Development Agency ("LWDA") for its share of PAGA penalties; and (vi) the Net PAGA Amount. The Parties acknowledge that all of these amounts are subject to the Court's approval.

t.     "Notice Deadline" means the date forty-five (45) days after the Settlement Notice is initially mailed to the Settlement Class. California Class Members shall have until the Notice Deadline to object to or opt-out of the Settlement.

u.     "PAGA Action" means the action, *Rito Lopez v. Eurofins Scientific, Inc., et al.*, Superior Court of California, County of Alameda, Case Number 21CV004840, including any and all related letters to the Labor Workforce Development Agency ("LWDA") and any amended letters necessary to effectuate the Released Claims.

v.     "PAGA Payment" means the amount of the Gross Settlement Amount allocated to settle all claims and remedies under the Private Attorneys' General Act, California Labor Code sections 2698, et seq.("PAGA"). The PAGA Payment shall be $75,000, or an amount to be approved by the Court, of which 75%, or $56,250, shall be paid to the LWDA out of the Gross Settlement Amount and 25%, or $18,750, shall be paid to the Aggrieved Employees out of the Gross Settlement Amount.

w.     "Participating Individuals" means (a) any California Class Members who do not submit a valid letter requesting to be excluded from the Settlement, consistent with the terms set forth in this Settlement Agreement and (b) all Aggrieved Employees. All Participating Individuals will be bound by all terms and conditions of the Settlement Agreement, including the release of the applicable Released Claims (as set forth in Paragraph 20).

x.     "Preliminary Approval" or "Preliminary Approval Order" means the Court's Preliminary Approval Order preliminarily approving the terms and conditions of this Agreement.

y.     "Releasees" or "Released Parties" means Defendants, ESSVIAL, Inc., Eurofins Environment Testing America Holdings, Inc., and their present and former parent companies, subsidiaries, related or affiliated companies or entities, and any of their shareholders, affiliates, owners, members, joint employers, representatives, officers, directors, employees, agents, attorneys, insurers, predecessors, successors and assigns, as well as any individual or entity that could be liable for any of the Released Claims.

z.     "Released Claims" means Participating Individuals' Released Claims (as set forth in Paragraph 20) and Named Plaintiff's Released Claims (as set forth in Paragraph 21).

aa.     "Service Award" means the payment to Named Plaintiff Rito Lopez for his efforts in bringing and prosecuting the cases against the Defendants. The Service Award will not exceed the following amount: Ten Thousand Dollars ($10,000.00).

bb.     "Settlement Administrator" means Phoenix Class Action Administration Solutions, the third-party class action settlement administrator that will handle the administration of this Settlement, subject to approval by the Court.

cc.     "Settlement Administrator Costs" refer to the costs the Settlement

Administrator will incur to distribute the Settlement Notice to Settlement Class Members and to distribute the Settlement Awards to Participating Individuals, which are estimated to be less than $13,000.

        dd.    "Settlement Award" means the payment that each Settlement Class Member shall be entitled to receive pursuant to the terms of this Agreement.

        ee.    "Settlement Class" or "Settlement Class Members" means all Members of the California Class, all Aggrieved Employees, and the Named Plaintiff.

        ff.    "Settlement Notice" means the Notice of Class Action Settlement to be issued to California Class Members, including Aggrieved Employees and the Named Plaintiff, an example of which is attached hereto as **Exhibit 1,** or as approved by the Court.

## RECITALS

1.    Plaintiff Rito Lopez is a current employee of Defendant Environmental Sampling Supply, Inc., who has worked for this Defendant since around January 1990.

2.    On November 5, 2021, Plaintiff Rito Lopez filed a class action in the Northern District of California titled *Rito Lopez v. Eurofins Scientific, Inc.*, Case No. 3:21-cv-08652, asserting claims under the California Labor Code and Unfair Competition Law. Specifically, the Federal Action asserted claims for: (1) failure to pay for all hours worked; (3) failure to pay minimum wage and liquidated damages; (3) failure to pay overtime wages; (4) failure to provide timely and accurate itemized wage statements; and (5) violations of the California Unfair Competition Law.

3.    On February 14, 2022, Plaintiff Rito Lopez filed a First Amended Complaint in the Federal Action, which added Environmental Sampling Supply, Inc. and TestAmerica Laboratories, Inc. as Defendants.

4.    Defendant Eurofins Scientific, Inc. filed a motion to dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on February 28, 2022. Following their respective appearances in the Federal Action, Defendants TestAmerica Laboratories, Inc. and Environmental Sampling Supply, Inc. also filed a motion to dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on May 2, 2022. A hearing on Defendants' Motions to Dismiss was scheduled for June 9, 2022.

5.    On June 6, 2022, the Parties agreed to attempt to resolve the Federal Action through mediation with the Hon. Gail Andler (Ret.) on September 20, 2022. To allow the Parties to focus their efforts on mediation preparation, the Parties stipulated to continue the hearing on Defendants' Motions to Dismiss until after mediation. The Parties also stipulated to vacate the Initial Case Management Conference and all associated deadlines.

6.    Plaintiff Rito Lopez filed a separate action against Defendant Eurofins Scientific, Inc. on December 30, 2021, in the Superior Court of California, County of Alameda, to assert additional claims for penalties under California Private Attorneys General Act ("PAGA") arising from alleged violations of the California Labor Code. The PAGA Action is titled *Rito Lopez v. Eurofins Scientific, Inc. et al.*, Superior Court of California, County of Alameda, Case Number 21CV004840.

7.     On February 14, 2022, Plaintiff filed a First Amended Complaint in the PAGA Action naming Environmental Sampling Supply, Inc. as a Defendant. On March 30, 2022, Defendants Eurofins Scientific, Inc. and TestAmerica Laboratories, Inc. filed an Answer to the First Amended Complaint.

8.     On June 6, 2022, the Parties agreed to attempt to resolve the PAGA Action through mediation with the Hon. Gail Andler (Ret.) on September 20, 2022. To allow the Parties to focus their efforts on mediation preparation, the Parties agreed to stay formal discovery in the PAGA Action.

9.     Through the Federal and PAGA Actions, Plaintiff alleges that Defendants violated the wage and hour laws of California by failing to pay non-exempt, hourly employees earned wages. On this basis, Plaintiff brought claims against Defendants for unpaid minimum wages and overtime wages, failure to pay all hours worked, inaccurate wage statements, failure to timely pay wages during employment and at termination, unfair competition, and civil penalties under the PAGA.

10.     On September 20, 2022, the Parties participated in a full-day mediation before mediator Hon. Gail Andler (Ret.). The case did not settle that day. The Parties agreed to a mediator's proposal on September 29, 2022. The Parties thereafter negotiated the specific terms of this Settlement and have agreed to settle all pending litigation as provided in this Agreement.

11.     Class Counsel has made a thorough and independent investigation of the facts and law relating to the allegations in the PAGA Action and Federal Action and of other potential claims that could have been asserted in the PAGA Action and Federal Action, including those for meal and rest period violations and waiting time penalties. In agreeing to this Settlement Agreement, Named Plaintiff has considered: (a) the facts developed during pre-mediation, informal discovery and the Parties' mediation process and the law applicable thereto; (b) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged against Defendants; and (c) the desirability of consummating this Settlement according to the terms of this Settlement Agreement. Named Plaintiff has concluded that the terms of this Settlement are fair, reasonable and adequate, and that it is in the best interests of the Settlement Class to settle their claims against Defendants pursuant to the terms set forth herein.

12.     Defendants deny all claims as to liability, damages, penalties, interest, fees, and all other forms of relief, as well as deny the allegations asserted in the PAGA Action and in the Federal Action. Defendants have agreed to resolve the PAGA Action and the Federal Action via this Settlement, but to the extent this Settlement Agreement is deemed void or the Effective Date does not occur, Defendants do not waive, but rather expressly reserve, all rights to challenge all such claims and allegations in the PAGA Action and in the Federal Action upon all procedural, merits, and factual grounds, including, without limitation, the ability to challenge class and/or representative action treatment on any grounds, as well as asserting any and all other privileges and potential defenses. This Settlement Agreement shall not be construed as an admission by Defendants or any of the Releasees (as defined above) of any fault, liability or wrongdoing, which Defendants expressly deny.

13.     The Parties recognize that Court approval of this Settlement is required to effectuate the Settlement, and that the Settlement will not become operative until the Court grants final approval of it and the Settlement Effective Date occurs.

14.     The Parties stipulate and agree that, for settlement purposes only, the requisites for establishing class certification pursuant to Federal Rule of Civil Procedure 23 are met. Should this Settlement not become Final, such stipulation to certification shall become null and void and shall have no bearing on, and shall not be admissible in connection with, the issue of whether or not class certification would be appropriate in a non-settlement context, or whether the PAGA Action can proceed on a representative basis. Defendants deny that class action treatment is appropriate in the litigation context or for trial or that the PAGA Action is appropriate to proceed in the litigation context or for trial.

15.     The Parties stipulate and agree that for settlement purposes only, the Parties shall file a stipulation in the PAGA Action for a stay pending approval of this Settlement and following the Effective Date, a dismissal without prejudice of the PAGA Action before the funding deadline in Paragraph 29. In the event that the stipulated request for the stay is not granted by the respective court, the Parties stipulate and agree that for settlement purposes only, the Parties shall meet and confer regarding a process for approval that is acceptable to and maintains both Parties in the same position as prior to the settlement. In the event the Settlement is not approved, the Parties agree that the Parties shall be placed in the same position as they were in immediately prior to the settlement. These agreements will be effectuated through stipulations to be filed with the state court as appropriate.

16.     The Parties stipulate and agree that for settlement purposes only, to the prompt filing of a Complaint in the Federal Action ("Operative Complaint") after execution of this Settlement Agreement that consolidates the claims, legal allegations, and factual allegations pled in the PAGA Action and the Federal Action, and to assert additional claims, legal allegations, and factual allegations necessary to effectuate the Release in this Settlement Agreement. The Operative Complaint will be attached hereto as **Exhibit 2.** The Parties stipulate and agree that for settlement purposes only, Defendants consent to the filing of the Operative Complaint and to personal and subject matter jurisdiction in the Court. The Parties further stipulate and agree that Plaintiff shall file an amended PAGA letter(s) ("Amended PAGA Letter") to the LWDA consistent with this Agreement to effectuate this Agreement and/or Releases in Paragraph 20. The Amended PAGA letter will be attached hereto as **Exhibit 3.** The settlement is expressly conditioned upon the approval by both Parties of the Operative Complaint and Amended PAGA Letter.

17.     In the event the Settlement is not approved, the Parties agree that the Parties shall be placed in the same position as they were in immediately prior to execution of this Settlement Agreement.

18.     In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each party to the other, IT IS HEREBY AGREED, by and between the undersigned, subject to the final approval of the Court and the other conditions set forth herein, that Named Plaintiff's and the Participating Individuals' claims as described herein against Defendants shall be settled, compromised and dismissed, on the merits and with prejudice, and that the Named Plaintiff's and Participating Individuals' Released Claims shall be finally and fully compromised, settled and dismissed as to the Defendants and Releasees in the manner and upon the terms and conditions set forth below.

## RELEASES

19.    In exchange for the consideration set forth in this Settlement Agreement, Named Plaintiff and Participating Individuals agree to release all claims against the Releasees as set forth herein as applicable.

20.    **Participating Individuals' Released Claims.** Upon Final Approval of the Settlement Agreement and payment of amounts set forth herein, and except as to such rights or claims as may be created by this Settlement Agreement, Named Plaintiff on behalf of Aggrieved Employees and the LWDA, and all Participating Individuals (on behalf of themselves and their respective former and present representatives, agents, attorneys, executors, heirs, administrators, successors, and assigns), shall and hereby do release and discharge all Releasees, finally, forever and with prejudice, from any and all claims alleged, or that could have been alleged based on the facts alleged, related to, or ascertained in the Action, and the claims as follows:

    a.    Released California Class Claims: The California Class Members who do not timely and validly request exclusion from the Settlement shall release the Releasees from any and all claims that were alleged or could have been alleged based on the facts alleged, related to, or ascertained in the Action, including but not limited to the Operative Complaint and Amended PAGA Letter(s) between November 5, 2017 and the date of Preliminary Approval or June 1, 2023, whichever comes sooner. This includes claims for: the purported payment or nonpayment of compensation (including, but not limited to, wages, minimum wage, straight time, overtime, and/or premium pay), meal or rest period premiums or penalties; failure to pay for all hours worked; failure to timely pay wages during employment; failure to pay wages at discharge or termination; failure to provide compliant meal and rest periods; failure to accurately record time, including all time worked (such as off-the-clock, meal periods, rounding, and auto-deduction of meal periods); failure to provide timely and compliant wage statements and to maintain records; unfair business practices; related premiums, statutory penalties, waiting time penalties, civil penalties; liquidated damages; interest; punitive damages; costs; attorneys' fees; injunctive relief; declaratory relief; or accounting, whether such causes of action are in tort, contract, or pursuant to a statutory remedy.

    b.    Released PAGA Claims: Named Plaintiff fully releases the claims and rights to recover civil penalties, costs, expenses, attorneys' fees, interest, injunctive relief, declaratory relief, or accounting, against the Releasees on behalf of Aggrieved Employees and the LWDA for any Labor Code or Wage Order violation alleged or could have been alleged based on the facts alleged, related to, or ascertained in the Action, including but not limited to the Operative Complaint and Amended PAGA Letter(s) between October 26, 2020 and the date of Preliminary Approval or June 1, 2023, whichever comes sooner. This includes claims pursuant to PAGA for: failure to pay minimum wage; failure to pay overtime wages; failure to provide meal and rest periods and/or premiums; failure to accurately record time, including all time worked (such as off-the-clock, meal periods, rounding, and auto-deduction of meal periods); failure to compensate for all hours worked; unlawful withholding of wages; underpayment of wages; failure to provide timely and compliant itemized wage statements and to maintain records; failure to timely pay wages during employment; and failure to pay wages at discharge or termination. The Parties agree that there shall be no right for any Aggrieved Employee to opt out or otherwise exclude himself or herself from the release of PAGA claims. The

Parties intend and agree that the Final Approval Order and the Judgment entered as a result of this Settlement shall have *res judicata* and preclusive effect to the fullest extent allowed by law.

21.    **Named Plaintiff's Released Claims.** Named Plaintiff's Released Claims means a general release of any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against the Releasees, of whatever kind and nature, character, and description, whether in law or equity, whether sounding in tort, contract, federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law or contract, whether known or unknown, and whether anticipated or unanticipated, including all unknown claims covered by California Civil Code section 1542 that could be or are asserted based upon any theory or facts whatsoever, arising at any time up to and including the date of the execution of this Settlement Agreement, for any type of relief, including, without limitation, claims for minimum, straight time, or overtime wages, meal breaks, rest breaks, premium pay, other damages, penalties (including, but not limited to, waiting time penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation and other costs, expenses, restitution, and equitable and declaratory relief. The Named Plaintiff's Released Claims include, but are not limited to, the Participating Individuals' Released Claims, as well as any other claims under any provision of federal, state, or local law, including the FLSA and California wage and hour laws. Upon Final Approval, Named Plaintiff shall be deemed to have fully, finally, and forever released Releasees from all Named Plaintiff's Released Claims through the date of Preliminary Approval or June 1, 2023, whichever comes sooner. Furthermore, upon Final Approval, Named Plaintiff shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they may otherwise have had relating to the Named Plaintiff's Released Claims pursuant to Section 1542 of the California Civil Code, which provides as follows:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

a.    Plaintiff understands that this release does not apply to any claims or rights that cannot be waived as a matter of law. Plaintiff acknowledges, however, that he has no workers' compensation claim pending at the time of signing this Agreement. Nothing in this Agreement shall be construed to prohibit Plaintiff from filing a charge or cooperating with any investigation by any federal, state, or local government agency (including without limitation the United States Department of Labor, the Equal Employment Opportunity Commission, the Securities and Exchange Commission, the Department of Justice, and/or the National Labor Relations Board).    However, Plaintiff understands that he will not be entitled to recover any monetary damages or any other form of personal relief in connection with such a claim, investigation or proceeding.

b.    Plaintiff shall execute an arbitration agreement with Defendant which will only be enforceable if final approval of this Settlement Agreement is granted by the Court. If final approval is granted, then the arbitration agreement will be effective as of the same date as the close of the Class Period, i.e. the date of Preliminary Approval or June 1, 2023, whichever comes sooner.

