UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| RITO LOPEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>EUROFINS SCIENTIFIC, INC, et al.,<br><br>    Defendants. | Case No. 21-cv-08652-LB<br><br>**PRELIMINARY APPROVAL ORDER**<br><br>Re: ECF Nos. 56, 78 |

**INTRODUCTION**

In this putative class action, the plaintiff, who works as a packer, sued his alleged employers — Eurofins Scientific, Environmental Sampling Supply, and TestAmerica Laboratories — alleging mainly that they did not pay him for the following off-the-clock work: (1) completing temperature checks and COVID-19 screening questionnaires before clocking in for work (one minute and often longer) and (2) waiting in line to clock back in after meal breaks (at least two additional minutes). He claims that the defendants failed to pay the class members for all hours worked, failed to pay minimum wages and overtime wages, did not provide accurate wage statements, failed to provide meal and rest periods, failed to timely pay wages during employment

ORDER – No. 21-cv-08652-LB

and at termination, are subject to penalties under the California Private Attorneys General Act (PAGA), and violated California's Unfair Competition Law (UCL).[1]

The parties settled their case,[2] and the plaintiff moved for preliminary approval of the proposed settlement under Federal Rule of Civil Procedure 23(e).[3] The court grants the unopposed motion.

**STATEMENT**

**1. The Lawsuit**

On November 5, 2021, the plaintiff filed the lawsuit against Eurofins Scientific only, claiming failure to pay the class members for all hours worked, failure to pay minimum wages and overtime wages, failure to provide accurate wage statements, and unfair business practices under the UCL.[4] On December 30, 2021, the plaintiff sued Eurofins in state court under PAGA.[5] He amended that complaint on February 14, 2022, to add Environmental Sampling Supply and TestAmerica Laboratories as defendants.[6] On the same day, he filed a First Amended Complaint (FAC) in this case adding those two defendants.[7] The parties stipulated to the plaintiff's filing the operative Third Amended Complaint (TAC) for purposes of the settlement.[8] The TAC adds the claims for failure to provide meal and rest periods, failure to timely pay wages during employment and at termination, and PAGA penalties.[9]

---

[1] Third Am. Compl. (TAC) – ECF No. 77. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Settlement Agreement, Ex. A to Suppl. Cottrell Decl. – ECF No. 78-1 at 7–30.

[3] Mot. – ECF No. 56; Suppl. Mot. – ECF No. 78.

[4] Compl. – ECF No. 1.

[5] Cottrell Decl. – ECF No. 56-1 at 9 (¶ 17).

[6] *Id.* (¶ 19).

[7] First Am. Compl. – ECF No. 15.

[8] Stipulation – ECF No. 73.

[9] TAC – ECF No. 77.

The defendants previously moved to dismiss the plaintiff's FAC.[10] On June 7, 2022, before the hearing on those motions, the parties stipulated to vacate the hearing pending a mediation they had agreed to attend on September 20, 2022.[11]

Leading up to the mediation, the parties participated in discovery. The defendants produced "significant documents and information," including employee time and payroll records and COVID-19 policies applicable to hourly, non-exempt employees.[12] Based on this discovery, class counsel investigated the defendants' timekeeping and payroll policies and practices and performed a damages analysis.[13]

On September 20, 2022, the parties participated in their mediation with Gail Andler, an experienced wage-and-hour mediator. They continued their negotiations after that day with Ms. Andler's assistance.[14] On September 29, 2022, the parties accepted a mediator's proposal to settle for $1,700,000.[15] The parties then negotiated the full terms of the settlement and agreed to resolve all claims in this case and the state case.[16]

On May 18, 2023, the plaintiff moved for preliminary approval of the settlement.[17] The court held a hearing on June 22, 2023. The court then issued an order holding that the settlement could not be approved unless its release provisions were modified.[18] The parties revised the settlement agreement and operative complaint and the plaintiff submitted a supplemental motion for

---

[10] Mots. to Dismiss – ECF Nos. 16, 30.
[11] Stipulation – ECF No. 39.
[12] Cottrell Decl. – ECF No. 56-1 at 10 (¶ 28).
[13] *Id.* (¶ 29).
[14] *Id.* (¶ 30).
[15] *Id.* (¶ 31).
[16] *Id.* (¶ 32).
[17] Mot. – ECF No. 56.
[18] Order – ECF No. 62.

1  preliminary approval.[19] All parties consented to magistrate-judge jurisdiction.[20] 28 U.S.C. § 636(c).