## **CERTIFICATION, NOTICE, AND SETTLEMENT IMPLEMENTATION**

22.    The Parties agree to the following procedures for obtaining Preliminary Approval of the Settlement, certifying the Settlement Class, and notifying the Settlement Class of this Settlement:

a.    **Complaint.** The Parties stipulate and agree that for settlement purposes only, the Parties consent to the filing of an Operative Complaint that consolidates the claims, legal allegations, and factual allegations pled in the PAGA Action and the Federal Action and asserts additional claims, legal allegations, and factual allegations necessary to effectuate the Release in this Settlement Agreement, and to personal and subject matter jurisdiction in the Court. Named Plaintiff shall file with Defendants' stipulation the Operative Complaint in the Court before the filing of the Unopposed Motion for Preliminary Approval of Settlement Agreement discussed in Paragraph 22.b. and shall take any other necessary steps to effectuate the releases in this Settlement Agreement, including the filing the Amended PAGA Letter(s) with the LWDA.

b.    **Request for Class Certification and Preliminary Approval Order.** Named Plaintiff shall file an Unopposed Motion for Preliminary Approval of Settlement Agreement, requesting that the Court certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23 for the sole purpose of settlement; preliminarily approve the Settlement Agreement and its terms; approve the proposed form of the Settlement Notice and find that the proposed method of disseminating the Settlement Notice meets the requirements of due process and is the best notice practicable under the circumstances; set a date for Named Plaintiff's Motion for Final Approval of the Settlement, and approval of the requested Service Award, Fee Award, Class Counsel's Costs, and Settlement Administrator's Costs; and set a date for the Final Approval Hearing. Class Counsel shall provide Defendants' Counsel a copy of a draft Unopposed Motion for Preliminary Approval of Settlement Agreement at least two (2) business days in advance of filing it with the Court.

c.    **Notice.** The Settlement Administrator shall be responsible for preparing, printing and mailing the Settlement Notice to all Settlement Class Members. The Settlement Administrator shall also create a toll-free telephone number to field telephone inquiries from Settlement Class Members during the notice and settlement administration periods. The Settlement Administrator will be directed to take the call center down after the 180-day check cashing period for Settlement Award Checks.

d.    Within thirty (30) calendar days after the Court's Preliminary Approval of the Settlement, Defendants shall provide to the Settlement Administrator the Class List.

e.    In order to provide the best notice practicable, prior to mailing the Settlement Notice, the Settlement Administrator will take reasonable efforts to identify current addresses via public and proprietary systems.

f.    Using best efforts to perform as soon as possible, and in no event later than fourteen (14) calendar days after receiving the Class List, the Settlement Administrator shall send to all Settlement Class Members identified in the Class List, via first-class United States Postal Service ("USPS") mail, the Settlement Notice (with Spanish translation) substantially in the form attached to this Agreement as **Exhibit 1.** The first page of the Settlement Notice shall prominently estimate the dollar amounts of any Settlement Award to Settlement Class Members, and the number of workweeks used to calculate these amounts. Before mailing Settlement Notices, the Administrator shall update Settlement Class Members addresses using the National Change of Address database. Any Settlement Notice returned to the Settlement Administrator with a forwarding address shall be re-mailed within three (3) business days following receipt of the returned mail. If no forwarding address is provided, the Settlement Administrator shall promptly attempt to determine a correct address using a skip-trace, or other search using the name, address and/or Social Security number of the Settlement Class Member involved and shall re-mail the Notice of Settlement. Under no circumstances shall such re-mailing extend the Notice Deadline.

g.    Within ten (10) calendar days after the Notice Deadline, the Settlement Administrator shall provide Defendants' Counsel and Class Counsel, respectively, a report showing: (i) a list of Participating Individuals by unique identifier; (ii) the Settlement Awards owed to each of the Participating Individuals; (iii) the final number of California Class Members who have submitted objections or valid letters requesting exclusion from the Settlement; (iv) the number of undeliverable Notices of Settlement; (v) the estimated average and median recovery per California Class Member who have not submitted valid letters requesting exclusion from the Settlement; (vii) the largest and smallest estimated amounts to be paid to California Class Members who have not submitted valid letters requesting exclusion from the Settlement.

h.    Defendants will not take any adverse action against any current or former employee on the grounds that he/she is eligible to participate and/or does participate in the Settlement. Defendants will not discourage participation in this Settlement Agreement or encourage objections or opt-outs.

i.    Upon completion of administration of the Settlement, the Settlement Administrator shall provide written certification of such completion to counsel for all Parties and the Court. This written certification shall include the total number of Participating Individuals; the average and median recovery per Participating Individual; the largest and smallest amounts paid to Participating Individuals; and the number and value of checks not cashed. Within ten (10) business days after the conclusion of the 180-day check cashing period below, the Settlement Administrator shall provide Defendants' Counsel and Class Counsel, respectively, a report regarding the total amount of any funds that remain from checks that are returned as undeliverable or are not negotiated.

23. **Disputes Regarding Workweeks**. To the extent that any Settlement Class Member disputes the number of workweeks that the Settlement Class Member worked, as shown in his or her Settlement Notice, such Settlement Class Members may produce evidence to the Settlement Administrator establishing the dates they contend to have worked for Defendants. Weeks "worked" for purposes of this settlement will be determined by reference to timekeeping, payroll, and/or other records. The deadline for Settlement Class Members to submit disputes pursuant to this paragraph is the Notice Deadline (disputes must be postmarked by the Notice Deadline). Unless the Settlement Class Member presents convincing evidence proving he or she worked more workweeks than shown by Defendants' records, his/her Settlement Award will be determined based on Defendants' records. The Settlement Administrator shall notify counsel for the Parties of any disputes it receives. Defendants shall review its records and provide further information to the Settlement Administrator, as necessary. The Settlement Administrator shall provide a recommendation to counsel for the Parties. Counsel for the Parties shall then meet and confer in an effort to resolve the dispute. If the dispute cannot be resolved by the Parties, it shall be presented to the Court for a resolution. The Settlement Administrator will notify the disputing Settlement Class Member of the decision.

24. **Objections.** The Settlement Notice shall provide that California Class Members who wish to object to the Settlement must, on or before the Notice Deadline, file with the Court a written statement objecting to the Settlement. Such objection shall not be valid unless it includes the information specified in the Settlement Notice. The statement must be signed personally by the objector, and must include the objector's name, address, telephone number, email address (if applicable), the factual and legal grounds for the objection, and whether the objector intends to appear at the Final Approval Hearing. The Settlement Notice shall advise California Class Members that objections shall only be considered if the California Class Member has not opted out of the Settlement. No California Class Member shall be entitled to be heard at the Final Approval Hearing (whether individually or through counsel), unless written notice of the California Class Member's intention to appear at the Final Approval Hearing has been filed with the Court and served upon Class Counsel and Defendants' Counsel on or before the Notice Deadline and the California Class Member has not opted out of the Settlement. The postmark date of mailing to Class Counsel and Defendants' Counsel shall be the exclusive means for determining that an objection is timely mailed to counsel. If postmark dates differ, the later of the two postmark dates will control. Absent good cause found by the Court, persons who fail to make timely written objections in the manner specified above shall be deemed to have waived any objections and oppositions to the Settlement's fairness, reasonableness and adequacy, and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement. However, the requirement that the California Class Member submit a written objection may be excused by the Court upon a showing of good cause. None of the Parties, their counsel, nor any person on their behalf, shall seek to solicit or otherwise encourage anyone to object to the settlement, or appeal from any order of the Court that is consistent with the terms of this Settlement.

25. **Requests for Exclusion.** The Settlement Notice shall provide that California Class Members, other than Named Plaintiff, who wish to exclude themselves from the Settlement ("opt out") must mail to the Settlement Administrator a written statement indicating that they do not wish to participate or be bound by the Settlement. The written request for exclusion must contain the California Class Member's full name, address, telephone number, email address (if applicable), and last four digits of their social security number, and must be signed individually by the California Class Member. No opt-out request may be made on behalf of a group. Such written statement must be postmarked by the Notice Deadline. None of the Parties, their counsel, nor any person on their behalf, shall seek to solicit or otherwise encourage anyone to exclude themselves

from the settlement. Aggrieved Employees are bound by and cannot exclude themselves from the PAGA component of the Settlement even if they request exclusion.

26.    **Cure Period.** In the event any request for exclusion is timely submitted but does not contain sufficient information to be valid, the Settlement Administrator shall provide the California Class Member, within seven (7) calendar days, a letter requesting the information that was not provided and giving the California Class Member fourteen (14) days from the mailing of such cure letter to respond. Any invalid submission that is not timely cured will be considered a nullity.

27.    **Final Approval Hearing.** Class Counsel will be responsible for drafting the Unopposed Motion for Final Approval of Settlement Agreement, and approval of the requested Service Awards, Fee Award, Class Counsel's Costs, and Settlement Administrator's Costs to be heard at the Final Approval Hearing. Class Counsel shall provide Defendants' Counsel a copy of a draft Unopposed Motion for Final Approval of Settlement Agreement at least two (2) business days in advance of filing it with the Court. Named Plaintiff shall request that the Court schedule the Final Approval Hearing no earlier than 100 days after Preliminary Approval, and at least thirty (30) days after the Settlement Administrator's deadline to provide the report of objections, opt-outs and awards, as further outlined in Section 22(g), to determine final approval of the settlement and to enter a Final Approval Order:

a.    certifying this Action and Settlement Class as a class action under Federal Rule of Civil Procedure 23 for purposes of settlement only;

b.    finding dissemination of the Settlement Notice was accomplished as directed and met the requirements of due process;

c.    approving the Settlement as final and its terms as a fair, reasonable and adequate;

d.    approving the payment of the Service Award to Named Plaintiff Rito Lopez;

e.    approving Class Counsel's application for an award of attorneys' fees and reimbursement of out-of-pocket litigation costs and expenses;

f.    directing that the Settlement funds be distributed in accordance with the terms of this Settlement Agreement;

g.    directing that the Action be dismissed finally, fully, forever and with prejudice and in full and final discharge of any and all Participating Individuals' Released Claims, Named Plaintiff's Released Claims, PAGA Released Claims, and the related claims, if any, of the LWDA;

h.    directing that a Final Judgment be entered; and

i.    retaining continuing jurisdiction over this Action for purposes only of overseeing all settlement administration matters.

28.    **Post Judgment Report.** At the conclusion of the 180-day check cashing period set forth below and following receipt of the Settlement Administrator's report showing the total funds that were actually paid to Participating Individuals, Plaintiff's Counsel shall submit a post-

judgment report to the Court of regarding any funds that remain from checks that are returned as undeliverable or are not negotiated.

## SETTLEMENT FUNDS AND AWARD CALCULATION

29. **Funding of Settlement.** The Settlement Administrator will administer this Settlement. Within ten (10) days of the Effective Date of the Settlement, Defendants shall deposit the Gross Settlement Amount into the Settlement Administrator's designated account. Defendants shall not have access to the Gross Settlement Amount once those funds are deposited into the Settlement Administrator's designated account, including any earned interest accrued following deposit. Any interest gained on the Gross Settlement Amount in the Settlement Administrator's designated account shall be deemed part of the Gross Settlement Amount. The Gross Settlement Amount is fully non-reversionary. All disbursements shall be made from the Gross Settlement Amount.

30. **Payments.** Subject to the Court's Final Approval Order and the occurrence of the Effective Date, the following amounts shall be paid by the Settlement Administrator from the Gross Settlement Amount:

    a.    **<u>Service Awards to Named Plaintiff.</u>** Subject to the Court's approval, Plaintiff Rito Lopez shall receive Ten Thousand Dollars ($10,000.00). These payments of attorneys' fees and costs shall be made within ten (10) days after the Defendants' deadline to deposit the Gross Settlement Amount into the Settlement Administrator's designated account or as soon as reasonably practicable thereafter. If the Court approves the Service Award in amounts less than what Named Plaintiff requests, the reduction in the Service Award shall not be a basis for nullification of this Settlement. Nor shall a reduction in the Service Award in any way delay or preclude the judgment from becoming a final judgment or the Settlement from becoming Effective. The Named Plaintiff assumes full responsibility for paying all taxes, if any, due as a result of the Service Awards.

    b.    **<u>Fee Awards and Costs.</u>**

        i.    Subject to the Court's approval, Class Counsel shall receive the Fee Award, which will compensate Class Counsel for all work performed in the Action as of the date of this Settlement Agreement as well as all of the work remaining to be performed, including but not limited to documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of the Action. In addition, Class Counsel shall, subject to Court approval, receive reimbursement of Class Counsels' Costs. These payments of attorneys' fees and costs shall be made within ten (10) days after the Defendants' deadline to deposit the Gross Settlement Amount into the Settlement Administrator's designated account or as soon as reasonably practicable thereafter.

        ii.    The approved Fee Award and Class Counsels' Costs, even if less than what Class Counsel requests, shall constitute full satisfaction of Defendants' obligations to pay amounts to any person, attorney

or law firm for attorneys' fees or costs in this Action on behalf of Named Plaintiff and/or any other Participating Individual, and shall relieve Defendants from any other claims or liability to any other attorney or law firm for any attorneys' fees or costs to which any of them may claim to be entitled on behalf of Named Plaintiff or any other Participating Individual. If the Court approves a Fee Award and/or Class Counsels' Costs Award in an amount less than what Class Counsel request, the reduction in the Fee Award and/or Class Counsels' Costs Award shall not be a basis for nullification of this Settlement. Nor shall a reduction in the Fee Award and/or Class Counsels' Costs Award in any way delay or preclude the judgment from becoming a Final or the Settlement from becoming effective.

iii.    An IRS Form 1099 shall be provided to Class Counsel for the payments made to Class Counsel. Class Counsel shall be solely and legally responsible to pay any and all applicable taxes on the payment made to them.

c.    **Labor and Workforce Development Agency Payment.** Subject to Court approval, the Parties agree that the amount of $75,000 from the Gross Settlement Amount will be paid in settlement of all individual and representative claims brought in the Action by or on behalf of Plaintiff and aggrieved parties under the Labor Code Private Attorneys General Act of 2004 (Cal. Lab. Code §§ 2698, et seq., "PAGA"). Pursuant to PAGA, Seventy-Five Percent (75%), or $56,250, of this sum will be paid to the Labor and Workforce Development Agency ("LWDA") and Twenty-Five Percent (25%), or $18,750, will be allocated to the Net PAGA Amount. The payment to the LWDA shall be made by the Settlement Administrator within ten (10) days after the Defendants' deadline to deposit the Gross Settlement Amount into the Settlement Administrator's designated account or as soon as reasonably practicable thereafter.

d.    **Settlement Administration Costs.** Settlement Administration costs shall be paid from the Gross Settlement Amount. The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs incurred in the administration of the Settlement.

e.    **Settlement Awards to Eligible Class Members.** Settlement Awards shall be made to Participating Individuals as set forth below.

31.    **No Claim Based Upon Distributions or Payments in Accordance with this Settlement Agreement.** No person shall have any claim against Defendants, Class Counsel, or Defendants' Counsel based on distributions or payments made in accordance with this Settlement Agreement.

**CALCULATION AND DISTRIBUTION OF SETTLEMENT AWARDS**

32.    **Settlement Award Eligibility.** All Participating Individuals shall be paid a Settlement Award from the Net Settlement Amount and/or the Net PAGA Amount.

33.     Any California Class Member who fails to submit a timely request to exclude themselves from the Settlement by following the procedure set forth in the Settlement Notice shall automatically be deemed a Participating Individual whose rights and claims with respect to the issues raised in the Action are determined by any order the Court enters granting Final Approval, and any judgment the Court ultimately enters in the Action and are subject to the Released California Class Claims (as defined in Paragraph 20.a above). Any such Participating Individual's rights to pursue any Released Claims will be extinguished.