### 2. The Proposed Settlement

All defined terms in this Preliminary Approval Order have the same meaning as in the Settlement Agreement. (The terms are capitalized below, even if that is grammatically awkward.)

#### 2.1   Settlement Class

The "California Class" is defined as "all persons who are employed, have been employed, or alleged in the Action to have been employed by Defendants as a non-exempt employee in the State of California between November 5, 2017 and Preliminary Approval or June 1, 2023, whichever comes sooner."[21] The "Aggrieved Employees" (for purpose of the PAGA penalties allocation) are "all persons who are employed, have been employed, or are alleged in the Action to have been employed by Defendants as a non-exempt employee in the State of California at any time between October 25, 2020 and Preliminary Approval or June 1, 2023 or whichever comes sooner."[22] The term "Action" includes both the federal and state cases.[23]

There are 579 Class Members, and 191 of them are also Aggrieved Employees.[24]

#### 2.2   Settlement Amount and Allocation

The Gross Settlement Amount is $1,700,000, and the Net Settlement Amount — the fund recovered by the class — is approximately $1,010,333.33 after the following deductions: (1) the Named Plaintiff's Service Award (not to exceed $10,000); (2) Class Counsel's Fee Award (not to exceed $566,666.67) and Costs (not to exceed $25,000); (3) Settlement Administrator Costs (estimated to be less than $13,000); and (4) a PAGA Payment of $75,000 (with $56,250 to be paid

---

[19] Suppl. Mot. – ECF No. 78; Settlement Agreement, Ex. A to Suppl. Cottrell Decl. – ECF No. 78-1 at 7–30.

[20] Consents – ECF Nos. 6, 12, 26–27.

[21] Settlement Agreement, Ex. A to Suppl. Cottrell Decl. – ECF No. 78-1 at 7 (§ 2(c)).

[22] *Id.* (§ 2(b)).

[23] *Id.* (§ 2(a)).

[24] Cottrell Decl. – ECF No. 56-1 at 11 (¶ 36).

to the California Labor and Workforce Development Agency and $18,750 to be paid to the Aggrieved Employees).[25]

Claim forms are not required. Each Class Member and Aggrieved Employee will receive a pro rata portion of the relevant fund based on the numbers of workweeks that person worked during the relevant time period.[26] The average recovery (if every Class Member worked for an equal number of workweeks) is $1,744.96.[27] The Settlement Administrator will issue settlement payments as checks, which will be good for 180 days.[28]

The settlement is non-reversionary.[29] Uncashed checks will be distributed to the California State Controller Unclaimed Property Fund in the name of the Class Member.[30]

**2.3   Release**

The release provisions of the settlement agreement are, in short, (1) a release of the class and PAGA claims for all claims under federal or state law that were pleaded or could have been pleaded under the facts alleged in the complaint, and (2) a general release by the named plaintiff.[31]

**2.4   Administration**

Phoenix Class Action Administration Solutions is the proposed Settlement Administrator.[32] Within thirty calendar days from the issuance of this order, the defendants will provide the Class List to Phoenix.[33] Phoenix will make "reasonable efforts to identify [Class Members'] current addresses via public and proprietary systems."[34] Phoenix will then distribute the Settlement Notice

---

[25] *Id.* at 13 (¶ 43); Settlement Agreement, Ex. A to Suppl. Cottrell Decl. – ECF No. 78-1 at 7–10 (§§ 2(e), (m), (q), (s), (v), (aa), (cc)), 19–20 (§ 30).

[26] Cottrell Decl. – ECF No. 56-1 at 13 (¶¶ 44–45); Settlement Agreement, Ex. A to Suppl. Cottrell Decl. – ECF No. 78-1 at 9 (§ 2(w)), 20–21 (§§ 32–34).

[27] Mot. – ECF No. 56 at 16–17 & n.3.

[28] Cottrell Decl. – ECF No. 56-1 at 14 (¶ 47); Settlement Agreement, Ex. A to Suppl. Cottrell Decl. – ECF No. 78-1 at 22–23 (§ 42).

[29] Settlement Agreement, Ex. A to Suppl. Cottrell Decl. – ECF No. 78-1 at 8 (§ 2(q)).

[30] *Id.* at 23 (§ 43).

[31] *Id.* at 13–14 (§§ 19–21).

[32] *Id.* at 9 (§ 2(bb)).

[33] *Id.* at 15 (§ 22(d)).