34.     **Settlement Award Calculations.** The Settlement Administrator shall be responsible for determining the amount of the Settlement Award to be paid to each Participating Individuals based on the below formulas:

    a.     Participating Individuals who do not timely request exclusion shall receive a *pro rata* portion of the Net Settlement Amount as follows: For each week during which the Participating Individual who did not timely request exclusion performed work for Defendants as alleged in the Operative Complaint, he or she shall be eligible to receive a *pro rata* portion of the Net Settlement Amount based on the number of workweeks the Participating Individual who did not timely request exclusion worked at any time in California between November 5, 2017 and the date of Preliminary Approval or  June 1, 2023, whichever comes sooner. The total number of workweeks may be determined by reference to weeks worked by Participating Individuals who did not timely request exclusion as reflected in timekeeping, payroll, and/or other records. A Participating Individual who did not timely request exclusion will not receive a *pro rata* portion of the Net Settlement Amount.

    b.     Aggrieved Employees shall also receive a *pro rata* portion of the Net PAGA Amount as follows:

        i.     For each week during which the Participating Individual performed work for Defendants as alleged in the Operative Complaint, he or she shall be eligible to receive a *pro rata* portion of the Net PAGA Amount based on the number of workweeks the Participating Individual worked at any time in California between October 26, 2020 and the date of Preliminary Approval or June 1, 2023, whichever comes sooner. The resulting share of the Net PAGA Amount per Participating Individual, if any, will be added to the Participating Individual's share of the Net Settlement Amount, to determine the Participating Individual's Settlement Award. The total number of workweeks may be determined by reference to weeks worked as reflected in timekeeping, payroll, and/or other records.

35.     In addition to other information contained on the Settlement Notice, the Settlement Notice shall state the estimated minimum payment the class member is expected to receive assuming full participation of all Settlement Class Members.

36.     All Settlement Award determinations shall be based on the weeks worked as reflected by Defendants' timekeeping, payroll, and/or other records. If the Parties determine, based upon further review of available data, that a person previously identified as being a Settlement

Class Member is not a Settlement Class Member, or an individual who was not previously identified as a Settlement Class Member is in fact a Settlement Class Member but was not so included, the Settlement Administrator shall promptly make such addition or deletion as appropriate.

37.    **Settlement Award Allocations.** Any portion of each Settlement Award that is provided from the Net PAGA Amount shall be allocated as penalties. For the remainder of each Settlement Award that is provided from the Net Settlement Amount, twenty percent (20%) of each Settlement Award shall be allocated as wages, eighty percent (80%) of each Settlement Award shall be allocated as penalties and interest. Settlement Awards will be paid out to Participating Individuals who do not timely request exclusion subject to reduction for all employee's share of withholdings and taxes associated with the wage-portion of the Settlement Awards, for which Participating Individuals shall be issued an IRS Form W-2 for the portions of the Settlement Awards that are allocated to wages, if any. Participating Individuals will also be issued an IRS Form 1099 for the portions of the Settlement Awards that are allocated to penalties and interest. The Settlement Administrator shall provide Defendants' counsel with a final Settlement Award calculation award for each Participating Individual within seven (7) calendar days after the Effective Date. Amounts withheld will be remitted by the Settlement Administrator from the Qualified Settlement Fund to the appropriate governmental authorities. Defendants shall cooperate with the Settlement Administrator to provide payroll tax information as necessary to accomplish the income and employment tax withholding on the wage portion of each Settlement Award, and the Form 1099 reporting for the non-wage portion of each Settlement Award.

38.    Class Counsel and Defendants' Counsel do not intend this Settlement Agreement to constitute legal advice relating to the tax liability of any Settlement Class Member. To the extent that this Settlement Agreement, or any of its attachments, is interpreted to contain or constitute advice regarding any federal, state or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties.

39.    The payments made to Participating Individuals pursuant to this agreement are not being made for any other purpose and shall not be construed as compensation for purposes of determining eligibility for any health and welfare benefits or unemployment compensation, and no benefits, including but not limited to pension and/or 401(k), shall increase or accrue as a result of any payment made as a result of this Settlement, unless required by the plan documents or otherwise required by law.

40.    The Settlement Administrator shall provide Class Counsel and Defendants' Counsel with a final report of all Settlement Awards, no more than ten (10) days after the Effective Date.

41.    The Settlement Administrator shall mail all Settlement Awards to Participating Individuals who do not timely request exclusion within ten (10) days after the Defendants' deadline to deposit the Gross Settlement Amount into the Settlement Administrator's designated account or as soon as reasonably practicable thereafter. The Settlement Administrator shall then provide written certification of mailing to Class Counsel and Defendants' Counsel.

42.    All Settlement Award checks shall remain valid and negotiable for one hundred eighty (180) days from the date of their issuance and may thereafter automatically be canceled if not cashed within that time, at which time the right to recover any Settlement Award will be deemed void and of no further force and effect. With ninety (90) days remaining, a reminder letter (**Exhibit 4 herein**) will be sent via U.S. mail to those who have not yet cashed their settlement

check. At the conclusion of the 180 day check cashing deadline, Participating Individuals who have not cashed their Settlement Award checks shall nevertheless be deemed to have finally and forever released the Named Plaintiff's Released Claims or Participating Individuals' Released Claims, as applicable.

43.  **Remaining Monies.** If at the conclusion of the 180-day check cashing period set forth above, any funds remain from checks that are returned as undeliverable or are not negotiated, those monies shall be distributed, subject to the Court's approval, to the California State Controller Unclaimed Property Fund in the name of the Participating Individual to be held by the Controller's Office for the benefit of the Participating Individual until such time as he or she claims his or her property, as allowed by law.

  a. Within twenty-one (21) days after the distribution of any remaining monies to the, Plaintiffs will file a Post-Distribution Accounting. The Post-Distribution Accounting will set forth the total settlement fund, the total number of Settlement Class Members, the total number of Settlement Class Members to whom notice was sent and not returned as undeliverable, the number and percentage of opt-outs, the number and percentage of objections, the average and median recovery per Participating Individual, the largest and smallest amounts paid to Participating Individuals, the method(s) of notice and the method(s) of payment to Participating Individuals, the number and value of checks not cashed, the amounts distributed to the California State Controller Unclaimed Property Fund (if applicable), the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, and the multiplier, if any.

## MISCELLANEOUS

44.  **Class Action Fairness Act.** Defendants shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement not later than ten (10) days after a proposed settlement of a class action is filed in court, pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715.

45.  **Submissions to the LWDA.** At the same time as they submit this Class Action Settlement Agreement to the Court for Preliminary Approval, Class Counsel shall submit a copy of this Agreement to the LWDA, as required by California Labor Code § 2699(*l*)(2). Within ten (10) days following the Effective Date, Class Counsel shall submit a copy of the Final Approval Order and Judgment entered by the Court to the LWDA, as required by California Labor Code § 2699(*l*)(3).

46.  **Confidentiality.** The Named Plaintiff and their Counsel agree to keep the facts and terms of this Settlement confidential until approval of the Settlement is sought from the Court to the extent permitted by law. Thereafter, the Named Plaintiff and their Counsel agree that they will not issue a press release or hold any press conferences or initiate contact with a member of the press, including on social media, about this case and/or the fact, amount or terms of the Settlement to the extent permitted by law. If the Named Plaintiff is contacted by the press about the Settlement, they will respond only that the case has been resolved. Nothing in this paragraph shall prevent Class Counsel from communicating with the Settlement Class Members, the LWDA, or the court in which the Action is pending, as may be required to carry out the terms of this Settlement and/or fulfill their ethical responsibilities under the Settlement and to their respective clients. Nothing in

this provision is intended to violate applicable state law and this provision will be interpreted in accordance with applicable state law.

47.    **No Admission of Liability.** Defendants expressly deny all of the allegations in the Actions. Defendants expressly deny that they have violated the PAGA, California wage and hour laws, or any other provision of federal or state law with respect to any of their employees. This Settlement Agreement and all related documents are not and shall not be construed as an admission by Defendants or any of the Releasees of any fault or liability or wrongdoing. If this Settlement Agreement does not become final, this Settlement Agreement, or the circumstances leading to this Settlement Agreement, may not be used as an admission by Defendants or any wrongdoing or evidence of any wrongdoing by Defendants.

48.    **Defendants' Legal Fees.** Defendants' legal fees and expenses in this Action shall be borne by Defendants.

49.    **Nullification of the Settlement Agreement.** In the event: (a) the Court does not preliminarily or finally approve the Settlement as provided herein; or (b) the Settlement does not become Final for any other reason; or (c) the Effective Date does not occur, the Parties agree to engage in follow up negotiations with the intent of resolving the Court's concerns that precluded approval, and if feasible, to resubmit the Settlement for approval within thirty (30) days. If the Settlement is not approved as resubmitted or if the Parties are not able to reach another agreement, then either Party may void this Agreement; at that point, the Parties agree that each shall return to their respective positions on the day before this Agreement and that this Agreement shall not be used in evidence or argument in any other aspect of their litigation.

50.    **Reduced Service Awards, Fee Award, or Class Counsels' Costs Not a Basis for Voiding Settlement**. If the Court approves Service Awards, a Fee Award, and/or Class Counsels' Costs Award in amounts less than what Named Plaintiff and/or Class Counsel request, the Parties agree that the reduction in the Service Award(s), Fee Awards, and/or Class Counsels' Costs Award will not be a basis for nullification of this Settlement. Nor will a reduction in the Service Awards, Fee Award, or Class Counsels' Cost Award in any way delay or preclude the judgment from becoming Final or the Settlement from becoming effective. Any amount resulting from the reduction in the Service Award(s), Fee Awards, and/or Class Counsels' Costs Award shall be included in the Net Settlement Amount.

51.    **Inadmissibility of Settlement Agreement.** Except for purposes of settling this Action, or enforcing its terms (including that claims were settled and released), resolving an alleged breach, or for resolution of other tax or legal issues arising from a payment under this Settlement Agreement, neither this Agreement, nor its terms, nor any document, statement, proceeding or conduct related to this Agreement, nor any reports or accounts thereof, shall be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, without limitation, evidence of a presumption, concession, indication or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession or damage.

52.    **Computation of Time.** For purposes of this Agreement, if the prescribed time period in which to complete any required or permitted action expires on a Saturday, Sunday, or legal holiday (as defined by Federal Rule of Civil Procedure 6), such time period shall be continued to the following business day. The term "days" shall mean calendar days unless otherwise noted.

53. **Interim Stay of Proceedings.** The Parties agree to hold in abeyance all proceedings in the Action, except such proceedings necessary to implement and complete the Settlement. Further, without further order of the Court, the Parties hereto may agree in writing to reasonable extensions of time to carry out any of the provisions of the Settlement.

54. **Amendment or Modification.** This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors in interest. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

55. **Entire Settlement Agreement.** This Agreement with exhibits constitutes the entire Agreement among the Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized in such documents. All prior or contemporaneous negotiations, memoranda, agreements, understandings, and representations, whether written or oral, are expressly superseded hereby and are of no further force and effect. Each of the Parties acknowledges that they have not relied on any promise, representation or warranty, express or implied, not contained in this Agreement. No rights hereunder may be waived except in writing.

56. **Authorization to Enter into Settlement Agreement.** The Parties warrant and represent that they are authorized to enter into this Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement. The Parties and their counsel shall cooperate with each other and use their best efforts to effect the implementation of the Agreement. In the event that the Parties are unable to reach resolution on the form or content of any document needed to implement this Agreement, or on any supplemental provisions or actions that may become necessary to effectuate the terms of this Agreement, the Parties shall seek the assistance of a mediator.

57. **Binding on Successors and Assigns.** This Agreement shall be binding upon, and inure to the benefit of Named Plaintiff, Defendants, the Participating Individuals and their heirs, beneficiaries, executors, attorneys, administrators, successors, transferees, successors, assigns, or any corporation or any entity with which any party may merge, consolidate or reorganize. The Parties hereto represent, covenant and warrant that they have not directly or indirectly assigned, transferred, encumbered or purported to assign, transfer or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

58. **Counterparts.** This Agreement may be executed in one or more counterparts, including by facsimile or email. All executed counterparts and each of them shall be deemed to be one and the same instrument. All executed copies of this Agreement, and photocopies thereof (including facsimile and/or emailed copies of the signature pages), shall have the same force and effect and shall be as legally binding and enforceable as the original.

59. **No Signature Required by Participating Individuals.** Only the Named Plaintiff will be required to execute this Settlement Agreement. The Settlement Notice will advise all Settlement Class Members of the binding nature of the release and such shall have the same force and effect as if this Settlement Agreement were executed by each Participating Individual.

60. **Cooperation and Drafting.** The Parties have cooperated in the drafting and preparation of this Agreement; hence the drafting of this Agreement shall not be construed against

any of the Parties. The Parties agree that the terms and conditions of this Agreement were negotiated at arm's length and in good faith by the Parties and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

61.     **Mutual Full Cooperation:** <u>The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement, including, but not limited to, execution of such documents and to take</u> such other action as may reasonably be necessary to implement the terms of this Settlement. The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court to effectuate this Settlement and the terms set forth herein. In the event the Parties are unable to reach an Stipulation on the form or content of any document needed to implement the Settlement, or on any supplemental provisions or actions that may become necessary to effectuate the terms of this Settlement, the Parties shall seek the assistance of the mediator and/or the Court to resolve such disagreement. The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in administration of the Settlement, noting that the cost of administering the Settlement shall be deducted from the Gross Settlement Fund subject to approval by the Court.

62.     **Governing Law.** All terms of this Settlement Agreement and the exhibits hereto shall be governed by and interpreted according to the laws of the State of California.

63.     **Jurisdiction of the Court.** The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Settlement and all orders and judgments entered in connection therewith, and the Parties and their Counsel submit to the jurisdiction of the Court for this purpose.

**IN WITNESS WHEREOF**, the Parties and their Counsel have executed this Settlement Agreement as follows:


**PLAINTIFF:**    _(signature)_                    Date: 4/24/, 2023
              Rito Lopez


**APPROVED AS TO FORM BY CLASS COUNSEL:**

              _(signature)_                        Date: ___May 3___, 2023
              Carolyn Hunt Cottrell
              Caroline N. Cohen
              Andrew Weaver
              SCHNEIDER WALLACE
              COTTRELL KONECKY LLP
              2000 Powell Street, Suite 1400
              Emeryville, California 94608


**DEFENDANT:**    _____         Date: _____, 2023

any of the Parties. The Parties agree that the terms and conditions of this Agreement were negotiated at arm's length and in good faith by the Parties and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

61.    **Mutual Full Cooperation:** <u>The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement, including, but not limited to, execution of such documents and to take</u> such other action as may reasonably be necessary to implement the terms of this Settlement. The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court to effectuate this Settlement and the terms set forth herein. In the event the Parties are unable to reach an Stipulation on the form or content of any document needed to implement the Settlement, or on any supplemental provisions or actions that may become necessary to effectuate the terms of this Settlement, the Parties shall seek the assistance of the mediator and/or the Court to resolve such disagreement. The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in administration of the Settlement, noting that the cost of administering the Settlement shall be deducted from the Gross Settlement Fund subject to approval by the Court.

62.    **Governing Law.** All terms of this Settlement Agreement and the exhibits hereto shall be governed by and interpreted according to the laws of the State of California.

63.    **Jurisdiction of the Court.** The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Settlement and all orders and judgments entered in connection therewith, and the Parties and their Counsel submit to the jurisdiction of the Court for this purpose.

**IN WITNESS WHEREOF**, the Parties and their Counsel have executed this Settlement Agreement as follows:

**PLAINTIFF:** _____    Date: _____, 2023
Rito Lopez

**APPROVED AS TO FORM BY CLASS COUNSEL:**

_____    Date: _____, 2023
Carolyn Hunt Cottrell
Caroline N. Cohen
Andrew Weaver
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608

**DEFENDANT:** _____    Date: 4-28-2023 , 2023

On behalf of Environmental Sampling
Supply, Inc.

**DEFENDANT:** _____  Date: __May 1_____, 2023
On behalf of Eurofins Scientific, Inc.

**DEFENDANT:** _____  Date: _____, 2023
On behalf of TestAmerica Laboratories, Inc.

**APPROVED AS TO FORM BY DEFENDANTS' COUNSEL:**

_____  Date: _____, 2023
Barbara I. Antonucci
Sarah K. Hamilton
Elise G. Dvorochkin
CONSTANGY, BROOKS, SMITH & PROPHETE LLP
601 Montgomery Street, Suite 350
San Francisco, CA 94111

On behalf of Environmental Sampling
Supply, Inc.