[34] *Id.* (§ 22(e)).

via first-class mail, and in the case of returned notices will perform a skip trace or other searches to determine the appropriate address and re-mail the notice.[35]

Phoenix will also set up a toll-free number, handle the payments to Class Members, and provide status reports to the parties.[36] In addition, other administration procedures — including notice, procedures for exclusion, and procedures for objections — are set forth in the Settlement Agreement.[37]

## ANALYSIS

### 1. Jurisdiction

The court has diversity jurisdiction under the Class Action Fairness Act (CAFA). 28 U.S.C. § 1332(d).

### 2. Certification of Settlement Class

The court reviews the propriety of class certification under Federal Rule of Civil Procedure 23(a) and (b). When parties enter into a settlement before the court certifies a class, the court "must pay 'undiluted, even heightened, attention' to class certification requirements" because the court will not have the opportunity to adjust the class based on information revealed at trial. *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Class certification requires the following: (1) the class is so numerous that joinder of all members individually is "impracticable;" (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the person representing the class will fairly and adequately protect the interests of all class members. Fed. R. Civ. P. 23(a); *Staton*, 327 F.3d at 953. Also, the common questions of

---

[35] *Id.* at 15–16 (§ 22(f)); Settlement Notice, Ex. 1 to *id.* – ECF No. 78-1 at 32–39; Reminder Letter, Ex. 4 to *id.* – ECF No. 78-1 at 91.

[36] Settlement Agreement, Ex. A to Suppl. Cottrell Decl. – ECF No. 78-1 at 15–16 (§ 22), 22 (§§ 40–41).

[37] *Id.* at 16–17 (§§ 23–25).

ORDER – No. 21-cv-08652-LB    6

law or fact must predominate over any questions affecting only individual class members, and the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

The court finds (for settlement purposes only) that the proposed settlement class meets the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy. Also, under Rule 23(b)(3) (and for settlement purposes only), common questions predominate over any questions affecting only individual members, and a class action is superior to other available methods.

First, with 579 members, the class is numerous. *See, e.g.*, *Gonzalez v. Ahern*, No. 19-CV-07423-JSC, 2023 WL 3322579, at *4 (N.D. Cal. May 9, 2023).

Second, there are questions of law and fact common to the class. The case is about the defendants' COVID-19 and clock-in policies and practices that applied to all class members. This results in common questions concerning California wage-and-hour law. *Stonehocker v. Kindred Healthcare Operating LLC*, No. 19-CV-2494-YGR, 2021 WL 1643226, at *4 (N.D. Cal. Apr. 27, 2021) ("The focus of this action is common to all class members, namely, whether defendants failed to pay all wages owed, including pay for off-the-clock time."). Thus, the claims depend on common contentions, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Betorina v. Randstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *4 (N.D. Cal. Apr. 6, 2017). Furthermore, these common questions predominate over any questions affecting only individual members.

Third, the claims of the representative party are typical of the claims of the class. The named plaintiff and all class members allege the same violations based on similar facts. All representatives possessed the same interest and suffered the same injury as the rest of the class. *Stonehocker*, 2021 WL 1643226, at *4 (typicality requirement satisfied where the named plaintiff is an employee of the defendants, in a position similar to other class members, in a wage-and-hour case).

Fourth, the representative parties will fairly and adequately protect the interests of the class. Two factors are relevant to the adequacy determination: (1) whether the named plaintiffs and their

counsel have potential conflicts with the other class members; and (2) whether counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the litigation. *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) (citing *Hanlon*, 150 F.3d at 1020). Here, the named plaintiff has shared claims and interests with the class (and no conflicts of interest), and he retained qualified and competent counsel who have prosecuted the case vigorously.[38] *See id.*; *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1021–22.

Finally, a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, especially given the relatively small individual claims.[39] Fed. R. Civ. P. 23(b)(3).

In sum, the prerequisites of Rule 23(a) and (b)(3) are met. The court certifies the class under Rule 23(b)(3) for settlement purposes only.

### 3. Preliminary Approval of Settlement

A court may approve a proposed class-action settlement only "after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether":

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

---

[38] Cottrell Decl. – ECF No. 56-1 at 16 (¶ 59).

[39] *Id.* (¶ 62).

ORDER – No. 21-cv-08652-LB        8

Fed. R. Civ. P. 23(e)(2). These factors "are substantially similar to those articulated" in *Hanlon*, 150 F. 3d at 1027. *Student A v. Berkeley Unified Sch. Dist.*, No. 17-cv-02510-JST, 2021 WL 6332353, at *2 n.2 (N.D. Cal. July 8, 2021).