**DEFENDANT:** _____  Date: _____, 2023
On behalf of Eurofins Scientific, Inc.


**DEFENDANT:** _*Robert S. Mitzel*_  Date: 04/24 _____, 2023
On behalf of TestAmerica Laboratories, Inc.


**APPROVED AS TO FORM BY DEFENDANTS' COUNSEL:**

_____  Date: ___05/01_____, 2023
Barbara I. Antonucci
Sarah K. Hamilton
Elise G. Dvorochkin
CONSTANGY, BROOKS, SMITH & PROPHETE LLP
601 Montgomery Street, Suite 350
San Francisco, CA 94111

EXHIBIT 1

*Rito Lopez v. Eurofins Scientific, Inc., et al.,*
United States District Court, Northern District of California, Case No. 3:21-cv-08652

## NOTICE OF SETTLEMENT
**PLEASE READ THIS NOTICE CAREFULLY.**

You received this Notice of Settlement ("Settlement Notice") because the records of Eurofins Scientific, Inc., TestAmerica Laboratories, Inc., and Environmental Sampling Supply, Inc., ("Defendants") show you performed work for Defendants in California sometime between November 5, 2017 and <CLOSE OF CLASS PERIOD>. Because you fit this definition, **you may be entitled to receive money from a Settlement[1] in this case, as described below**.

| 1. | Why Should You Read This Settlement Notice? |
|---|---|

This Settlement Notice explains your right to share in the monetary proceeds of this Settlement, exclude yourself ("opt out") from the Settlement, or object to the Settlement. If you object to the Settlement, you cannot opt out of the Settlement, and you will be bound by the terms of Settlement in the event the Court denies your objection.

The U.S. Court for the Northern District of California has preliminarily approved the Settlement as fair and reasonable. The Court will hold a Final Approval Hearing on _____, 2023 at _____, before the Honorable Laurel Beeler at the 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom B – 15th Floor.

| 2. | What Is This Case About? |
|---|---|

This class and representative lawsuit alleges that individuals whom Defendants employed as non-exempt employees in California between November 5, 2017, and <CLOSE OF CLASS PERIOD>, were not provided compliant meal and rest breaks; were not compensated for all hours worked; were not paid minimum, straight time, overtime, double time wages, or at the appropriate rate of pay; were not timely paid all wages due upon termination; were not provided timely and compliant itemized wage statements and pay and personnel records; and did not have all required employment records maintained, among other claims asserted in the Action. This lawsuit seeks recovery of unpaid wages, statutory damages, civil penalties under the California Labor Code Private Attorneys General Act ("PAGA"), restitution, interest, and attorneys' fees and costs. The claims in this lawsuit are brought under California law.

Defendants contend that they have legal and factual defenses to these claims, but recognizes the risks, distractions, and costs associated with litigation. Defendants contend that the wage and hour policies and practices at issue, including those regarding payment for time worked, overtime pay, meal breaks, rest breaks, and record keeping, are lawful and have been lawful throughout the

---

[1] This notice summarizes the proposed Settlement. The capitalized terms in this Settlement Notice have defined meanings that are set out in detail in the Settlement Agreement. To review a copy of the Settlement Agreement, please visit the Settlement website at [INSERT URL].

relevant time period.  Defendants also contend that Plaintiff's claims do not meet the requirements for class certification.

This Settlement is the result of good faith, arm's length negotiations between Plaintiff and Defendants, through their respective attorneys.  Both sides agree that in light of the risks and expenses associated with continued litigation, this Settlement is fair and appropriate under the circumstances, and in the best interests of the Class Members.  This Settlement is a compromise and is not an admission of liability on the part of Defendants.

The Court has not ruled on the merits of Plaintiffs' claims or Defendants' defenses.

The Settlement Administrator has created a Settlement website, which can be accessed at [INSERT URL].  The Settlement website allows interested persons to view the Settlement Agreement, all papers filed by Class Counsel to obtain Court approval of the Settlement Agreement, and this Settlement Notice (in generic form). The Settlement website also provides contact information for Class Counsel and the Settlement Administrator.

## 3.      What Are the Terms of the Settlement?

Defendants have agreed to pay One Million and Seven Hundred Thousand Dollars ($1,700,000.00) to settle this lawsuit ("Gross Settlement Amount"). Deductions from this amount will be made for attorneys' fees and costs for Class Counsel (up to $566,666.67, plus attorneys' costs not to exceed $25,000.00; see Section 9 below), settlement administration costs (estimated to be $13,000), a service award in the amount not to exceed Ten Thousand Dollars ($10,000.00) to Named Plaintiff Rito Lopez for his service to the Class, and penalties of Fifty-Six Thousand Two Hundred Fifty Dollars ($56,25000) to the Labor and Workforce Development Agency, and Eighteen Thousand Seven Hundred Fifty Dollars ($18,750) to Aggrieved Employees for their portion of the Net PAGA Amount (regardless of whether they opt-out of the Class). After deductions of these amounts, what remains of the Gross Settlement Amount (the total of the "Net Settlement Amount") will be available to pay monetary Settlement Awards to (i) Plaintiff and (ii) all Class Members who do not opt out of the Class.

The following persons will be eligible to receive a monetary award from the Net Settlement Amount: (1) Plaintiff and (2) all non-exempt individuals who worked for Defendants between November 5, 2017, and <CLOSE OF CLASS PERIOD> in the state of California ("Class Period").

Individuals who worked for Defendants between October 25, 2020, and <CLOSE OF CLASS PERIOD> ("PAGA Period") in the state of California ("Aggrieved Employees") will also receive a monetary award from the Net PAGA Amount.

## 4.      How Much Can I Expect to Receive?

All Participating Individuals who do not timely request exclusion will receive a *pro rata* share of the Net Settlement Amount based on the total number of workweeks that the Participating Individual who did not timely request exclusion worked for Defendants during the Class Period. Participating Individuals shall receive *a pro rata* portion of the Net Settlement Amount as

follows:

1. Each Participating Individual who did not timely request exclusion shall be eligible to receive a *pro rata* portion of the Net Settlement Amount based on the number of workweeks the Participating Individual who did not timely request exclusion worked during this Class Period. Each workweek will be equal to one (1) settlement share. A Participating Individual who did not timely request exclusion will not receive a *pro rata* portion of the Net Settlement Amount.

2. The total number of settlement shares for all Participating Individuals who do not timely request exclusion will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. That figure will then be multiplied by the number of settlement shares from each Participating Individual who did not timely request exclusion to determine the share of the Net Settlement Amount for each Participating Individual who did not timely request exclusion.

Aggrieved Employees who worked for Defendants between October 25, 2020, and <CLOSE OF PAGA PERIOD> in the state of California shall also receive an equal share of the Net PAGA Amount. The Net PAGA Amount is $18,75000. The total number of Aggrieved Employees will be divided into the Net PAGA Amount. The resulting Net PAGA Amount per Aggrieved Employee, if any, will be added to the Participating Individual's share (if any) of the Net Settlement Amount, to determine the Participating Individual's Settlement Award. Aggrieved Employees who are not Participating Individuals because they have timely opted out will still receive their share of the Net PAGA Amount.

All Settlement Award determinations will be based on Defendants' timekeeping, payroll, and/or other records for Class members. According to records maintained by Defendants, your total estimated settlement payment will be at least $_____. This amount is an estimated amount, and your final settlement payment is expected to differ from this amount (i.e., it could be higher or lower) and will be calculated as set forth above. Based on Defendants' records, you are estimated to have worked _____ workweeks for Defendants.

If you dispute the number of workweeks as shown on this Settlement Notice, you may produce evidence to the Settlement Administrator establishing the dates you contend to have worked for Eurofins Scientific, Inc. To do so, send a letter to the Settlement Administrator explaining the basis for your dispute and attach copies of the supporting evidence. Unless you present convincing evidence proving you worked more workweeks than shown by Defendants' records, your Settlement Award will be determined based on Defendants' records. Any disputes must be postmarked by [INSERT DATE, which is **forty-five (45) days** from the mailing of this Settlement Notice] and should be mailed to [INSERT SETTLEMENT ADMINISTRATOR ADDRESS]. The Settlement Administrator will notify you of the decision on the dispute.

For tax reporting purposes, Settlement Awards to Participating Individuals and Aggrieved Employees will be allocated as follows: any portion of each Settlement Award that is provided from the Net PAGA Amount shall be allocated as penalties; for the remainder, if any, of each Settlement Award, one-fifth (20%) of each Settlement Award shall be allocated as wages, four-fifths (80%) of each Settlement Award shall be allocated as penalties and as interest. You will

receive an IRS form 1099 for your portion of the Net PAGA Amount and, where applicable, penalties and interest portion of your Settlement Award, and a IRS Form W-2 for the wage portion of your Settlement Award. None of the Parties or attorneys makes any representations concerning the tax consequences of this Settlement or your participation in it. Participating Individuals should consult with their own tax advisors concerning the tax consequences of the Settlement.

If you participate in the Settlement, you will have 180 days to cash the check that will be sent to you, and if not cashed by then, the check will be void. If at the conclusion of the 180-day check void period, there are any uncashed checks, those monies will be submitted to the California State Controller Unclaimed Property Fund in the participant's name, subject to the Court's approval in the Final Approval Order.

**It is your responsibility to keep a current address on file with the Settlement Administrator to ensure receipt of your monetary Settlement Award. If you fail to keep your address current, you may not receive your Settlement Award. You may contact the Settlement Administrator [name]_at  [contact information] to update your address.**

| 5. | How Do I Appear at the Final Approval and Fairness Hearing? |
|---|---|

If you do not request to be excluded from the settlement, you may appear at the Final Approval Hearing. You do not have to attend the Final Approval Hearing, but you may do so at your own expense. You may also pay your own lawyer to attend, but it is not necessary.

You may remotely appear at the Final Approval Hearing by scheduling an appearance via zoom at https://apps.cand.uscourts.gov/telhrg/. You may also attend the Fairness Hearing in person, but due to the evolving nature of the pandemic, you should check for the latest updates on accessing the courthouse by viewing the Court's website at https://www.cand.uscourts.gov/.

| 6. | What Are The Releases? |
|---|---|

Upon Final Approval of the Settlement Agreement and payment of amounts set forth under the Settlement, all Participating Individuals release claims as follows ("Released Claims") against Eurofins Scientific, Inc., Environmental Sampling Supply, Inc., TestAmerica Laboratories, Inc., ESSVIAL, Inc., Eurofins Environment Testing America Holdings, Inc., and their present and former parent companies, subsidiaries, related or affiliated companies or entities, and any of their shareholders, affiliates, owners, members, joint employers, representatives, officers, directors, employees, agents, attorneys, insurers, predecessors, successors and assigns, as well as any individual or entity that could be liable for any of the Released Claims (collectively, the "Releasees"):

- Participating Individuals: The California Class Members who do not timely and validly request exclusion from the Settlement shall release the Releasees from any and all claims that were alleged or could have been alleged based on the facts alleged, related to, or ascertained in the Action, including but not limited to the Operative Complaint and Amended PAGA Letter(s) between November 5, 2017 and the date of Preliminary Approval or June 1, 2023, whichever comes sooner. This includes claims for: the purported

payment or nonpayment of compensation (including, but not limited to, wages, minimum wage, straight time, overtime, and/or premium pay), meal or rest period premiums or penalties; failure to pay for all hours worked; failure to timely pay wages during employment; failure to pay wages at discharge or termination; failure to provide compliant meal and rest periods; failure to accurately record time, including all time worked (such as off-the-clock, meal periods, rounding, and auto-deduction of meal periods); failure to provide timely and compliant wage statements and to maintain records; unfair business practices; related premiums, statutory penalties, waiting time penalties, civil penalties; liquidated damages; interest; punitive damages; costs; attorneys' fees; injunctive relief; declaratory relief; or accounting, whether such causes of action are in tort, contract, or pursuant to a statutory remedy.

- The release period for PAGA claims runs from October 25, 2020, through <mark><CLOSE OF CLASS PERIOD></mark> ("PAGA Period"), and covers all claims pursuant to PAGA that were alleged in the Action, for the PAGA Period.

- Upon Final Approval, the Named Plaintiff fully releases the claims and rights to recover civil penalties, costs, expenses, attorneys' fees, interest, injunctive relief, declaratory relief, or accounting, against the Releasees on behalf of Aggrieved Employees and the LWDA for any Labor Code or Wage Order violation alleged or could have been alleged based on the facts alleged, related to, or ascertained in the Action, including but not limited to the Operative Complaint and Amended PAGA Letter(s) between October 26, 2020 and the date of Preliminary Approval or  June 1, 2023, whichever comes sooner. This includes claims pursuant to PAGA for: failure to pay minimum wage; failure to pay overtime wages; failure to provide meal and rest periods and/or premiums; failure to accurately record time, including all time worked (such as off-the-clock, meal periods, rounding, and auto-deduction of meal periods); failure to compensate for all hours worked; unlawful withholding of wages; underpayment of wages; failure to provide to provide timely and compliant itemized wage statements and to maintain records; failure to timely pay wages during employment; and failure to pay wages at discharge or termination.

- There shall be no right for any Aggrieved Employee to opt out or otherwise exclude himself or herself from the release of PAGA claims. The Final Approval Order and the Judgment entered as a result of this Settlement shall have *res judicata* and preclusive effect to the fullest extent allowed by law.

| 7. | **What Are My Rights?** |
|----|------------------------|

- **Do Nothing**: If you are a Class Member and do not timely and validly opt-out, you will automatically become a Participating Individual and receive your Settlement Award, and will be bound by the Settlement including its release provisions.

- **Opt-Out**: If you are a member of the Class and do not wish to be bound by the Settlement, you must submit a written exclusion from the Settlement ("opt-out"), postmarked by [<mark>INSERT DATE</mark>, which is **forty-five (45) days** from the mailing of this Settlement Notice]. The written request for exclusion must contain your full name, address, telephone number,

email address (if applicable), last four digits of your social security number, and must be signed individually by you. No opt-out request may be made on behalf of a group. The opt-out request must be sent by mail to the Settlement Administrator at [INSERT SETTLEMENT ADMINISTRATOR ADDRESS]. **Any person who requests exclusion (opts out) of the settlement will not be entitled to any Settlement Award and will not be bound by the Settlement Agreement or have any right to object, appeal or comment thereon, however Class Members may not Opt-Out of the PAGA portion of the release.**

- **Object**: If you received this Settlement Notice and wish to object to the Settlement, you must submit a written statement objecting to the Settlement by [INSERT DATE, which is **forty-five (45) days** from the mailing of this Settlement Notice]. The statement must state the factual and legal grounds for your objection to the settlement. The statement must state your full name, address, telephone number, and email address (if applicable), and must be signed by you.

If you mail a written objection, you may also, if you wish, appear at the Final Approval Hearing to discuss your objection with the Court and the parties to the Lawsuit. Your written objection must state whether you will attend the Final Approval Hearing, and your written notice of your intention to appear at the Final Approval Hearing must be served upon the Settlement Administrator on or before the Notice Deadline, which is **forty-five (45) days** from the mailing of this Settlement Notice. To be heard at the Final Approval Hearing you must also not opt out of the Settlement. If you wish to object to the Settlement but fail to return your timely written objection in the manner specified above, you shall be deemed to have waived any objection and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement. The postmark date of mailing to the Settlement Administrator shall be the exclusive means for determining that an objection is timely mailed. Objections shall only be considered if the Class Member has not opted out of the Settlement. The failure to submit a written objection as a prerequisite to appearing in court to object to the settlement may be excused upon a showing of good cause.

| | |
|---|---|
| **8.** | **Can Defendants Retaliate Against Me for Participating in this Lawsuit?** |

No. Your decision as to whether or not to participate in this Lawsuit will in no way affect your work or employment with Defendants or future work or employment with Defendants. It is unlawful for Defendants to take any adverse action against you as a result of your participation in this Lawsuit. In fact, Defendants encourage you to participate in this Settlement.

| 9. | Who Are the Attorneys Representing Plaintiffs and the Class Members? |
|---|---|

Plaintiffs and the Class Members are represented by the following attorneys acting as Class Counsel:

Carolyn H. Cottrell
Caroline Cohen
Andrew Weaver
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (800) 689-0024
Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com
ccohen@schneiderwallace.com
aweaver@schneiderwallace.com

Defendants are represented by the following attorneys:

Barbara I. Antonucci (SBN 209039)
Sarah K. Hamilton (SBN 238819)
Nathan K. Norimoto (SBN 334835)
**CONSTANGY, BROOKS, SMITH &**
**PROPHETE, LLP**
601 Montgomery Street, Suite 350
San Francisco, CA 94111
Telephone: 415.918.3000
bantonucci@constangy.com
shamilton@constangy.com
nnorimoto@constangy.com

| 10. | How Will the Attorneys for the Class Be Paid? |
|---|---|

Class Counsel will be paid from the Gross Settlement Amount of $1,700,000. You do not have to pay the attorneys who represent the Class. The Settlement Agreement provides that Class Counsel will receive attorneys' fees of up to thirty-three and one-third (33 1/3%) of $1,700,000.00 (i.e., $566,666.67) plus their out-of-pocket costs, not to exceed $25,000.00. The amount of attorneys' fees and costs awarded will be determined by the Court at the Final Approval Hearing.

| 11. Where can I get more information? |
|---|

If you have questions about this Settlement Notice, or the Settlement, or if you did not receive this Settlement Notice in the mail and you believe that you are or may be a member of the Settlement, you should contact the Class Counsel.