In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. 150 F.3d at 1026.

When parties "negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (cleaned up). "Specifically, such settlement agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id*. at 1048–49 (cleaned up).

The court has evaluated the Settlement Agreement for overall fairness and concludes preliminarily that it is free of collusion and approval is appropriate.

First, the settlement provides good value when contrasted with the maximum damages estimated by the plaintiffs. Counsel reached the settlement only after obtaining discovery sufficient to allow a robust damages assessment. Counsel estimated the theoretical maximum damages to be $12,148,264.63.[40] Alternatively, counsel applied a fifty-percent risk factor to the substantive and derivative claims, to account for risks such as differences between employees' experiences and limitations on derivative penalties. That equates to total damages of $6,074,132.31, of which $2,584,677.02 is attributable to the substantive wage-and-hour claims. Thus, the $1,700,000.00 Gross Settlement Amount is about sixty-six percent of the substantive-

---

[40] *Id.* at 11 (¶ 37).

claim damages and twenty-eight percent of the risk-adjusted total damages.[41] This result accords with other settlements in similar cases.[42]

Second, the value of the settlement is significant compared to the litigation risks and uncertainties. The maximum recovery assumes complete success for the plaintiffs, which was not a guaranteed outcome, particularly given the defendants' pending motions to dismiss contending, among other things, that the named plaintiff worked only for Environmental Sampling Supply and that the class period should be limited to the onset of the COVID-19 pandemic.[43] When viewed against the risk of little or no recovery, this settlement is fair. *See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 331 (N.D. Cal. 2014) (litigation risks, including maintaining class-action status, favor settlement approval). Moreover, settlement allows payment to the Class Members now, before costly and protracted litigation.

Third, a class action allows class members — who otherwise would not pursue their claims individually because costs would exceed recoveries — to obtain relief.

Finally, the settlement is the product of serious, non-collusive, arm's-length negotiations and was reached after mediation with an experienced mediator with subject-matter expertise.

The recoveries here are adequate to justify preliminary approval. Given other comparable settlements and the litigation risks identified above, the settlement amount at least preliminarily appears fair.

The court has also considered the Rule 23(e)(2) factors and finds that they support preliminary approval of the settlement as fair, reasonable, and adequate.

The PAGA allocation is within the range of reasonable settlements. *See, e.g.*, *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *8–9 (N.D. Cal. Oct. 11, 2016).

Class Counsel have not yet moved for attorney's fees, and in any case the court will address the issue of attorney's fees at the final fairness hearing. *See Hanlon*, 150 F.3d at 1029 (twenty-five

---

[41] *Id.* at 11–12 (¶¶ 38–40).

[42] Mot. – ECF No. 56 at 24 & n.7 (collecting cases).

[43] Mots. to Dismiss – ECF Nos. 16, 30.

percent is a benchmark in common fund cases); *cf. Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (twenty-five percent benchmark, though a starting point for analysis, may be inappropriate in some cases; fees must be supported by findings).

### 4. Appointment of Class Representative, Class Counsel, and Settlement Administrator

The court appoints Rito Lopez as the class representatives for settlement purposes only. He has claims that are typical of members of the class generally, and he is an adequate representative of the other members of the proposed class.[44]

The court appoints Phoenix Class Action Administration Solutions as the Settlement Administrator. It will administer the settlement in accordance with the requirements set forth in the Settlement Agreement.

The court also appoints Schneider Wallace Cottrell Konecky LLP as Class Counsel. Fed. R. Civ. P. 23(a) & (g)(1). They have sufficient qualifications, experience, and expertise in prosecuting class actions, including wage-and-hour class actions.[45]

### 5. Class Notice

The court approves the Settlement Notice and plan. The court finds that the notice provides the best notice practicable, satisfies the notice requirements of Rule 23, adequately advises class members of their rights under the settlement agreement, and meets the requirements of due process. *Cf. In re Hyundai and Kia*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (internal quotation marks omitted).

The forms of notice fairly, plainly, accurately, and reasonably provide class members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the class; (3) a description of the material terms of the settlement,

---

[44] Lopez Decl. – ECF No. 56-3.

[45] Cottrell Decl. – ECF No. 56-1 at 2–7 (¶¶ 5–7).

including the estimated payment; (4) a disclosure of the release of the claims; (5) the date, time, and location of the final fairness hearing; and (6) the identity of class counsel and the provisions for attorney's fees, costs, and class-representative service awards.[46] Fed. R. Civ. P. 23(c)(2)(B).