This Settlement Notice is only a summary. For the precise terms and conditions of the Settlement, please see the Settlement Agreement available at the Settlement website at [INSERT URL], by

contacting the Settlement Administrator toll-free at [dedicated phone number] or Class Counsel at the contact information listed above, by accessing the Court docket in this case by searching the case number (3:21-cv-08652) through the Court's electronic public records system at https://pacer.uscourts.gov/ or by visiting the office of the Clerk of the Court for the Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, between 9:00 a.m. and 6:00 p.m., Monday through Friday, excluding Court holidays, to simply request to order public court documents filed in the Action.

**PLEASE DO NOT CONTACT THE COURT, THE CLERK OF THE COURT, THE JUDGE, OR DEFENDANTS FOR INFORMATION ABOUT THE PROPOSED SETTLEMENT OR THIS LAWSUIT.**

EXHIBIT 2

Carolyn H. Cottrell (SBN 166977)
Caroline N. Cohen (SBN 278154)
Andrew Weaver (SBN 318935)
Kristabel Sandoval (SBN 323714)
Philippe M. Gaudard (SBN 331744)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com
ccohen@schneiderwallace.com
aweaver@schneiderwallace.com
ksandoval@schneiderwallace.com
pgaudard@schneiderwallace.com

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| RITO LOPEZ, on behalf of himself and the putative Class members; | Case No. 3:21-cv-08652 |
| Plaintiff, | **SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF:** |
| vs. | (1) Failure to Pay for All Hours Worked (Labor Code § 204, 256, and 225.5); |
| EUROFINS SCIENTIFIC, INC., ENVIRONMENTAL SAMPLING SUPPLY, INC., TESTAMERICA LABORATORIES, INC., and DOES 1-100, inclusive; | (2) Failure to Pay Minimum Wages (Labor Code §§ 558, 1182.11, 1182.12, 1194, 1197, 1197.1 and 1198); |
| Defendants, | (3) Failure to Pay Overtime Wages (Labor Code § 510); |
|  | (4) Failure to Provide Timely and Accurate Itemized Wage Statements and Records (Labor Code § 226, 226.3 226.6, 432, 1174, 1198.5, and 2810.5); |
|  | (5) Unlawful Business Practices (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); |
|  | (6) Failure to Authorize and Permit and/or Make Available Meal and Rest Periods (Labor Code §§ 226.7 and 512 ; IWC Wage Order 4-2001) ; |
|  | (7) Failure to Timely Pay Wages During Employment (Labor Code § 204); |

(8) Failure to Timely Pay Wages at
Termination/Waiting Time Penalties
Pursuant to Labor Code §§ 201, 202,
and 203

(9) Penalties Pursuant to Labor Code §
2699(a), (f)

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1.      Plaintiff Rito Lopez ("Plaintiff") brings this action on behalf of himself and other similarly situated individuals against Eurofins Scientific, Inc. ("Eurofins"), Environmental Sampling Supply, Inc. ("ESS"), and TestAmerica Laboratories, Inc. ("TestAmerica") (collectively "Defendants"), for violations of California wage and hour laws.

2.      This action stems from Defendants' policies and practices of: (1) failing to compensate Plaintiff and putative Class members for all hours worked; (2) failing to pay Plaintiff and putative Class members minimum wage for all hours worked; (3) failing to pay Plaintiff and putative Class members overtime wages; (4) failing to provide Plaintiff and putative Class members true and accurate itemized wage statements and records; (5) engaging in unfair business practices; (6) failing to provide meal and rest breaks; (7) failure to timely pay wages during employment; (8) failure to timely pay wages at termination/waiting time penalties. Plaintiff also seeks penalties pursuant to California Labor Code §§ 2699(a) and (f) on behalf of Aggrieved Employees for the same policies and practices.

3.      Plaintiff seeks damages, penalties, and interest to the full extent permitted by the California Labor Code and Industrial Welfare Commission ("IWC") Wage Orders, as well as other relief requested herein. Plaintiff, on behalf of the State of California, also seeks to recover penalties and reasonable attorneys' fees for these violations pursuant to Sections 2699(a) and (f) of the California Labor Code Private Attorneys General Act ("PAGA").

## PARTIES

4.      Plaintiff Rito Lopez is an individual over the age of eighteen, and at all times mentioned in this Complaint was a resident of the State of California.

5.      Plaintiff is currently employed by Defendants for various projects as a packer. Plaintiff began employment with Defendants in January 1990.  Plaintiff works for Defendants in Oakland, California.

6. Plaintiff is informed, believes, and thereon alleges that Eurofins is a Delaware corporation headquartered in Des Moines, Iowa. Eurofins is registered to do business in California, does business in California and employs and/or employed hourly, non-exempt employees, including Plaintiff and the putative Class members in California. Eurofins may be served with process by serving its registered agent, Cogency Global, Inc., 1325 J Street, Suite 1550, Sacramento, California 95814.

7. Plaintiff is informed, believes, and thereon alleges that ESS is a Delaware corporation headquartered in San Leandro, California. ESS is registered to do business in California, does business in California and employs and/or employed hourly, non-exempt employees, including Plaintiff and Aggrieved Employees in California. ESS may be served with process by serving its registered agent, Cogency Global, Inc., 1325 J Street, Suite 1550, Sacramento, California 95814.

8. Plaintiff is informed, believes, and thereon alleges that TestAmerica is a Delaware corporation headquartered in North Canton, Ohio. TestAmerica is registered to do business in California, does business in California and employs and/or employed hourly, non-exempt employees, including Plaintiff and Aggrieved Employees in California. TestAmerica may be served with process by serving its registered agent, Cogency Global, Inc., 1325 J Street, Suite 1550, Sacramento, California 95814.

9. Defendants employ and/or employed Plaintiff and putative Class members because Defendants, directly or indirectly, control the employment terms, pay practices, timekeeping practices, and daily work of Plaintiff and putative Class members. Putative Class members employed since October 25, 2020 are also Aggrieved Employees.

10. Plaintiff is informed, believes, and thereon alleges that each and every one of the acts and omission alleged herein were performed by, and/or attributable to, Defendants, each acting as agents and/or employees, and/or under the direction and control of each of the other, and that said acts and failures to act were within the

course and scope of said agency, employment and/or direction and control.

11.    At all material times, Defendants have done business under the laws of California, have had places of business in California, including in this judicial district, and have employed putative Class members in this District and elsewhere throughout California. Defendants are "persons" as defined in Labor Code § 18 and an "employer" as that term is used in the Labor Code, the IWC Wage Orders regulating wages, hours, and working conditions, and the California Business and Professions Code § 17201.

## JURISDICTION AND VENUE

12.    This Court has original federal jurisdiction under 28 U.S.C. § 1332. Plaintiff seeks damages in an amount that exceeds $75,000.00 and the matter in controversy is between citizens of different States. This Court has supplemental jurisdiction over Plaintiff's California state law claims under 28 U.S.C. § 1367(a) because they are so related to this action that they form part of the same case or controversy.

13.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b). Plaintiff was employed in this District and the claims asserted arose in this District. At all material times Defendants have been actively conducting business in the State of California and within the geographic area encompassing the Northern District of the State of California.

## FACTUAL ALLEGATIONS

14.    Eurofins provides a range of analytical testing services to clients across multiple industries. Eurofins is one of the global leaders in food, environmental, pharmaceutical, and cosmetic products testing and in AgroSciences Contract Research Organization ("CRO") services.  On information and belief, Eurofins has over 12,000 employees and operated approximately 80 locations throughout the United States, including the state of California. Plaintiff is informed, believes, and thereon alleges that Eurofins employs hundreds of hourly, non-exempt workers

similarly situated to Plaintiff in California.

15.   ESS manufactures quality TOC Vials, EPA Vials, VOAS and many products for environmental sampling and analysis. Plaintiff is informed, believes, and thereon alleges that ESS employs hundreds of hourly, non-exempt workers similarly situated to Plaintiff in California

16.   TestAmerica is a leading analytical laboratory for environmental testing services in the United States. Plaintiff is informed, believes, and thereon alleges that TestAmerica employs hundreds of hourly, non-exempt workers similarly situated to Plaintiff in California.

17.   Plaintiff works for Defendants as a packer in Oakland, California. Plaintiff began employment with Defendants in January 1990. Plaintiff is classified as an hourly, non-exempt employee and is paid an hourly rate of approximately $16.52.

18.   Plaintiff is informed, believes, and thereon alleges that Defendants employ and have employed hundreds of hourly, non-exempt workers similarly situated to Plaintiff in California, including but not limited to packers, warehouse assistants, sample receiving – shipping technicians and other employees with similar job duties.

19.   Although Plaintiff's shifts may vary in length, Plaintiff usually worked eight (8) hours or more per shift, five (5) shifts per week. Plaintiff works approximately forty (40) hours per week, or more.

20.   Defendants routinely fail to pay compensation to Plaintiff and putative Class members, including requiring them to perform substantial work off-the-clock and without compensation and failing to pay for all hours worked, minimum wage, overtime, and premiums at the appropriate rates of pay. This includes but is not limited to Defendants requiring Plaintiff and putative Class members to wait in line, to go through temperature checks and to answer COVID-19 screening questionnaires prior clocking in for the start of their shift. It takes Plaintiff and putative Class

members at least one minute and often longer to go through the line, to undergo such temperature checks, and to answer the COVID-19 screening questionnaires *before* the beginning of each shift. This time spent in temperature check lines, undergoing temperature checks, and answering COVID-19 screening questionnaires goes unrecorded and therefore uncompensated.

21. In addition, Defendants require Plaintiff and putative Class members to wait in line in order to clock back in upon returning from their meal breaks. Plaintiff and putative Class members spend at least two additional minutes waiting in line after their meal breaks to clock back in for their afternoon shift. This time spent in line also goes unrecorded and therefore uncompensated.

22. As a result of these policies and/or practices, Plaintiff and putative Class members are denied compensation for all hours worked, minimum wages, overtime, and premiums at the appropriate rates of pay, which they are lawfully owed resulting from the additional off-the-clock work in excess of eight (8) hours per day and forty (40) hours per week.

23. Plaintiff and putative Class members are also denied complete and compliant meal and rest breaks. For example, due to the obligations placed upon them by Defendants, the rounded meal period punches, the automatically deducted meal periods, and a failure to properly record the actual meal periods provided, Plaintiff and putative Class members are unable to take complete, timely, compliant, and lawful meal and/or rest breaks and have not received compliant premium payments at the appropriate rate of pay.

24. Plaintiff is informed, believes, and thereon alleges that Defendants utilize and apply these "temperature check" and "COVID-19 screening" protocols, policies and practices across all Defendants' facilities throughout California.

25. Further, Plaintiff is informed, believes, and thereon alleges that Defendants institute a similar policy of not compensating employees while waiting in line to clock in after their meal breaks across all Defendants' facilities throughout

California.

26.     Plaintiff is informed, believes, and thereon alleges that Defendants utilize the same or substantially similar timekeeping mechanisms throughout all their facilities in California.

27.     Defendants' common course of wage-and-hour abuse also includes routinely failing to maintain and timely provide true and accurate pay records, personnel records, and records of the hours worked by Plaintiff and putative Class members.

28.     As a result of the aforementioned violations, Plaintiff and Putative Class members are provided with untrue, non-compliant, improperly maintained, untimely, and inaccurate wage statements as such statements do not include payment for all hours worked, including appropriate rates of pay, minimum wages, and overtime, and do not accurately reflect gross wages earned, total hours worked,  the number of piece-rate units earned and any applicable piece rate, all deductions, net wages earned, the inclusive dates of the pay period, Plaintiff and putative Class members' names and only the last four digits of their social security number or an employee identification number other than a social security number, the name and address of the legal entity that is the employer, and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

29.     Putative Class members are employed by Defendants and performed work materially similar to Plaintiff.

30.     Putative Class members report to facilities owned, operated, or managed by Defendants to perform their jobs.

31.     Putative Class members perform their jobs under Defendants' supervision using materials and technology approved and supplied by Defendants.

32.     Putative Class members are required to follow and abide by Defendants' common work, time, and pay policies and procedures in the performance of their

jobs.

33. At the end of each pay period, putative Class members receive wages from Defendants that are determined by common systems and methods that Defendants select and control.

34. Defendants pay putative Class members on an hourly rate basis.

35. Defendants' method of paying Plaintiff and putative Class members is willful and not based on a good faith and reasonable belief that their conduct complied with California law.

36. Defendants' unlawful conduct has been widespread, repeated, and consistent throughout Defendants' California facilities.

37. Defendants know or should know that their policies and practices are unlawful and unfair.

38. Defendants' conduct is willful, carried out in bad faith, and causes significant damages to non-exempt hourly employees in an amount to be determined at trial.

39. Plaintiff provided notice to the LWDA and Defendants of his intent to pursue penalties on behalf of Aggrieved Employees pursuant to California Labor Code § 2698, et seq. ("PAGA") on October 25, 2021. Plaintiff provided amended notices on February 7, 2022, October 5, 2022, and May 9, 2023. Plaintiff has received no notice from the LWDA within the required time period of its intent to pursue the claims in Plaintiff's notice. Therefore, Plaintiff has completed all administrative prerequisites to bringing claims pursuant to PAGA on behalf of himself and Aggrieved Employees.

## **RULE 23 CLASS ACTION ALLEGATIONS**

40. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

41. Plaintiff brings this case as a class action on behalf of himself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23. The putative

SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Lopez v. Eurofins Scientific, Inc.*

Class that Plaintiff seeks to represent is defined as follows:

> **All current and former hourly, non-exempt employees of Eurofins Scientific, Inc., Environmental Sampling Supply, Inc., and TestAmerica Laboratories, Inc. throughout California during the time period starting four years prior to the filing of this Complaint until the resolution of this action ("the putative Class").**

42. This action has been brought and may properly be maintained as a class action under Rule 23 because there is a well-defined community of interest in the litigation and the putative class is easily ascertainable.

    a. **Numerosity**: The potential members of the putative Class as defined are so numerous that joinder of all the members of the putative Class is impracticable.

    b. **Commonality**: There are questions of law and fact common to Plaintiff and the putative Class that predominate over any questions affecting only individual members of the putative Class. These common questions of law and fact include, but are not limited to:

        i. Whether Defendants fail to compensate putative Class members for all hours worked, including at minimum wage and as overtime compensation, in violation of the Labor Code and Wage Orders;

        ii. Whether Defendants have a policy and/or practice of requiring putative Class members to be in the control of Defendants, spend time primarily for the benefit of Defendants, and work for Defendants off-the-clock and without compensation;

        iii. Whether Defendants fail to provide putative Class members with timely, accurate itemized wage statements in violation of the Labor Code and Wage Orders;

      iv.   Whether Defendants violate Business and Professions Code §§ 17200 *et seq.*, by:

          1.  failing to compensate putative Class members for all hours worked, including at minimum wage and at overtime rate wage compensation;

          2.  failing to provide putative Class members with timely, accurate itemized wage statements; and

      v.   The proper formula for calculating restitution, damages, and penalties owed to Plaintiff and the putative Class as alleged herein.

  c.  **Typicality:** Plaintiff's claims are typical of the claims of the Class. Defendants' common course of conduct in violation of law as alleged herein has caused Plaintiff and putative Class members to sustain the same or similar injuries and damages. Plaintiff's claims are thereby representative of and co-extensive with the claims of the Class.

  d.  **Adequacy of Representation**: Plaintiff is a member of the putative Class, does not have any conflicts of interest with other putative Class members, and will prosecute the case vigorously on behalf of the putative Class. Counsel representing Plaintiff is competent and experienced in litigating large employment class actions, including wage and hour cases. Plaintiff will fairly and adequately represent and protect the interests of the Class members.

  e.  **Superiority of Class Action**: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all putative Class members is not practicable, and questions of law and fact common to the putative Class predominate over any questions affecting only individual members of the putative Class. Each putative Class member has been damaged and is entitled to

recovery by reason of Defendants' illegal policies and/or practices. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

43. The putative Class may also be certified because the prosecution of separate actions by the individual members of the putative Class would create a risk of inconsistent or varying adjudication with respect to individual members of the putative Class, and, in turn, would establish incompatible standards of conduct for Defendants.