At the hearing, the court discussed with the parties the fact that the notice plan is by mail only. Under the circumstances, that method is sufficient: there is no indication that the class members are difficult to reach by mail, appropriate methods will be used to obtain current addresses, the class is a relatively small group consisting of the defendants' employees and former employees, and mailing addresses are the contact information the defendants have on file. Fed. R. Civ. P. 23(c)(2)(B) (the notice "may be by one or more of the following: United States mail, electronic means, or other appropriate means"). Also, the results of the notice program will be available before final approval.

### 6. Service Awards

District courts must evaluate proposed awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977 (cleaned up). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citation omitted). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). District courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164. In this district, a $5,000 incentive

---

[46] *Id.* at 20–22 (¶¶ 92–98); Settlement Notice, Ex. 1 to Settlement Agreement – ECF No. 78-1 at 32–39; Reminder Letter, Ex. 4 to *id.* – ECF No. 78-1 at 91.

award is presumptively reasonable. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases).

The court defers consideration of the service awards until the Final Approval Hearing.

### 7. Compliance with CAFA

The Settlement Agreement provides for compliance with CAFA: within ten days of the filing of the preliminary-approval motion, the defendants were to serve a notice of the proposed settlement, in accordance with 28 U.S.C. § 1715, on the appropriate state and federal officials.[47] Any final settlement approval will be more than ninety days after service, as required by the Act.

### 8. Procedures for Final Approval Hearing

#### 8.1 Deadlines

The court approves the parties' proposed schedule set forth in paragraph 14 of the proposed order.[48] The Final Approval Hearing will be on January 18, 2024, at 9:30 a.m.

#### 8.2 Fairness Hearing

At the hearing, the court will consider whether to (1) finally approve the settlement agreement and the releases in it, (2) finally approve the service award, and (3) award attorney's fees and costs to Class Counsel. The court may, for good cause, extend any of the deadlines or continue the Final Approval Hearing without further notice to the Class Members.

#### 8.3 Objections to or Exclusions from the Settlement

The objection and exclusion procedures will be those in the Settlement Agreement.[49]

---

[47] Settlement Agreement, Ex. A to Suppl. Cottrell Decl. – ECF No. 78-1 at 23 (§ 44).
[48] Proposed Order – ECF No. 56-4 at 4–6 (¶ 14).
[49] Settlement Agreement, Ex. A to Suppl. Cottrell Decl. – ECF No. 78-1 at 17 (§§ 24–25).

**9. Ancillary Items**

The Parties are authorized to make non-substantive changes to the proposed Notice of Settlement that are consistent with the terms of the Settlement and this Order.[50]

Any Class Members who submit a written exclusion shall not be a member of the Class, shall be barred from participating in the Settlement, and shall receive no benefit from the Settlement.[51]

Any Class Member seeking to object to the proposed Settlement may file such objection in writing with the Court and must serve such objection on the Settlement Administrator.[52]

Pending further order of the court, all proceedings in the Action, except those contemplated herein and in the Settlement, are stayed, and all deadlines are vacated.[53]

If for any reason the court does not execute and file a Final Approval Order and Judgment, the proposed Settlement subject to this Order and all evidence and proceedings had in connection with the Settlement will be null and void.[54]

## CONCLUSION

The court (1) preliminarily approves the settlement and authorizes the notices as set forth in this order, (2) approves the notice plan, (3) provisionally appoints the class representatives and class counsel, (4) appoints Phoenix Class Action Administration Solutions as the settlement administrator, (5) orders the procedures in this order, and (6) orders the parties and Phoenix to carry out their obligations pursuant to the Settlement Agreement. The schedule for all events is summarized in the chart in the proposed order.[55] The Final Approval Hearing will be on January 18, 2024, at 9:30 a.m.

---

[50] Proposed Order – ECF No. 56-4 at 3 (¶ 8).

[51] *Id.* (¶ 9).

[52] *Id.* at 4 (¶ 13).

[53] *Id.* at 6 (¶ 15).

[54] *Id.* (¶ 16).

[55] *Id.* at 4–6 (¶ 14).

This disposes of ECF Nos. 56 and 78.

**IT IS SO ORDERED.**

Dated: October 9, 2023

_____
LAUREL BEELER
United States Magistrate Judge