44. If each individual putative Class member were required to file an individual lawsuit, Defendants would necessarily gain an unconscionable advantage because Defendants would be able to exploit and overwhelm the limited resources of each member of the putative Class with Defendants' vastly superior financial legal resources.

45. Requiring each individual putative Class member to pursue an individual remedy would also discourage the assertion of lawful claims by the putative Class members who would be disinclined to pursue these claims against Defendants because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers, and well-being.

46. Plaintiff also seeks certification of the putative Class to the extent applicable under Federal Rule of Civil Procedure 23(b)(2) on the grounds that the party opposing the putative Class has acted or refused to act on grounds that apply generally to the putative Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the putative Class as a whole.

## FIRST CAUSE OF ACTION
### Failure to Pay for All Hours Worked
### Pursuant to Labor Code §§ 204, 256, and 225.5
### (On Behalf of Plaintiff and Putative Class Against All Defendants)

47. Plaintiff re-alleges and incorporates the foregoing paragraphs as though

fully set forth herein.

48. Labor Code § 200(a) defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation."

49. Labor Code § 204 provides that employers must compensate employees for all hours worked "twice during each calendar month, on days designated in advance by the employer as the regular paydays."

50. Labor Code § 256 provides that the Labor Commissioner shall impose a civil penalty in an amount not exceeding 30 days pay as waiting time under the terms of Section 203" of the Labor Code.

51. Labor Code § 225.5 provides that "[i] n addition to, and entirely independent and apart from, any other penalty provided in this article, every person who unlawfully withholds wages due any employee in violation of Section 212, 216, 221, 222, or 223 shall be subject to a civil penalty as follows: (a) For any initial violation, one hundred dollars ($100) for each failure to pay each employee. (b) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld."

52. IWC Wage Order 4-2001(2)(K) defines hours worked as "the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

53. Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Orders.

54. Defendants willfully engaged in and continues to engage in a policy and practice of not compensating and paying premiums at the appropriate rate to Plaintiff and putative Class members for all hours worked or spent in Defendants' control.

55. Defendants fail to pay Plaintiff and the putative Class members compensation including but not limited to wages, minimum wage, straight time,

overtime, and/or premium pay at the appropriate rates and regularly require Plaintiff and putative Class members, to complete additional work off-the-clock without compensation. For instance, and as mentioned above, Defendants instruct Plaintiff and putative Class members to wait in line, go through temperature checks, answer COVID-19 screening questionnaires *before* the beginning of each shift, *i.e.*, before clocking in. Additionally, Defendants require Plaintiff and putative Class members to wait in line in order to clock back in upon returning from their meal breaks. It takes Plaintiff and putative Class members at least one minute and often longer to go through the temperature check line, undergo such temperature check, and answer the COVID-19 screening questionnaires before their shift starts. It takes Plaintiff and Class members at least an additional two minutes to go through the line to clock back in after their meal break before their afternoon shift starts. Defendants do not compensate Plaintiff and putative Class members for their time spent in temperature check lines, undergoing temperature checks, answering COVID-19 questionnaires, and waiting in line upon return from meal breaks.

56.     As a result, Defendants fail to track Plaintiff and putative Class members' actual hours worked, and consequently fail to pay Plaintiff and putative Class members for all hours worked.

57.     Defendants require Plaintiff and putative Class members to work off-the-clock without compensation.  In other words, Plaintiff and putative Class members are forced to perform work for the benefit of Defendants without pay.

58.     In violation of California law, Defendants knowingly and willfully refuse to perform their obligations to provide Plaintiff and putative Class members with compensation for all time worked including paying minimum wage, overtime, and premiums at the appropriate rates. Defendants regularly fail to track and/or engage in the practice of rounding the time Plaintiff and putative Class members actually work and fail to compensate them for all hours worked including paying minimum wage, and overtime, and premiums at the appropriate rates

59. Therefore, Defendants committed, and continue to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of the Plaintiff and putative Class members' rights. Plaintiff and putative Class members are thus entitled to recover nominal, actual, and compensatory damages, plus interest and including penalties, attorneys' fees, expenses, and costs of suit.

60. As a proximate result of the aforementioned violations, Plaintiff and putative Class members have been damaged in an amount according to proof at time of trial.

61. Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## SECOND CAUSE OF ACTION
### Failure to Pay Minimum Wages
### Pursuant to California Labor Code §§ 558, 1182.11, 1182.12, 1194, 1197, 1197.1 and 1198
### (On Behalf of Plaintiff and Putative Class Against All Defendants)

62. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

63. During the applicable statutory period, California Labor Code §§ 1182.11, 1182.12 and 1197, and the Minimum Wage Order were in full force and effect, and required that Defendants' hourly employees receive the minimum wage for all hours worked irrespective of whether nominally paid on a piece rate, or any other basis, at the rate of ten dollars and fifty cents ($10.50) per hour commencing January 1, 2017; at the rate of eleven dollars ($11.00) per hour commencing January 1, 2018; at the rate of twelve dollars ($12.00) per hour commencing January 1, 2019; at the rate of thirteen dollars ($13.00) per hour commencing January 1, 2020; at the rate of fourteen dollars ($14.00) commencing January 1, 2021; and at the rate of fifteen dollars ($15.00) commencing January 1, 2022.

64. Labor Code § 1197.1 provides, in relevant part:

(a) Any employer or other person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an applicable state or local law, or by an order of the commission, shall be subject to a civil penalty, restitution of wages, liquidated damages payable to the employee, and any applicable penalties imposed pursuant to Section 203 as follows: (1) For any initial violation that is intentionally committed, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid. This amount shall be in addition to an amount sufficient to recover underpaid wages, liquidated damages pursuant to Section 1194.2, and any applicable penalties imposed pursuant to Section 203. (2) For each subsequent violation for the same specific offense, two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid regardless of whether the initial violation is intentionally committed. This amount shall be in addition to an amount sufficient to recover underpaid wages, liquidated damages pursuant to Section 1194.2, and any applicable penalties imposed pursuant to Section 203. (3) Wages, liquidated damages, and any applicable penalties imposed pursuant to Section 203, recovered pursuant to this section shall be paid to the affected employee.

65. California Labor Code §1194 states:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

66. IWC Wage Order 4-2001(2)(K) defines hours worked as "the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

67. Labor Code § 558 provides in relevant part:

      (a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

68.    Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Orders.

69.    Labor Code §1194.2 provides that, in any action under Section 1194 to recover wages because of the payment of a wage less than minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

70.    Defendants have maintained policies and procedures which create a working environment where hourly employees are routinely compensated at a rate that is less than the statutory minimum wage. Plaintiff and putative Class members routinely work time off-the-clock *i.e.,* before clocking in, without compensation for this time and are not paid minimum wage at the appropriate rate of pay. For instance, Plaintiff and putative Class members are not compensated minimum wage at the appropriate rate of pay for time spent waiting in temperature check lines, undergoing temperature checks, answering COVID-19 screening questionnaires, and waiting in line to clock back in upon returning from their meal breaks.

71.    As a direct and proximate result of the unlawful acts and/or omissions of Defendants, Plaintiff and putative Class members have been deprived of minimum wages in an amount to be determined at trial, and are entitled to a recovery of such amount, plus liquidated damages, plus interest thereon, attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194, 1194.2 and 1197.1.

72.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

**THIRD CAUSE OF ACTION**
**Failure to Pay Overtime Wages**
**Pursuant to Labor Code § 510**
**(On Behalf of Plaintiff and Putative Class Against All  Defendants)**

73.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

74.    Defendants do not compensate Plaintiff and putative Class members with the appropriate overtime rate, as required by California law.

75.    Labor Code § 510 provides, in pertinent part, that:

> Eight hours of labor constitutes a day's work.  Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

76.    The IWC Wage Order 4-2001(3)(A)(1) state:

> The following overtime provisions are applicable … employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1 ½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than: . . . One and one-half (1 ½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any

workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and … [d]ouble the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

77. Labor Code § 1194(a) provides that:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

78. Labor Code § 200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation." All such wages are subject to California's overtime requirements, including those set forth above.

79. Defendants regularly do not compensate Plaintiff and putative Class members for their overtime hours worked and premiums the appropriate rate of pay. For instance, Plaintiff and putative Class members do not receive overtime compensation for time spent waiting in temperature check lines, undergoing temperature checks, answering COVID-19 screening questionnaires, and waiting in line to clock back in upon returning from their meal breaks, when the hours worked are in excess of eight (8) hours per day and forty (40) hours per week.

80. Plaintiff and putative Class members work overtime hours for Defendants without being paid overtime premiums at the appropriate rate of pay in violation of the Labor Code, applicable IWC Wage Orders, and other applicable law.

81. Defendants have knowingly and willfully refused to perform their obligation to provide Plaintiff and putative Class members with premium wages for

all overtime work. As a proximate result of the aforementioned violations, Defendants have damaged Plaintiff and putative Class members in amounts to be determined according to proof at time of trial.

82. Defendants are liable to Plaintiff and putative Class members alleged herein for the unpaid overtime and civil penalties, with interest thereon. Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below.

83. Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

### FOURTH CAUSE OF ACTION
**Failure to Provide Accurate Itemized Wage Statements and Records
Pursuant to Labor Code §§ 226, 226.3, 226.6, 432, 1174, 1198.5, and 2810.5
(On Behalf of Plaintiff and Putative Class Against All Defendants)**

84. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

85. Defendants do not provide Plaintiff and putative Class members with accurate itemized wage statements as required by California law.

86. Labor Code § 226(a) provides that:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number,

(8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least four years at the place of employment or at a central location within the State of California.

87. The IWC Wage Orders also establishes this requirement. (See IWC Wage Order 4-2001(7).

88. Labor Code § 226.3 provides, in relevant part:

Any employer who violates subdivision (a) of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in subdivision (a) of Section 226.

89. Labor Code 226.6 provides, in relevant part:

Any employer who knowingly and intentionally violates the provisions of Section 226, or any officer, agent, employee, fiduciary, or other person who has the control, receipt, custody, or disposal of, or pays, the wages due any employee, and who knowingly and intentionally participates or aids in the violation of any provision of Section 226 is guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than one thousand dollars ($1,000) or be imprisoned not to exceed one year, or both, at the discretion of the court.

90. Labor Code § 226(e) provides:

An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a

violation occurs and one hundred dollars ($100) per employee
for each violation in a subsequent pay period, not exceeding
an aggregate penalty of four thousand dollars ($4,000) and is
entitled to an award of costs and reasonable attorney's fees.

91.   Labor Code § 432 provides that "[i]f an employee or applicant signs any instrument relating to the obtaining or holding of employment, he shall be given a copy of the instrument upon request."

92.   Labor Code § 1174(d) provides that employers shall "[k]eep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by the commission, but in any case shall be kept on file for not less than three years. An employer shall not prohibit an employee from maintaining a personal record of hours worked, or, if paid on a piece-rate basis, piece-rate units earned."

93.   Labor Code § 1198.5(b)(1) provides that an

employer shall make the contents of those personnel records
available for inspection to the current or former employee, or
his or her representative, at reasonable intervals and at
reasonable times, but not later than 30 calendar days from the
date the employer receives a written request, unless the
current or former employee, or his or her representative, and
the employer agree in writing to a date beyond 30 calendar
days to inspect the records, and the agreed-upon date does
not exceed 35 calendar days from the employer's receipt of
the written request. Upon a written request from a current or
former employee, or his or her representative, the employer
shall also provide a copy of the personnel records, at a charge
not to exceed the actual cost of reproduction, not later than
30 calendar days from the date the employer receives the
request, unless the current or former employee, or his or her
representative, and the employer agree in writing to a date

beyond 30 calendar days to produce a copy of the records, as long as the agreed-upon date does not exceed 35 calendar days from the employer's receipt of the written request. Except as provided in paragraph (2) of subdivision (c), the employer is not required to make those personnel records or a copy thereof available at a time when the employee is actually required to render service to the employer, if the requester is the employee.

94. Labor Code § 2810.5(a)(1) provides

At the time of hiring, an employer shall provide to each employee a written notice, in the language the employer normally uses to communicate employment-related information to the employee, containing the following information: (A) The rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise, including any rates for overtime, as applicable. (B) Allowances, if any, claimed as part of the minimum wage, including meal or lodging allowances. (C) The regular payday designated by the employer in accordance with the requirements of this code. (D) The name of the employer, including any "doing business as" names used by the employer. (E) The physical address of the employer's main office or principal place of business, and a mailing address, if different. (F) The telephone number of the employer. (G) The name, address, and telephone number of the employer's workers' compensation insurance carrier. (H) That an employee: may accrue and use sick leave; has a right to request and use accrued paid sick leave; may not be terminated or retaliated against for using or requesting the use of accrued paid sick leave; and has the right to file a complaint against an employer who retaliates. (I) Any other information the Labor Commissioner deems material and necessary.

95. Defendants do not provide timely, accurate, and compliant itemized wage statements to Plaintiff and putative Class members and keep and furnish accurate records in accordance with the Labor Code and the IWC Wage Orders. The wage statements Defendants provide their employees, including Plaintiff and putative Class members, do not accurately reflect all hours actually worked, actual gross

wages earned, appropriate rates of pay, premiums, actual net wages earned, including minimum wages and overtime, total hours worked, the number of piece-rate units earned and any applicable piece rate, all deductions, the inclusive dates of the pay period, Plaintiff's and putative Class members' name and the last four digits of his or her social security number or an employee identification number other than a social security number, the name and address of the legal entity that is the employer and all applicable hourly rates in effect during the pay period, and the corresponding number of hours worked at each hourly rate by the employee.

96.    Defendants are liable to Plaintiff and the putative Class members for the amounts described above in addition to the civil penalties set forth below, with interest thereon.  Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below, pursuant to Labor Code § 226(e).

97.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

### FIFTH CAUSE OF ACTION
**Violation of California Business and Professions Code §§ 17200 *et seq.***
**(On Behalf of Plaintiff and Putative Class Against All  Defendants)**

98.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

99.    The UCL prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

100.  Business and Professions Code § 17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

101.  Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

102. Beginning at an exact date unknown to Plaintiff, but at least since the date four years prior to the filing of this lawsuit, Defendants have committed acts of unfair competition as defined by the UCL, by engaging in the unlawful, unfair, and fraudulent business acts and practices described in this Complaint, including, but not limited to:

     a. violations of Labor Code §§ 204, 225.5, 558, 1182.12, 1194, 1997, 1197.1, 1198 and IWC Wage Order 4-2001 pertaining to payment of wages, including minimum wage, for all hours worked;

     b. violations of Labor Code § 510 and IWC Wage Order 4-2001 pertaining to overtime; and

     c. violations of Labor Code §§ 226, 226.3 and 226.6 regarding accurate, timely itemized wage statements.

103. The violations of these laws and regulations, as well as of the fundamental California public policies protecting wages, serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§ 17200 *et seq*.

104. The acts and practices described above constitute unfair, unlawful, and fraudulent business practices, and unfair competition, within the meaning of Business and Professions Code §§ 17200 *et seq*. Among other things, the acts and practices have taken from Plaintiff and the putative Class wages rightfully earned by them, while enabling Defendants to gain an unfair competitive advantage over law-abiding employers and competitors.

105. Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition. Injunctive relief is necessary and appropriate to prevent Defendants from repeating the unlawful, unfair, and fraudulent business acts and practices alleged above.

106. As a direct and proximate result of the aforementioned acts and practices, Plaintiff and putative Class members have suffered a loss of money and property, in

1  the form of unpaid wages, which are due and payable.

2  107. Business and Professions Code § 17203 provides that the Court may

3  restore to any person in interest any money or property which may have been acquired

4  by means of such unfair competition. Plaintiff and putative Class members are

5  entitled to restitution pursuant to Business and Professions Code § 17203 for all

6  wages and payments unlawfully withheld from employees during the four-year

7  period prior to the filing of this Complaint. Plaintiff's success in this action will

8  enforce important rights affecting the public interest and, in that regard, Plaintiff sues

9  on behalf of himself as well as others similarly situated. Plaintiff and putative Class

10  members seek and are entitled to unpaid wages, declaratory and injunctive relief, and

11  all other equitable remedies owing to them.

12  108. Plaintiff herein takes upon himself enforcement of these laws and lawful

13  claims.

14  109. There is a financial burden involved in pursuing this action, the action is

15  seeking to vindicate a public right, and it would be against the interests of justice to

16  penalize Plaintiff by forcing him to pay attorneys' fees from any recovery thereof.

17  Attorneys' fees are appropriate pursuant to Code of Civil Procedure § 1021.5 and

18  otherwise.

19  110. Wherefore, Plaintiff and the putative Class request relief as hereinafter

20  provided.

21  **SIXTH CAUSE OF ACTION**
**Failure to Authorize and Permit and/or Make Available Meal and Rest Periods**

22  **Pursuant to Labor Code §§ 226.7 and 512; IWC Wage Order 4-2001**

23  **(On Behalf of Plaintiff and the Putative Class against all Defendants)**

24  111. Plaintiff re-alleges and incorporates the foregoing paragraphs as though

25  fully set forth herein.

26  112. Defendants routinely fail to authorize, permit and/or make available

27  complaint, lawful meal periods to Plaintiff and putative Class members.

28  113. Plaintiff's and putative Class members' are routinely denied meal periods

for the entire thirty minutes because they must spend time waiting for time clocks while on meal periods, and Defendants engaged in a practice of automatically deducting meal periods and rounding meal period punches and did not provide compliant meal and rest periods.

114. Labor Code §§ 226.7 and 512 and the applicable Wage Orders require Defendants to authorize and permit meal and rest periods to its employees. Labor Code §§ 226.7 and 512 and the Wage Orders prohibit employers from employing an employee for more than five (5) hours without a meal period of not less than thirty minutes, and from employing an employee more than ten (10) hours per day without providing the employee with a second meal period of not less than thirty minutes. Labor Code § 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC. the applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3 ½) hours.

115. Unless the employee is relieved of all duty during the thirty-minute meal period, the employee is considered "on duty" and the meal period is counted as time worked under the applicable Wage Orders.

116. Under Labor Code § 226.7(b) and the applicable Wage Orders, an employer who fails to authorize, permit, and/or make available a required meal and/or rest period must, as compensation, pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal and/or rest period was not authorized and permitted.

117. Despite these requirements, Defendants have knowingly and willfully refused to perform their obligations to authorize and permit and/or make available to

Plaintiff and putative Class members the ability to take the off-duty meal and rest periods to which they are entitled and engaged in a practice of automatically deducting meal periods and rounding meal period punches and did not provide compliant meal and rest periods.

118. Defendants have also failed to pay Plaintiff and putative Class members one (1) hour of pay at the appropriate rate for each day an off-duty meal period was denied. Furthermore, Defendants failed to pay Plaintiff and putative Class members one (1) hour of pay at the appropriate rate for each day rest period was denied. Defendants' conduct described herein violates Labor Code §§ 226.7 and 512. Therefore, pursuant to Labor Code § 226.7(b), Plaintiff and putative Class members are entitled to compensation for the failure to authorize and permit and/or make available meal and rest periods and automatically deduct meal periods and round meal period punches and the failure to provide compliant meal and rest periods, plus interest, attorneys' fees, expenses and costs of suit.

119. As a proximate result of the aforementioned violations, Plaintiff and putative Class members have been damaged in an amount according to proof at time of trial.

120. Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

### SEVENTH CAUSE OF ACTION
#### Failure to Timely Pay Wages During Employment
#### Pursuant to Labor Code § 204
#### (On Behalf of Plaintiff and Putative Class Against All Defendants)

121. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

122. Labor Code § 204 provides that "[a]ll wages … earned by any person in any employment are due and payable twice during each calendar month…."

123. During the relevant time period, Defendants intentionally and willfully failed to pay Plaintiff and the other class members all wages due to them, within any

1    time period permissible under California Labor Code section 204.

2        124.  As a proximate result of the aforementioned violations, Plaintiff and the

3    putative Class have been damaged in an amount according to proof at time of trial.

4        125.  Wherefore, Plaintiff and the putative Class request relief as hereinafter

5    provided.

### EIGHTH CAUSE OF ACTION
### Failure to Timely Pay Wages at Termination/Waiting Time Penalties
### Pursuant to Labor Code §§ 201, 202, 203
### (On Behalf Of Plaintiff And Putative Class Against All Defendants)

6

7

8

9        126.  Plaintiff re-alleges and incorporates the foregoing paragraphs as though

10   fully set forth herein.

11       127.  Labor Code §§ 201 and 202 require employers to immediately pay

12   wages earned and unpaid to an employee that is discharged, and to pay an employee

13   who quits within 72 hours after he or she quits, at the latest.

14       128.  Labor Code § 203 provides, in relevant part:

15

16            if an employer willfully fails to pay, without abatement or
              reduction, in accordance with sections 201, 201.5, 202, and
17            205.5, any wages of an employee who is discharged or who
              quits, the wages of the employee shall continue as a penalty
18            from the due date thereof at the same rate until paid or until
              an action therefor is commenced; but the wages shall not
19            continue for more than 30 days.

20

21       129.  Plaintiff and putative Class members have left their employment with

22   Defendants during the statutory period, at which time Defendants owed them unpaid

23   wages, including overtime, minimum wage, and any premiums at the appropriate rate

24   of pay.

25       130.  Defendants willfully refuse and continue to refuse to pay Plaintiff and

26   putative Class members all the wages that are due and owing them, in the form of,

27   *inter alia*, overtime, minimum wage, and premiums upon the end of their

28   employment. As a result of Defendants' actions, Plaintiff and the Putative Class have

suffered and continue to suffer substantial losses, including lost earnings, and interest.

131. Defendants' willful failure to pay Plaintiff and putative Class members the wages due and owing them constitutes a violation of Labor Code §§ 201-202. As a result, Defendants are liable to Plaintiff and putative Class members for all penalties owing pursuant to Labor Code §§ 201-203.

132. In addition, Labor Code § 203 provides that an employee's wages will continue as a penalty up to thirty days from the time the wages were due. Therefore, Plaintiff and putative Class members are entitled to penalties pursuant to Labor Code § 203, plus interest.

133. Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## NINTH CAUSE OF ACTION
### Penalties Pursuant to Labor Code §§ 2699(a), (f)
### (On Behalf of the State of California and Aggrieved Employees)

134. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

135. Labor Code § 2699(a) provides:

> Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees.

136. Labor Code §§ 201 and 202 require employers to immediately pay wages earned and unpaid to an employee that is discharged, and to pay an employee who quits within 72 hours after he or she quits, at the latest.

137. Labor Code § 203 provides, in relevant part:

SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Lopez v. Eurofins Scientific, Inc.*

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employees shall continue as a penalty from the due date thereof at the same rate paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

138. Labor Code § 256 provides: "The Labor Commissioner shall impose a civil penalty in an amount not exceeding 30 days' pay as waiting time under the terms of Section 203."

139. Plaintiff seeks civil penalties pursuant to Labor Code § 2699(a) for each failure by Defendants, as alleged above, to timely pay all wages owed to Plaintiff and the Aggrieved Employees in compliance with Labor Code §§ 201-202 in the amounts established by Labor Code § 203.

140. Labor Code § 226(a) provides:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

141. Labor Code § 226(e)(1) provides, in relevant part:

An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

142. Labor Code § 226.3 provides:

Any employer who violates subdivision (a) of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in subdivision (a) of Section 226. The civil penalties provided for in this section are in addition to any other penalty provided by law.

143. Labor Code § 226.6 provides:

Any employer who knowingly and intentionally violates the provisions of Section 226, or any officer, agent, employee, fiduciary, or other person who has the control, receipt, custody, or disposal of, or pays, the wages due any employee, and who knowingly and intentionally participates or aids in the violation of any provision of Section 226 is guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than one thousand dollars ($1,000) or be imprisoned not to exceed one year, or both, at the discretion of the court. That fine or imprisonment, or both, shall be in addition to any other penalty provided by law.

144. Plaintiff also seeks civil penalties pursuant to Labor Code § 2699(a) for each failure by Defendants, alleged above, to provide Plaintiff and Aggrieved Employees an accurate, itemized wage statement in compliance with Labor Code § 226(a) in the amounts established by Labor Code § 226.3. In addition, Plaintiff seeks

penalties in the amount established by Labor Code § 226(e)(1), as prayed for herein.

145. Labor Code § 2699(f) provides:

> For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows: . . . (2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

146. Labor Code § 200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or method of calculation."

147. Labor Code § 204(a) provides that "[a]ll wages … earned by any person in any employment are due and payable twice during each calendar month…."

148. IWC Wage Order 4-2001(2)(K) defines hours worked as "the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

149. Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Order.

150. Labor Code § 225.5 provides:

> In addition to, and entirely independent and apart from, any other penalty provided in this article, every person who unlawfully withholds wages due any employee in violation of Section 212, 216, 221, 222, or 223 shall be subject to a civil penalty as follows:
> (a) For any initial violation, one hundred dollars ($100) for each failure to pay each employee.
> (b) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount

unlawfully withheld.

The penalty shall be recovered by the Labor Commissioner as part of a hearing held to recover unpaid wages and penalties or in an independent civil action. The action shall be brought in the name of the people of the State of California and the Labor Commissioner and attorneys thereof may proceed and act for and on behalf of the people in bringing the action. Twelve and one-half percent of the penalty recovered shall be paid into a fund within the Labor and Workforce Development Agency dedicated to educating employers about state labor laws, and the remainder shall be paid into the State Treasury to the credit of the General Fund.

151. Labor Code § 432 provides that "[i]f an employee or applicant signs any instrument relating to the obtaining or holding of employment, he shall be given a copy of the instrument upon request."

152. Labor Code § 510 provides, in relevant part:

Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work.

153. Labor Code § 558 provides, in relevant part:

(a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

(1) For any initial violation, fifty dollars ($50) for each

underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(3) Wages recovered pursuant to this section shall be paid to the affected employee.

154.  Labor Code § 1174(d) provides that employers shall

Keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by the commission, but in any case shall be kept on file for not less than three years. An employer shall not prohibit an employee from maintaining a personal record of hours worked, or, if paid on a piece-rate basis, piece-rate units earned.

155.  Labor Code § 1182.12 provides, in relevant part:

(a) Notwithstanding any other provision of this part, on and after July 1, 2014, the minimum wage for all industries shall be not less than nine dollars ($9) per hour, and on and after January 1, 2016, the minimum wage for all industries shall be not less than ten dollars ($10) per hour.

(b) Notwithstanding subdivision (a), the minimum wage for all industries shall not be less than the amounts set forth in this subdivision, except when the scheduled increases in paragraphs (1) and (2) are temporarily suspended under subdivision (d).

(1) For any employer who employs 26 or more employees, the minimum wage shall be as follows:

(D) From January 1, 2020, to December 31, 2020, inclusive,—thirteen dollars ($13) per hour.

(E) From January 1, 2021, to December 31, 2021,

inclusive,—fourteen dollars ($14) per hour.

(F) From January 1, 2022, and until adjusted by subdivision (c)—fifteen dollars ($15) per hour.

(2) For any employer who employs 25 or fewer employees, the minimum wage shall be as follows:

(C) From January 1, 2020, to December 31, 2020, inclusive,—twelve dollars ($12) per hour.

(D) From January 1, 2021, to December 31, 2021, inclusive,—thirteen dollars ($13) per hour.

(E) From January 1, 2022, to December 31, 2022, inclusive,—fourteen dollars ($14) per hour.

(F) From January 1, 2023, and until adjusted by subdivision (c)—fifteen dollars ($15) per hour.

(3) For purposes of this subdivision, "employer" means any person who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person. For purposes of this subdivision, "employer" includes the state, political subdivisions of the state, and municipalities.

156. Labor Code § 1197 provides:

The minimum wage for employees fixed by the commission or by any applicable state or local law, is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful. This section does not change the applicability of local minimum wage laws to any entity.

157. Labor Code § 1197.1 provides, in relevant part:

(a) Any employer or other person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an applicable state or local law, or by an order of the commission, shall be subject to a civil penalty, restitution of wages, liquidated damages payable to the employee, and any applicable penalties imposed pursuant to Section 203 as follows:

(1) For any initial violation that is intentionally committed, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid. This amount shall be in addition to an amount sufficient to recover

underpaid wages, liquidated damages pursuant to Section 1194.2, and any applicable penalties imposed pursuant to Section 203.

(2) For each subsequent violation for the same specific offense, two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid regardless of whether the initial violation is intentionally committed. This amount shall be in addition to an amount sufficient to recover underpaid wages, liquidated damages pursuant to Section 1194.2, and any applicable penalties imposed pursuant to Section 203.

(3) Wages, liquidated damages, and any applicable penalties imposed pursuant to Section 203, recovered pursuant to this section shall be paid to the affected employee.

158. Labor Code § 1194 provides, in relevant part:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including i1nterest thereon, reasonable attorney's fees, and costs of suit.

159. Labor Code § 1198.5(b)(1) provides

The employer shall make the contents of those personnel records available for inspection to the current or former employee, or his or her representative, at reasonable intervals and at reasonable times, but not later than 30 calendar days from the date the employer receives a written request, unless the current or former employee, or his or her representative, and the employer agree in writing to a date beyond 30 calendar days to inspect the records, and the agreed-upon date does not exceed 35 calendar days from the employer's receipt of the written request. Upon a written request from a current or former employee, or his or her representative, the employer shall also provide a copy of the personnel records, at a charge not to exceed the actual cost of reproduction, not later than 30 calendar days from the date the employer receives the request, unless the current or former employee, or his or her representative, and the employer agree in writing to a date beyond 30 calendar days to produce a copy of the

records, as long as the agreed-upon date does not exceed 35 calendar days from the employer's receipt of the written request. Except as provided in paragraph (2) of subdivision (c), the employer is not required to make those personnel records or a copy thereof available at a time when the employee is actually required to render service to the employer, if the requester is the employee.

160. Labor Code § 2810.5(a)(1) provides

At the time of hiring, an employer shall provide to each employee a written notice, in the language the employer normally uses to communicate employment-related information to the employee, containing the following information: (A) The rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise, including any rates for overtime, as applicable. (B) Allowances, if any, claimed as part of the minimum wage, including meal or lodging allowances. (C) The regular payday designated by the employer in accordance with the requirements of this code. (D) The name of the employer, including any "doing business as" names used by the employer. (E) The physical address of the employer's main office or principal place of business, and a mailing address, if different. (F) The telephone number of the employer. (G) The name, address, and telephone number of the employer's workers' compensation insurance carrier. (H) That an employee: may accrue and use sick leave; has a right to request and use accrued paid sick leave; may not be terminated or retaliated against for using or requesting the use of accrued paid sick leave; and has the right to file a complaint against an employer who retaliates. (I) Any other information the Labor Commissioner deems material and necessary.

161. Labor Code §§ 226.7 and 512 and IWC Wage Order 1-2001 and 7-2001 require Defendants to authorize, permit, and/or make available timely and compliant meal and rest periods to its employees. Labor Code §§ 226.7 and 512 and IWC Wage Order 1-2001 prohibit employers from employing an employee for more than five hours without a meal period of not less than thirty minutes, and from employing an employee more than ten hours per day without providing the employee with a second

meal period of not less than thirty minutes.  Unless the employee is relieved of all duty during the thirty-minute meal period and ten-minute rest period, the employee is considered "on duty" and the meal period is counted as time worked under the applicable wage orders.

162.  To the extent than any violation alleged herein does not carry penalties under Labor Code § 2699(a), Plaintiff seeks civil penalties pursuant to Labor Code § 2699(f) for Plaintiff and Aggrieved Employees each pay period in which he or she was aggrieved, in the amounts established by Labor Code § 2699(f).  Plaintiff seeks penalties pursuant to Labor Code § 2699(f) for Plaintiff and Aggrieved Employees for violations of Labor Code provisions including, but not limited to, Labor Code §§ 226, 226.7, 510, 512, 1194, 1174, 1198.5, 2810.5, 201-203, 204, 226, and IWC Wage Orders 1-2001, and any other violation alleged herein does not carry penalties under Labor Code § 2699(a) for failing to pay Plaintiff and Aggrieved Employees for all hours worked, minimum wage, overtime, pay at the appropriate rates, and premiums; failing to provide complaint meal and rest breaks, properly tracking meal breaks, rounding meal periods, and automatically deducting meal periods; failing to keep, furnish, and timely provide accurate personnel, pay, and time records; and failing to timely pay all wages owed during employment and following separation of employment. Moreover, Plaintiff and Aggrieved Employees are provided with untrue, non-compliant, improperly maintained, untimely, and inaccurate wage statements as such statements do not include payment for all hours worked, including appropriate rates of pay, minimum wages, and overtime, and do not accurately reflect gross wages earned, total hours worked,  the number of piece-rate units earned and any applicable piece rate, all deductions, net wages earned, the inclusive dates of the pay period, Plaintiff's and Aggrieved Employees' names and only the last four digits of their social security number or an employee identification number other than a social security number, the name and address of the legal entity that is the employer, and all applicable hourly rates in effect during

the pay period and the corresponding number of hours worked at each hourly rate by the employee.

163. Pursuant to Labor Code § 2699.3(a)(1) and (2), Plaintiff provided the Labor and Workforce Development Agency ("LWDA") with notice of his intention to file this claim. Sixty-five calendar days have passed without notice from the LWDA. Plaintiff satisfied the administrative prerequisites to commence this civil action in compliance with § 2699.3(a).

164. Plaintiff seeks the aforementioned penalties on behalf of the State, other Aggrieved Employees, and himself as set forth in Labor Code § 2699.

165. Defendants are liable to Plaintiff, Aggrieved Employees, and the State of California for the civil penalties set forth in this Complaint, with interest thereon. Plaintiff is also entitled to an award of attorneys' fees and costs as set forth below.

166. Wherefore, Plaintiff requests relief as hereinafter provided.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a. Damages and restitution according to proof at trial for all unpaid wages and other injuries, as provided by the California Labor Code and California Business and Professions Code;

b. For a declaratory judgment that Defendants have violated the California Labor Code, California law, and public policy as alleged herein;

c. For a declaratory judgment that Defendants have violated California Business and Professions Code §§ 17200 *et seq.*, as a result of the aforementioned violations of the California Labor Code;

d. For preliminary, permanent, and mandatory injunctive relief prohibiting Defendants, their officers, agents, and all those acting in concert with them from committing in the future those violations of law herein alleged;

e. For an equitable accounting to identify, locate, and restore to all current

SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Lopez v. Eurofins Scientific, Inc.*

and former employees the wages they are due, with interest thereon;

f.   For an order awarding Plaintiff and putative Class members compensatory damages, including lost wages, earnings, liquidated damages, and other employee benefits, restitution, recovery of all money, actual damages, treble damages, punitive damages, and all other sums of money owed to Plaintiff and putative Class members, together with interest on these amounts, according to proof;

g.   For an award of reasonable attorneys' fees as provided by the California Labor Code, including California Code of Civil Procedure § 1021.5 and/or other applicable law;

h.   For an order awarding the State of California, Plaintiff, and Aggrieved Employees civil penalties provided under the PAGA, California Labor Code § 2698 et seq.

i.   For all costs of suit;

j.   For interest as provided by applicable law; and

k.   For such other and further relief as this Court deems just and proper.

Dated: May 15, 2023                    Respectfully submitted,


                                       */s/ Carolyn H. Cottrell*
                                       Carolyn H. Cottrell
                                       Caroline N. Cohen
                                       Andrew Weaver
                                       Kristabel Sandoval
                                       Philippe M. Gaudard
                                       SCHNEIDER WALLACE
                                       COTTRELL KONECKY LLP

                                       *Attorneys for Plaintiff and the Putative Class*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff is entitled to a jury.

Dated: May 15, 2023                    Respectfully submitted,


                                       */s/ Carolyn H. Cottrell*
                                       Carolyn H. Cottrell
                                       Caroline N. Cohen
                                       Andrew Weaver
                                       Kristabel Sandoval
                                       Philippe M. Gaudard
                                       SCHNEIDER WALLACE
                                       COTTRELL KONECKY LLP

                                       *Attorneys for Plaintiff and the Putative Class*

EXHIBIT 3



SCHNEIDER  WALLACE
COTTRELL  KONECKY LLP

May 9, 2023

**ELECTRONICALLY FILED**

Attn: PAGA Administrator
Labor and Workforce Development Agency
1515 Clay Street, Suite 801
Oakland, California 94612
PAGAfilings@dir.ca.gov

**Re:     Private Attorneys General Act of 2004 Second Amended Notice**

**Employee:     Rito Lopez**

**Employer:     Eurofins Scientific, Inc., ESSVIAL *d/b/a* Environmental Sampling
                Supply, Inc., Environmental Sampling Supply, Inc., TestAmerica
                Laboratories, Inc., Eurofins Environment Testing America Holdings,
                Inc., and Other Related Entities**

Dear PAGA Administrator:

On October 25, 2021, Mr. Lopez submitted a PAGA notice naming Eurofins
Scientific, Inc. and ESSVIAL, Inc. *d/b/a* Environmental Sampling Supply, Inc., and on
February 7, 2022, amended that notice to add Environmental Sampling Supply, Inc.,
TestAmerica Laboratories, Inc., and Eurofins Environment Testing America Holdings, Inc.
Mr. Lopez now further amends his notice to add an additional claim for failure to provide
legally complaint meal periods pursuant to California Labor Code §§ 226.7 and 512 as well
as IWC Wage Order 4-2001.

Pursuant to California Labor Code § 2699.3(a)(1), Mr. Lopez notifies the California
Labor & Workforce Development Agency ("LWDA") that he intends to seek civil penalties
pursuant to California Labor Code § 2699(a) and (f) for the purported payment or nonpayment
of compensation (including, but not limited to, wages, minimum wage, straight time, overtime,
and/or premium pay), meal or rest period premiums or penalties; failure to pay for all hours
worked; failure to timely pay wages during employment; failure to pay wages at discharge or
termination; failure to provide compliant meal and rest periods; failure to accurately record
time, including all time worked (such as off-the-clock, meal periods, rounding, and auto-
deduction of meal periods); failure to provide timely and compliant wage statements and to
maintain records; unfair business practices; related premiums, statutory penalties, waiting time
penalties, civil penalties; liquidated damages; interest; punitive damages; costs; expenses;
attorneys' fees; injunctive relief; declaratory relief; or accounting, whether such causes of
action are in tort, contract, or pursuant to a statutory remedy. This includes violations of
California Labor Code §§ 204, 256 & 225.5 (failure to compensate for all hours worked), §§
558, 1182.11, 1182.12, 1194, 1197, 1197.1, & 1198 (failure to pay minimum wage), § 510
(failure to pay overtime wages); §§ 226, 226.3 & 226.6, 1174, 1198.5, 432, 2810.5 (failure to
provide timely and accurate itemized wage statements and records), §§ 201-203 (waiting time
penalties), §§ 226.7 and 512 (failure to provide meal and rest periods) and IWC Wage Order 4-
2001 or applicable Wage Order on behalf of himself and other Aggrieved Employees of



Attn: PAGA Administrator
Labor and Workforce Development Agency
May 9, 2023
Page 2 of 6

Eurofins Scientific, Inc. ("Eurofins Scientific"), ESSVIAL *d/b/a* Environmental Sampling Supply, Inc. ("ESSVIAL"), Environmental Sampling Supply, Inc. ("ESS"), TestAmerica Laboratories, Inc. ("TestAmerica"), and Eurofins Environment Testing America Holdings, Inc. ("EETA") (collectively "Employers" and/or "Defendants"), and any unknown related entities involved in the violations alleged.

Mr. Lopez and other Aggrieved Employees are all current and former hourly, non-exempt employees of Eurofins Scientific and ESSVIAL including but not limited to packer, warehouse assistant, sample receiving – shipping technician, and other workers with similar job duties.

**<u>Background of Defendant</u>:**

Eurofins Scientific provides a range of analytical testing services to clients across multiple industries. Eurofins Scientific is one of the global leaders in food, environmental, pharmaceutical, and cosmetic products testing and in AgroSciences CRO services. Eurofins has over 12,000 employees and operates approximately 80 locations across the United States. Eurofins Scientific is a Delaware corporation headquartered in Des Moines, Iowa. Eurofins Scientific is registered in the State of California and does business in the State of California. Eurofins Scientific employs hundreds of workers and conducts extensive activities in the State of California.

ESSVIAL specializes in the sampling and analysis of a variety of products and operates laboratories that perform quality control analysis on its pre-cleaned sample containers. ESSVIAL provides custom container preparation and quality control testing and sampling kits. ESSVIAL is a Delaware corporation headquartered in North Canton, Ohio. ESSVIAL is a subsidiary of Eurofins Scientific. ESSVIAL is registered in the State of California and does business in the State of California as Environmental Sampling Supply, Inc. ESSVIAL employs hundreds of workers and conducts extensive activities in the State of California.

ESS manufactures quality TOC Vials, EPA Vials, VOAS and many products for environmental sampling and analysis. ESS is a Delaware corporation headquartered in San Leandro, California. ESS is registered in the State of California and does business in the State of California. ESS employs hundreds of workers and conducts extensive activities in the State of California.

TestAmerica is a leading analytical laboratory for environmental testing services in the United States. TestAmerica is a Delaware corporation headquartered in North Canton, Ohio. TestAmerica is registered in the State of California and does business in the State of California. TestAmerica employs hundreds of workers and conducts extensive activities in the State of California.



Attn: PAGA Administrator
Labor and Workforce Development Agency
May 9, 2023
Page 3 of 6

EETA provides laboratory testing, monitoring, and consulting services to a wide range of industrial companies, environmental consultants, contractors, retailers, and government authorities. EETA is a Delaware corporation headquartered in Lancaster, Pennsylvania. EETA is a subsidiary of Eurofins Scientific. EETA is registered in the State of California and does business in the State of California. EETA employs hundreds of workers and conducts extensive activities in the State of California.

**Background of Plaintiff:**

Mr. Lopez is currently employed by Defendants as a packer. Mr. Lopez was hired by Defendants in January 1990. Mr. Lopez works at Defendant's Oakland facility located in Oakland, California. Mr. Lopez is compensated at an hourly rate of approximately $16.52. While Mr. Lopez's shifts may vary in length, Mr. Lopez works at least eight hours or more per shift, five shifts per week. Mr. Lopez works approximately 40 hours or more per week.

**Failure to Compensate All Hours Worked and to Pay Minimum Wages and Overtime Wages:**

Defendants deny Mr. Lopez and Aggrieved Employees proper compensation, including compensation for all hours worked, minimum wage, overtime, and premiums at the appropriate rates. For example, Mr. Lopez and Aggrieved Employees are regularly required to perform work while off-the-clock and are subject to rounding and auto-deducting of meals. This includes, but is not limited to, requiring Mr. Lopez and Aggrieved Employees to wait in line, go through temperature checks, and answer COVID-19 screening questionnaire while off-the-clock, prior to the start of their shift. Mr. Lopez and Aggrieved Employees spend at least one minute and often longer, before clocking in going through these temperature checks and answering COVID-19 screening questionnaires for Defendants' benefit.

Further, Mr. Lopez and Aggrieved Employees must wait in line in order to clock back in upon returning from their meal breaks. Mr. Lopez and Aggrieved Employees spend at least two additional minutes waiting in line during their meal breaks prior to clocking back in.

Moreover, Defendants failed to accurately record all time worked. For example, this time spent working while off-the-clock goes unrecorded and uncompensated even though it should be compensated at minimum wage and/or overtime rates under California law, giving rise to minimum wage and overtime violations because this time worked off-the-clock occurs at times exceeding eight hours in a day or forty hours in a week. Upon information and belief, Defendants, across California, institute a similar policy of not compensating employees for time worked during off-the-clock "Covid-19 screenings" and while waiting



Attn: PAGA Administrator
Labor and Workforce Development Agency
May 9, 2023
Page 4 of 6

in line to clock in after their meal breaks that results in hundreds of Aggrieved Employees performing services for the benefit of Defendants without pay.

**Failure to Provide Meal Periods**:

Mr. Lopez alleges that Defendants do not provide compliant meal periods or properly track meal period time. Mr. Lopez alleges that Defendants rounded meal period punches, automatically deducted meal periods, or otherwise failed to properly record the actual meal periods provided to Mr. Lopez and Aggrieved Employees or to otherwise provide lawful meal periods. Mr. Lopez alleges that this failure to properly track meal periods, and apparent use of auto-deduct timekeeping practices, evidences that Defendants have denied Mr. Lopez and Aggrieved Employees compliant meal periods or compliant premium payments therefor.

**Failure to Provide Rest Breaks**:

On information and belief, Defendants fail to provide Aggrieved Employees with lawful rest breaks. For example, Lopez and Aggrieved Employees are assigned too much work to complete in a set time and are unable to therefore take breaks. Mr. Lopez alleges that although Aggrieved Employees have been denied rest breaks, Defendants fail to provide compliant premium payments for those missed rest breaks.

**Failure to Provide Timely & Itemized Wage Statements**:

Mr. Lopez and Aggrieved Employees did not receive timely, compliant wage statements containing all of the information required under the Labor Code, including but not limited to (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. Further, Mr. Lopez and Aggrieved Employees perform a substantial amount of work for the benefit of Defendants which goes unrecorded and uncompensated. Additionally, Mr. Lopez and Aggrieved Employees are denied legally complaint meal periods or premiums therefor. Therefore, Mr. Lopez and Aggrieved Employees do not receive accurate, itemized wage statements because they do not accurately report all hours worked and wages earned.



Attn: PAGA Administrator
Labor and Workforce Development Agency
May 9, 2023
Page 5 of 6

**Failure to Timely Pay all Wages Owed During Employment and Following Separation from Employment:**

As a consequence of Defendants' failure to pay for all hours worked, including minimum wage and overtime premiums, Mr. Lopez and Aggrieved Employees do not timely receive all wages owed during employment. Additionally, Aggrieved Employees who are Defendants' former employees did not timely receive all wages owed upon separation from employment.

. . .

Mr. Lopez is represented by Schneider Wallace Cottrell Konecky LLP ("SWCK"), a law firm based in Emeryville, California. SWCK has extensive experience in the successful litigation and resolution of employment and representative actions nationwide. A description of the work, mission, and credentials of the firms can be found at www.schneiderwallace.com. Mr. Lopez and his counsel are committed to zealously pursuing redress on behalf of the State of California and all other similarly situated employees for the violations and civil penalties set forth above.

Sincerely,

CAROLYN N. COHEN
Attorney at Law

*cc via U.S. Certified Mail:*

Eurofins Scientific, Inc.
Cogency Global, Inc.
1325 J Street, Ste 1550
Sacramento, CA 95814
*Registered Agent for Eurofins Scientific, Inc.*

ESSVIAL d/b/a Environmental Sampling Supply, Inc.
Cogency Global, Inc.
1325 J Street, Ste 1550
Sacramento, CA 95814
*Registered Agent for ESSVIAL d/b/a Environmental Sampling Supply, Inc.*

Environmental Sampling Supply, Inc.
Cogency Global, Inc.
1325 J Street, Ste 1550
Sacramento, CA 95814
*Registered Agent for Environmental Sampling Supply, Inc.*



Attn: PAGA Administrator
Labor and Workforce Development Agency
May 9, 2023
Page 6 of 6


TestAmerica Laboratories, Inc.
Cogency Global, Inc.
1325 J Street, Ste 1550
Sacramento, CA 95814
*Registered Agent for TestAmerica Laboratories, Inc.*

EXHIBIT 4

Claims Admin Contact Info

Claims Admin ID <<ID>>

Mailing Date, 2023

<<FullName>>
<<Address1>> <<Address2>>
<<City>> <<State>> <<Zip>>

**Re:     REMINDER TO CASH SETTLEMENT CHECK FOR REPRESENTATIVE ACTION SETTLEMENT**

Dear <<FullName>>:

On <<Mailing Date>>, you previously were sent your payment from the settlement of the lawsuit entitled *Lopez v. Eurofins Scientific, Inc., et al.*, United States Court for Northern District of California Case No. 3:21-cv-08652 (the "Lawsuit"). Our records show that you have not yet cashed your settlement check. **You will be bound by the settlement whether or not you cash the check.**

Please cash your check promptly**. YOUR CHECK WILL EXPIRE ON _____ AND THEN WILL BE SENT TO THE CALIFORNIA STATE CONTROLLER UNCLAIMED PROPERTY FUND TO BE HELD IN YOUR NAME UNTIL YOU CLAIM YOUR PROPERTY.**

If you have any questions about the settlement, you can view the public docket on the Court's website at by searching the case number (3:21-cv-08652) through the Court's electronic public records system at https://pacer.uscourts.gov/, or you may contact the settlement administrator (whose contact information is at the top of this letter).  Please do not call the Court about this postcard.

Sincerely,

Phoenix Class Action Administration Solutions