Carolyn Hunt Cottrell (SBN 166977)
Caroline N. Cohen (SBN 278154)
Andrew D. Weaver (SBN 318935)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105
ccottrell@schneiderwallace.com
ccohen@schneiderwallace.com
aweaver@schneiderwallace.com

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RITO LOPEZ, on behalf of himself and the putative Class members;<br><br>        Plaintiff,<br><br>vs.<br><br>EUROFINS SCIENTIFIC, INC., ENVIRONMENTAL SAMPLING SUPPLY, INC., TESTAMERICA LABORATORIES, INC., and DOES 1-10, inclusive.<br><br>        Defendants. | Case No. 3:21-cv-08652-LB<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: February 15, 2024<br>Time: 9:30am<br>Courtroom: B<br>Judge: Hon. Laurel Beeler |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on February 15, 2024, at 9:30am, or as soon thereafter as the matter may be heard, in Courtroom B, before the Honorable Laurel Beeler of the United States District Court for the Northern District of California, Plaintiff Rito Lopez, on behalf of himself and all the putative Class Members and Aggrieved Employees ("Plaintiff"), will and hereby does move the Court for final approval of the Amended Class Action Settlement Agreement and Release (the "Settlement Agreement" or the "Settlement," attached as **Exhibit A** to the Declaration of Carolyn Hunt Cottrell submitted in support of Plaintiff's Supplemental Motion for Preliminary Approval of Class Action and PAGA Representative Action Settlement (ECF No. 78-1)). In particular, Plaintiff moves for an order:

(1)     Granting final approval of the Settlement Agreement;

(2)     Finally certifying the Settlement Class[1] for settlement purposes;

(3)     Finally approving the proposed schedule and procedure for completing the final approval process as set forth in the Settlement and Proposed Order filed herewith;

(4)     Finally approving and appointing Schneider Wallace Cottrell Konecky LLP ("SWCK") as Class Counsel for the Settlement Class;

(5)     Finally approving Class Counsel's request for attorneys' fees and costs;

(6)     Finally approving and appointing Plaintiff Rito Lopez as Class Representative for the Settlement Class and approving his proposed service award;

(7)     Finally approving Phoenix Class Action Administration Solutions ("Phoenix") as the Settlement Administrator for the Settlement Class and approving the costs of Settlement administration; and

(8)     Entering final judgment in accordance with the terms of the Settlement.

---

[1] Undefined capitalized terms have the meanings ascribed to them in the Settlement Agreement.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1        Plaintiff brings this Motion pursuant to Federal Rule of Civil Procedure 23(e). The Motion is

2  based on this Notice, the accompanying Memorandum of Points and Authorities, the accompanying

3  Declaration of Carolyn H. Cottrell, the accompanying Declaration of Jarrod Salinas from Phoenix

4  Class Action Administration Solutions, all other records, pleadings, and papers on file in this action,

5  and such other evidence or argument as may be presented to the Court at the hearing on this Motion.

6  Plaintiff also submits a Proposed Order and a Proposed Judgment with his moving papers.

7

8  Date: February 1, 2024                    Respectfully submitted,

9

10                                    */s/ Andrew D. Weaver*

                                  Carolyn Hunt Cottrell

11                                    Caroline N. Cohen

                                  Andrew D. Weaver

12                                    SCHNEIDER WALLACE

                                  COTTRELL KONECKY LLP

13

14                                    *Attorneys for Plaintiff and the Putative Class*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1

## TABLE OF CONTENTS

I.      INTRODUCTION..................................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

III.    Preliminary Approval of the Settlement and Subsequent Notice ....................... 2

IV.     CAFA Notice and PAGA Notice Requirements Have Been Satisfied................ 3

V.      Key Terms of the Settlement ........................................................................... 4

VI.     Value of the Settlement .................................................................................. 5

VII.    the court should finally certify the class........................................................ 5

VIII.   The Class is numerous and ascertainable. ..................................................... 6

IX.     There are questions of law and fact common to the Class. ............................. 6

X.      Plaintiff's claims are typical of the claims of the Class. ................................ 7

XI.     Plaintiff and Class Counsel adequately represented the Class......................... 7

XII.    The Rule 23(b)(3) requirements for class certification are also met................ 8

XIII.   The court should grant final approval of the settlement................................ 10

XIV.    The $1,700,000.00 Settlement is fair, reasonable, and adequate in light of the risks of further litigation. ...................................................................... 11

XV.     The parties engaged in extensive discovery and negotiated the Settlement at arm's length with the assistance of an experienced mediator. ...................... 12

XVI.    The PAGA Allocation is reasonable. ............................................................ 13

XVII.   The best practicable notice was provided to the Class Members in accordance with the procedure approved by the Court. ................................................... 15

XVIII.  Plaintiff's proposed service award is reasonable and should be approved...... 16

XIX.    The requested attorneys' fees and costs are reasonable and should be approved............. 18

        1.      Awards in similar cases support Plaintiff's requested award. ............ 19

        2.      The excellent results achieved, contingent nature of the fee, and burden on Plaintiff and Class Counsel support the requested award................... 20

        3.      The reaction of the Class supports the requested award..................... 22

        4.      A Lodestar crosscheck (if applied) supports the requested award....... 22

- 1 -

XX.    Class Counsel's requested costs should be approved........................................................ 24

XXI.    CONCLUSION ............................................................................................................. 25

- 2 -

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Alberto v. GMRI, Inc.,*
   252 F.R.D. 652 (E.D. Cal. 2008) ............................................................. 17

4

5

*Amchem Prod., Inc. v. Windsor,*
   521 U.S. 591 (1997) .................................................................................. 10

6

7

*Benton v. Telecom Network Specialists, Inc.,*
   220 Cal.App.4th 701 (Cal. App. 2014) ...................................................... 9

8

*Betorina v. Randstad US, L.P.,*
   No. 15-cv-03646-EMC,

9

   2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) .............................................. 7

10

*Booher v. Jetblue Airways Corp.,*
   No. 4:15-cv-01203-JSW, 2023 U.S. Dist. LEXIS 71342,

11

   (N.D. Cal. Mar. 24, 2023) ......................................................................... 20

12

*Carter v. Anderson Merchandisers, LP,*

13

   2010 WL 1946784 (C.D. Cal. May 11, 2010) ........................................... 13

14

*Cherry, et al. v. The City College of San Francisco,*
   Docket No. C 04-4981 WHA, ECF No. 673 ............................................. 23

15

16

*Cifuentes v. Ceva Logistics U.S., Inc.,*
   No. 3:16-cv-01957-H-DHB, 2017 U.S. Dist. LEXIS 176279

17

   (S.D. Cal. Oct. 23, 2017) ........................................................................... 24

18

*Cunha v. Hansen Nat. Corp.,*
   No. 08-cv-1249-GW(JCx), 2015 WL 12697627

19

   (C.D. Cal. Jan. 29, 2015) ........................................................................... 24

20

*Fischel v. Equitable Life Assurance Soc'y,*

21

   307 F.3d 997 (9th Cir. 2002) ..................................................................... 19

22

*Fry v. Hayt, Hayt & Landau,*

23

   198 F.R.D. 461 (E.D. Pa. 2000) ......................................................... 6, 7, 8

24

*Gilmore v. McMillan-Hendryx Inc.,*
   No. 1:20-cv-00483-HBK, 2022

25

   U.S. Dist. LEXIS 11032 (E.D. Cal. Jan. 20, 2022) ................................... 14

26

*Grunin v. Int'l House of Pancakes,*
   513 F.2d 114 (8th Cir. 1975) ..................................................................... 15

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

*Guilbaud v. Sprint/United Mgmt. Co., Inc.*,
  No. 3:13-cv-04357-VC,
  Dkt. No. 181 (N.D. Cal. Apr. 15, 2016) ..................................................................... 18

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998).......................................................................... passim

*Haralson v. U.S. Aviation Servs. Corp.*,
  383 F. Supp. 3d 959 (N.D.Cal. 2019)............................................................... 14

*Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ........................................... 24

*Hartley v. On My Own, Inc., 2020 U.S. Dist. LEXIS 154315*,
  2020 WL 5017608 (E.D. Cal. Aug. 25, 2020)................................................... 14

*Ikonen v. Hartz Mountain Corp.*,
  122 F.R.D. 258, (S.D. Cal. 1988)........................................................................ 6

*In re Immune Response Securities Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................ 25

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ..................................................................... 11, 16

*In re Omnivision Technologies, Inc.*,
  *559 F. Supp. 2d 1036 (N.D. Cal. 2008)*.......................................................... 22

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
  295 F.R.D. 438, 471 (C.D. Cal. 2014)............................................................... 17

*Jordan v. NCI Grp., Inc.*,
  No. EDCV 16-1701 JVS (SPx),
  2018 U.S. Dist. LEXIS 25297 (C.D. Cal. Jan. 5, 2018) .................................. 14

*Laffitte v. Robert Half International, Inc.*,
  1 Cal.5th 480 (2016)................................................................................... 19, 23

*Langford v. Devitt*,
  127 F.R.D. 41 (S.D.N.Y. 1989) ......................................................................... 15

*Lopez v. Youngblood*,
  No. cv-F-07-0474 DLB, 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ........... 23

*Mandujano v. Basic Vegetable Products, Inc.*,
  541 F.2d 832 (9th Cir. 1976) ............................................................................ 15

*Mangold v. Cal. Pub. Utils. Comm'n*,
67 F.3d 1470 (9th Cir. 1995) ................................................................................ 19

*Millan v. Cascade Water Services, Inc.*,
No. 1:12-cv-01821-AWI-EPG, 2016 WL 3077710
(E.D. Cal. June 2, 2016) ...................................................................................... 17

*Morris v. Lifescan, Inc.*,
54 F. App'x 663 (9th Cir. 2003) ......................................................................... 19

*Nat'l Rural Telecomms. Coop.*,
221 F.R.D. (C.D. Cal. 2004) ......................................................................... 18, 22

*Noyes v. Kelly Servs., Inc.*,
2008 WL 3154681 (E.D. Cal. Aug. 4, 2008) ...................................................... 21

*Officers for Justice v. Civil Serv. Comm'n of City & Cty of San Fran.*
(9th Cir. 1982) 688 F.2d ...................................................................................... 11

*Pokorny v. Quixtar, Inc.*,
No. C 07-0201 SC, 2013 U.S. Dist. LEXIS 100791
(N.D. Cal. Jul. 18, 2013) ...................................................................................... 20

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000) ............................................................................. 20

*Radcliffe v. Experian Info. Solutions, Inc.*,
715 F.3d 1157 (9th Cir. 2013) ............................................................................. 17

*Ramirez v. Benito Valley Farms, LLC*,
No. 16-CV-04708-LHK, 2017 U.S. Dist. LEXIS 137272
(N.D. Cal. Aug. 25, 2017) .................................................................................... 14

*Regino Primitivo Gomez v. H&R Gunlund Ranches, Inc.*,
2011 WL 5884224 (E.D. Cal. 2011) .................................................................... 20

*Rodriguez v. Disner*,
688 F.3d 645 (9th Cir. 2012) ............................................................................... 19

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ............................................................................... 16

*Romero v. Producers Dairy Foods, Inc.*,
235 F.R.D. 474 (E.D. Cal. 2006) ........................................................................... 6

*Schaffer v. Litton Loan Servicing, LP*,
   No. CV 05-07673 MMM (JCx), 2012 WL 10274679
   (C.D. Cal. Nov. 13, 2012) ........................................................................................ 17

*Soto v. O.C. Commc'ns, Inc.*,
   No. 3:17-cv-00251-VC, ECF 304
   (N.D. Cal. Oct. 23, 2019) ................................................................................. 18, 19

*Spann v. J.C. Penney Corp.*,
   No. SACV120215FMOKESX, 2016 WL 5844606
   (C.D. Cal. Sept. 30, 2016) ....................................................................................... 24

*Staton v. Boeing Co.*, 327 F.3d 938,
   (9th Cir. 2003) ...............................................................................................6, 16, 17

*Stonehocker v. Kindred Healthcare Operating LLC*,
   No. 19-CV-2494-YGR, 2021
   WL 1643226 (N.D. Cal. Apr. 27, 2021) .................................................................... 7

*Terry v. Hoovestol, Inc.*,
   *No. 16-cv-05183-JST, 2018*
   *U.S. Dist. LEXIS 207249 (N.D. Cal. Dec. 7, 2018)* ................................................ 10

*Thieriot v. Celtic Ins. Co.*,
   No. C 10-04462 LB, 2011 U.S. Dist. LEXIS 44852
   (N.D. Cal. Apr. 21, 2011) ...............................................................................22, 23, 24

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) .................................................................................... 15

*Trujillo v. City of Ontario*,
   No. EDCV 04-1015-VAP (SGLx),
   2009 WL 2632723 (C.D. Cal. Aug. 24, 2009) ........................................................ 17

*Van Liew v. North Star Emergency Servs., Inc.*,
   No. RG17876878 (Alameda Co. Super. Ct., Dec. 11, 2018) ..................................... 18

*Van Vranken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) .................................................................... 16, 24

*Vargas v. Cent. Freight Lines, Inc.*,
   No. 16-cv-00507-JLB, 2017 U.S. Dist. LEXIS 157976
   (S.D. Cal. Sep. 25, 2017) ........................................................................................ 14

*Vasquez v. Coast Valley Roofing*,
   266 F.R.D. 482 (E.D. Cal. 2010) ............................................................................ 20

- 4 -
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

*Viceral v. Mistras Grp., Inc.*,
   2016 WL 5907869, (N.D. Cal. Oct. 11, 2016) ............................................................. 11

*Villafan v. Broadspectrum Downstream Servs.*,
   No. 18-cv-06741-LB,
   2021 U.S. Dist. LEXIS 249763 (N.D. Cal. Apr. 8, 2021) ..................................... passim

*Vizcaino v. Microsoft Corp.*,
   290 F. 3d 1043 (9th Cir. 2002) ......................................................................19, 23, 24

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, 350 (2011) ............................................................................................ 7

*Wang v. Chinese Daily News, Inc.*,
   737 F.3d 538 (9th Cir. 2013) .................................................................................. 6, 8

*Wren v. RGIS Inventory Specialists*,
   2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ............................................................. 20

*Yokoyama v. Midland Nat. Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2010) .................................................................................... 9

**Other Authorities**

Posner, Economic Analysis of the Law,
   534 (4th ed. 1992) ....................................................................................................... 21

**Statutes and Regulations**

C.A.F.A., 28 U.S.C. § 1715 ................................................................................................ 3

Fed. Rules of Civ. Proc. 23(a) ........................................................................................... 5

Fed. Rules of Civ. Proc. 23(a)(1) ....................................................................................... 6

Fed. Rules of Civ. Proc. 23(a)(2) ....................................................................................... 6

Fed. Rules of Civ. Proc. 23(a)(4) ....................................................................................... 8

Fed. Rules of Civ. Proc. 23(b) ........................................................................................... 5

Fed. Rules of Civ. Proc. 23(b)(3) ................................................................................ 6, 8, 9

Fed. Rules of Civ. Proc. 23(e)(2) ...................................................................................... 10

Fed. Rules of Civ. Proc. 23(h) ..................................................................................... 18, 24

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Rito Lopez ("Plaintiff"), on behalf of himself and all others similarly situated, having reached a class-wide settlement with Defendants Eurofins Scientics, Inc. ("Eurofins"), Environmental Sampling Supply, Inc. ("ESS"), and TestAmerica Laboratories, Inc. ("TestAmerica") (collectively "Defendants"), seeks final approval of the Amended Class Action Settlement and Release ("Settlement" or "Settlement Agreement"),[2] which the Court preliminarily approved on October 9, 2023. (ECF No. 81). After over two years of litigation, including discovery, amendments to the complaints, outreach to class members, significant motion practice, a mediation, and extensive arm's-length negotiations between counsel, the Parties have reached a global settlement of the Action[3] that provides the Settlement Class[4] with an excellent recovery in light of the risks and expense associated with continued litigation.

Plaintiff brought this class action on behalf of approximately 538 current and former hourly, non-exempt workers employed by Defendants in California between November 5, 2017 and June 1, 2023 ("Class Members").[5] Plaintiff contends that Defendants violated California wage-and-hour laws by failing to compensate Class Members for time spent undergoing COVID-19 screenings and waiting in line to clock back in after lunch, among other wage-and-hour allegations. The Settlement resolves the Class Members' claims for a total non-reversionary settlement of $1,700,000.00, providing

---

[2] Attached as **Exhibit A** to the Declaration of Carolyn Hunt Cottrell ("Cottrell Supp. Decl.") submitted in support of Plaintiff's Supplemental Motion for Preliminary Approval of Class Action and PAGA Representative Action Settlement (ECF No. 78-1).

[3] "Action" means the instant action and the related Private Attorneys General Act ("PAGA") action pending as *Rito Lopez v. Eurofins Scientific, Inc., et al.*, Case No. 21CV004840 in the Superior Court of California, County of Alameda. (*See* Settlement, ¶ 2(l), (u)).

[4] Undefined capitalized terms have the meanings ascribed to them in the Settlement Agreement.

[5] See Declaration of Jarrod Salinas from Phoenix Class Action Administration Solutions Regarding Notice Administration ("Phoenix Decl."), ¶ 5, 11.

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1    excellent an average recovery of approximately $1,898.36 per Settlement Class Member. With this

2    Settlement, the parties are resolving numerous wage-and-hour claims unlikely to have been prosecuted

3    as individual actions. The Court has already determined on a preliminary basis that the Settlement is

4    fair, reasonable, and adequate. (*See* ECF No. 81, p. 10). Plaintiff now respectfully requests that the

5    Court grant final approval of the Settlement.

6    **II.    FACTUAL AND PROCEDURAL BACKGROUND**

7         Plaintiff incorporates by reference the Factual Background section of the Memorandum of

8    Points and Authorities in Support of his Motion for Preliminary Approval of Class Action and PAGA

9    Representative Action Settlement, filed May 18, 2023 (ECF No. 56); the Declaration of Carolyn H.

10   Cottrell ("Cottrell Preliminary Decl.") in support thereof (ECF No. 56-1); the Declaration of Plaintiff

11   Rito Lopez in support thereof (ECF No. 56-3); the Supplemental Memorandum of Points and

12   Authorities in Support of his Supplemental Motion for Preliminary Approval of Class Action and

13   PAGA Representative Action Settlement, filed September 26, 2023 (ECF No. 78); and the Declaration

14   of Carolyn Hunt Cottrell ("Cottrell Supp. Decl.") in support thereof (ECF No. 78-1).

15   **III.   PRELIMINARY APPROVAL OF THE SETTLEMENT AND SUBSEQUENT**

16        **NOTICE**

17        On October 9, 2023, the Court granted preliminary approval of the Settlement. (ECF No. 81).

18   Following the Court's preliminary approval Order, the Court-appointed administrator, Phoenix Class

19   Action Administration Solutions ("Phoenix"), began notice administration pursuant to the Order and

20   the Settlement. (*See id.* at p. 14; Settlement, ¶¶ 22(c)–(i), 23–26). On November 9, 2023, Defendants

21   provided Phoenix with a mailing list ("Class List") containing the Settlement Class Members' names,

22   last known addresses, last known telephone numbers, and social security/tax ID numbers. (Declaration

23   of Carolyn H. Cottrell, filed concurrently herewith ("Cottrell Final Decl."), ¶ 6; Settlement, ¶ 2(f),

24   22(d)). The Class List contained data for a total of 538 Class Members, including Plaintiff. (Cottrell

25   Final Decl., ¶ 6)

26        Before mailing the Settlement Notices, Phoenix ran the Class List through the U.S. Postal

27

28
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

Service's National Change of Address database. (Cottrell Final Decl., ¶ 6; *see also* concurrently filed Declaration of Jarrod Salinas from Phoenix Class Action Administration Solutions Regarding Notice Administration ("Phoenix Decl."), ¶ 4).

On November 29, 2023, 538 Settlement Notices were mailed to Class Members, of which eight were returned as undeliverable. (*Id.* at 5-6). These undeliverable notices were skip-traced and sent to eight updated addresses, of which zero were returned as undeliverable. (*Id.*). Zero notices remained undeliverable after skip-tracing efforts. (*Id.* at 7).

The Settlement Notices distributed by Phoenix included Phoenix's calculations of estimated Settlement Awards from the Net Settlement Amount based on the Gross Settlement Amount of $1,700,000.00, less: Plaintiff's Service Award, Class Counsel's Fee Award, Class Counsel's costs, Settlement Administrator Costs, the payment to the Labor and Workforce Development Agency ("LWDA") for its share of PAGA penalties, and the Net PAGA Amount. (Cottrell Final Decl., ¶ 7; Settlement, ¶ 2(q), (s), 34). Based on these amounts, Phoenix estimated individual Settlement Awards to average approximately $1,898.36 per Settlement Class Member,[6] with the possibility of a higher or lower award based on the number of workweeks worked. (Cottrell Final Decl., ¶ 7; Phoenix Decl., ¶ 13).

The deadline for Class Members to opt out of or object to the Settlement or dispute their workweeks was January 13, 2024. (Settlement, ¶ 2(t), 23). As of this date, zero Class Members have requested exclusion, zero Class Members have objected to the Settlement, and there are no outstanding disputes. (Cottrell Final Decl., ¶ 8; Phoenix Decl., ¶ 8-10).

## IV.    CAFA NOTICE AND PAGA NOTICE REQUIREMENTS HAVE BEEN SATISFIED.

Defendants complied with the notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715 *et seq.* ("CAFA"), which requires that "appropriate state and federal officials" be notified of a

---

[6] Calculated by dividing the Net Settlement by the number of Class Members.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1    pending class action settlement in federal court. On June 27, 2023, Defendants served notice pursuant

2    to CAFA on the United States Attorney General and the Attorneys General in the states in which Class

3    Members resided as of the date of the CAFA notice. (Cottrell Final Decl., ¶ 5; *see* Settlement, ¶ 44).

4    The final Settlement was provided to the LWDA on January 30, 2024. (Cottrell Final Decl., ¶ 14.)

5    **V.    KEY TERMS OF THE SETTLEMENT**

6    Under the Settlement, Defendants will pay a non-reversionary Gross Settlement Amount of

7    $1,700,000.00 to resolve the Action. (Settlement, ¶ 2(q)). This amount includes all Settlement Awards

8    to Participating Individuals, the PAGA Payment,[7] the Class Representative's Service Award,

9    Attorneys' Fees and Costs to Class Counsel, and Settlement Administration Costs to the Settlement

10   Administrator. (Settlement, ¶ 2(q)). The Gross Settlement Amount is a negotiated amount that resulted

11   from substantial arm's-length negotiations and significant investigation and analysis by Class Counsel.

12   (Cottrell Final Decl., ¶ 9). Class Counsel based their damages analysis and settlement negotiations on

13   the discovery propounded, including payroll and timekeeping data. (*Id.*). Class Members were not

14   required to submit a claim form to receive Settlement Awards and instead were provided 45 days from

15   the mailing of the Settlement Notice to request exclusion from (*i.e.*, opt-out of) or object to the

16   Settlement.  (Settlement, ¶¶ 2(t), 24–25). Class Members who did not submit a timely opt-out request

17   are considered Participating Individuals. (*Id.* at ¶ 2(w)).

18   The Net Settlement Amount, the amount distributed from the Gross Settlement Amount to

19   Participating Individuals, is approximately $1,021,319.48. (Cottrell Final Decl., ¶ 9). This amount

20   represents the Gross Settlement Amount less the PAGA Payment, the Class Representative's Service

21   Award, Attorneys' Fees and Costs to Class Counsel, and Settlement Administration Costs to the

22   Settlement Administrator. (Settlement, ¶ 2(s)). The entire Gross Settlement Amount will be disbursed

23

24   [7] The PAGA Payment is the amount of the Gross Settlement Amount allocated to settle all claims and
     remedies under PAGA. (Settlement Agreement, ¶ 2(v)). The PAGA Payment shall be $75,000.00 total,

25   of which 75% (or $56,250.00) shall be paid to the LWDA out of the Gross Settlement Amount
     ("LWDA Payment"), and 25% (or $18,750.00) shall be paid to the Aggrieved Employees out of the

26   Net Settlement Amount ("Net PAGA Amount").

27

28
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1    pursuant to the terms of the Settlement, and none of it will revert to Defendants. (Settlement, ¶¶ 2(q),
2    29).

3           The Settlement describes other key terms at the following locations: Aggrieved Employees (¶¶
4    2(b), (r)); California Class (¶ 2(c)); Settlement Class Members (¶ 2(dd)); Settlement Award
5    Calculations (¶ 34); Released Parties (¶ 2(y)); Released Claims (¶ 2(z));Participating Individuals'
6    Released Claims (¶ 20); Released California Class Claims (¶ 20(a)); Released PAGA Claims (¶ 20(b));
7    Named Plaintiff's Released Claims (¶ 21); Tax Allocation (¶ 37); Service Award: (¶ 30(a)); Attorneys'
8    Fees and Costs (¶¶ 2(q), 2(m), 27, 30(b)(i)); and Remaining Monies (¶ 43).

9    **VI.    VALUE OF THE SETTLEMENT**

10          Based on the analysis of the documents and data produced by Defendants, Plaintiff made
11    reasonable assumptions regarding the wage-and-hour violation rates. (Cottrell Preliminary Decl., ¶
12    36). After accounting for the risks of litigation, the $1,700,000.00 Gross Settlement amount represents
13    approximately 66% of the $2,584,677.02 Plaintiff valued for the substantive unpaid wage claims and
14    27% of the risk adjusted estimate for all claims. (*Id.* at 36-40). The Settlement will result in immediate
15    and certain payment to Class Members of meaningful amounts. (*Id.* at ¶ 41). The average recovery is
16    approximately $1,898.36 per Settlement Class Member, with the possibility of a higher or lower award
17    based on the number of workweeks worked. (Cottrell Final Decl., ¶ 7; Phoenix Decl., ¶ 13). This
18    amount provides significant compensation to the Class Members, and the Settlement provides an
19    excellent recovery in the face of expanding and uncertain litigation. (Cottrell Preliminary Decl., ¶ 41).
20    In light of all of the risks, the settlement amount is fair, reasonable, and adequate. (*Id.*).

21    **VII.    THE COURT SHOULD FINALLY CERTIFY THE CLASS**

22          Plaintiff respectfully requests that the Court make final its preliminary certification of the Class
23    for settlement purposes. The Court reviews the propriety of class certification under Federal Rules of
24    Civil Procedure 23(a) and (b). (ECF No. 81, p. 6). Class certification requires the following: (1) the
25    class is so numerous that joinder of all members individually is impracticable; (2) there are questions
26    of law or fact common to the class; (3) the claims or defenses of the class representatives are typical
27
28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1    of the claims or defenses of the class; and (4) the person representing the class will fairly and

2    adequately protect the interests of all class members. *See* FED. R. CIV. P. 23(a); *Staton v. Boeing Co.*,

3    327 F.3d 938, 953 (9th Cir. 2003) Also, the common questions of law or fact must predominate over

4    any questions affecting only individual class members, and the class action must be superior to other

5    available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3).

6        The Court has already found on a preliminary basis that the Settlement Class here "meets the

7    Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy," that "common

8    questions predominate over any questions affecting only individual members, and [that] a class action

9    is superior to other available methods." (ECF No. 81, p. 7). The Court should make the same

10   determinations on a final basis.

11   **VIII.   THE CLASS IS NUMEROUS AND ASCERTAINABLE.**

12       The numerosity requirement demands that a class be large enough that joinder of all members

13   would be impracticable. Fed. R. Civ. P. 23(a)(1). Courts routinely find numerosity satisfied with

14   classes of at least 40 members. *See, e.g., Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D.

15   Cal. 1988); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). The final

16   total of 538 Class Members here render the class so large as to make joinder impracticable. (Cottrell

17   Preliminary Decl., ¶ 56; ECF No. 81, p. 7 ("[W]ith 579 members, the class is numerous.")). The Class

18   Members are readily identifiable from Defendants' payroll records. (Cottrell Preliminary Decl., ¶ 56).

19   **IX.    THERE ARE QUESTIONS OF LAW AND FACT COMMON TO THE CLASS.**

20       The commonality requirement of Rule 23(a)(2) "is met if there is at least one common question

21   or law or fact." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000). Plaintiff "need not

22   show that every question in the case, or even a preponderance of questions, is capable of class wide

23   resolution." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). "[E]ven a single

24   common question" can satisfy the commonality requirement of Rule 23(a)(2). (*Id.*)

25       Plaintiff contends that common questions of law and fact not only exist but predominate here.

26   (Cottrell Preliminary Decl., ¶ 57). The primary wage-and-hour violations at issue result from

27

28
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1  Defendants' standardized policies, practices, and procedures regarding COVID-19 screenings and

2  waiting in line to clock-in, creating pervasive issues of fact and law that are amenable to resolution on

3  a class-wide basis. (*Id.*). Plaintiff's derivative claims will rise or fall with the primary claims. (*Id.*). As

4  the Court has noted, "[t]he case is about the defendants' COVID-19 and clock-in policies and practices

5  that applied to **all class members**," resulting in "common questions concerning California wage-and-

6  hour law." (ECF No. 81, p. 7) (emphasis added). As a result, Plaintiff's claims "depend on common

7  contentions, the determination of which 'will resolve an issue that is central to the validity of each one

8  of the claims in one stroke.'" (*Id.*) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011);

9  *Betorina v. Randstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *4 (N.D. Cal. Apr. 6,

10  2017). Because these questions can be resolved in one class-action proceeding, the commonality

11  requirement is satisfied.

12  **X.    PLAINTIFF'S CLAIMS ARE TYPICAL OF THE CLAIMS OF THE CLASS.**

13       "Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the

14  members of the class." *Fry*, 198 F.R.D. at 468. "[A] representative's claims are 'typical' if they are

15  reasonably coextensive with those of absent class members; they need not be substantially identical."

16  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

17       Plaintiff's claims are typical of those of all other Class Members. Review of documents and

18  data confirms that Defendants' employees throughout California were subjected to the same alleged

19  illegal policies and practices to which Plaintiff was subjected. (*Id.*). Plaintiff and the Class Members

20  allege the same violations based on similar facts, and Plaintiff and the Class Members all have the

21  same interest in the litigation and suffered the same injury. Thus, as the Court has already found on a

22  preliminary basis, the typicality requirement is satisfied. *See Stonehocker v. Kindred Healthcare

23  Operating LLC*, No. 19-CV-2494-YGR, 2021 WL 1643226, at *4 (N.D. Cal. Apr. 27, 2021) (typicality

24  requirement satisfied in a wage-and-hour case where, as here, the named plaintiff was an employee of

25  the defendants in a position similar to other class members).

26  **XI.    PLAINTIFF AND CLASS COUNSEL ADEQUATELY REPRESENTED THE**

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1    **CLASS.**

2        To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show "(1)

3    that the putative named plaintiff has the ability and the incentive to represent the claims of the class

4    vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between

5    the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469. Regarding

6    the adequate counsel component, the inquiry is whether counsel chosen by the named plaintiff is

7    qualified, experienced, and able to vigorously conduct the litigation. *See In re Hyundai and Kia Fuel*

8    *Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) (citing *Hanlon*, 150 F.3d at 1020).

9        Here, Plaintiff has shared claims and interests with the Class Members, and Plaintiff has no

10   conflicts of interest with the Class Members. (Cottrell Preliminary Decl., ¶ 59). Plaintiff has

11   prosecuted this case with the interests of the Class Members in mind. (*Id.*). Class Counsel has extensive

12   experience in class-action and employment litigation, including wage-and-hour class actions, does not

13   have any conflict with the Class, and has prosecuted the case vigorously. (*see id.* at ¶¶ 5–7 (providing

14   detailed summary of Class Counsel's experience and qualification); ECF No. 81, p. 8 (describing Class

15   Counsel as "qualified and competent")). The adequacy of representation requirement is therefore met.

16   **XII.    THE RULE 23(B)(3) REQUIREMENTS FOR CLASS CERTIFICATION ARE**

17   **ALSO MET.**

18       Under Rule 23(b)(3), Plaintiff must demonstrate that common questions "predominate over any

19   questions affecting only individual members" and that a class action is "superior to other available

20   methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The

21   predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and

22   individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant

23   adjudication by representation.'" *Wang*, 737 F.3d at 545 (quoting *Hanlon*, 150 F.3d at 1022).

24       Here, the common questions raised in this action predominate over any individualized

25   questions concerning the Class Members. (Cottrell Preliminary Decl., ¶ 60). The Class is entirely

26   cohesive because resolution of Plaintiff's claims hinges on the uniform policies and practices of

27

28
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1   Defendants, rather than the treatment the Class Members experienced on an individual level. (*Id.*). The

2   predominant questions relate to whether Class Members are entitled to be compensated for the time

3   spent undergoing COVID-19 screenings and waiting in line to clock-in. These questions apply to all

4   Class Members. (*See* ECF No. 81, p. 7). As a result, Plaintiff's class claims would be resolved with

5   common forms of proof, such as Defendants' policies, and would not require inquiries specific to

6   individual Class Members.[8] (*Id.*). As the Court has already determined on a preliminary basis, the

7   common questions stemming from Defendants' COVID-19 and clock-in policies and practices

8   "predominate over any questions affecting only individual members." (ECF No. 81, p. 7).

9   Accordingly, the predominance requirement is satisfied.

10          The class-action mechanism is also a superior method of adjudication compared to a multitude

11  of individual suits. (Cottrell Preliminary Decl., ¶ 61). To determine whether the class approach is

12  superior, courts consider: (A) the class members' interests in individually controlling the prosecution

13  or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy

14  already begun by or against class members; (C) the desirability or undesirability of concentrating the

15  litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class

16  action. Fed. R. Civ. P. 23(b)(3)(A)–(D).

17          Here, the Class Members do not have a strong interest in controlling their individual claims.

18  (Cottrell Preliminary Decl., ¶ 62). The Action involves hundreds of workers with very similar, but

19  relatively small, claims for monetary injury. (*Id.*). If the Class Members proceeded with their claims

20  as individuals, their many individual suits would require duplicative discovery and duplicative

21  litigation, and each Class Member would have to personally participate in the litigation effort to an

22  extent that would never be required in a class proceeding. (*Id.*). Thus, the class-action mechanism

23

24  ---
    [8] Although the amount of time spent off-the-clock during COVID-19 checks and while waiting in line
25  may vary, these are damages questions and should not impact class certification. *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010). The fact that individual inquiries might be
26  necessary to determine the amount of time each individual employee spent in the health screenings and in line, despite the Defendants' allegedly unlawful policy, is not a proper basis for denying
27  certification. *Benton v. Telecom Network Specialists, Inc.*, 220 Cal. App. 4th 701 (Cal. App. 2014).

28
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1   would efficiently resolve numerous substantially identical claims at the same time while avoiding a

2   waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious

3   litigation and arbitrations. (*Id.*). The issues raised here are much better handled collectively by way of

4   a settlement. (Cottrell Preliminary Decl., ¶ 63). Manageability is not a concern in the settlement

5   context. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997). The Settlement provides finality,

6   ensures that workers receive redress for their relatively modest claims, and avoids clogging the legal

7   system with numerous cases. (*Id.* at ¶ 64).

8        The Rule 23(a) and (b) factors are all satisfied, and class treatment is efficient and justified.

9   Accordingly, the Court should finally certify the Class for settlement purposes.

10  **XIII.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT**

11       "The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class

12  actions." *Terry v. Hoovestol, Inc.*, No. 16-cv-05183-JST, 2018 U.S. Dist. LEXIS 207249, at * 9 (N.D.

13  Cal. Dec. 7, 2018) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992));

14  *see also Villafan v. Broadspectrum Downstream Servs.*, No. 18-cv-06741-LB, 2021 U.S. Dist. LEXIS

15  249763, at *14 (N.D. Cal. Apr. 8, 2021) (Beeler, M.J.) ("Settlement is a strongly favored method for

16  resolving disputes, particularly where complex class action litigation is concerned.") (internal

17  quotation marks omitted). Even so, a court may approve a proposed class-action settlement "only after

18  a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In

19  deciding whether to approve a proposed settlement, "[t]he court need not ask whether the proposed

20  settlement is ideal or the best possible; it determines only whether the settlement is fair, free of

21  collusion, and consistent with the named plaintiff's fiduciary obligations to the class." *Villafin*, 2021

22  U.S. Dist. LEXIS 249763, at *14 (citing *Hanlon*, 150 F.3d at 1026–27).

23       In *Hanlon*, the Ninth Circuit identified factors relevant to assessing whether a settlement is

24  fair, reasonable, and adequate: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity,

25  and likely duration of further litigation; (3) the risk of maintaining class-action status throughout trial;

26  (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1    proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and

2    (8) the reaction of class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026.[9]

3         Guided by these factors, the Court has already "evaluated the Settlement Agreement for overall

4    fairness and conclude[d] preliminarily that it is free of collusion and [that] approval is appropriate."

5    (ECF No. 81, p. 9). Plaintiff now asks the Court to make a final determination that the Settlement is

6    fair, reasonable, and adequate and grant final approval of the Settlement.

7    **XIV.    THE $1,700,000.00 SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

8    **IN LIGHT OF THE RISKS OF FURTHER LITIGATION.**

9         In evaluating the fairness of a proposed settlement, courts compare the settlement amount with

10   the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec.*

11   *Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Courts routinely approve settlements that provide a fraction

12   of the maximum potential recovery. *See, e.g., Officers for Justice*, 688 F.2d at 623; *Viceral v. Mistras*

13   *Grp., Inc.*, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016) (approving wage-and-hour settlement

14   representing 8.1% of the total verdict value). Here, the Gross Settlement Amount of $1,700,000.00

15   represents approximately 66% of the approximately $2,584,677.02 that Plaintiff calculated for the

16   risk-adjusted substantive unpaid wages and meal/rest break violation claims. (Cottrell Preliminary

17   Decl., ¶ 65). When including the derivative claims, interest, and potential PAGA penalties that would

18   have been owed to the Class Members, the Gross Settlement Amount represents approximately 28%

19   of the approximate risk-adjusted total exposure. (*Id.*). As the Court has already found, these figures

20   represent "good value when contrasted with the maximum damages estimated by the plaintiffs." (ECF

21   No. 81, p. 9).

22        The above estimates are, of course, optimistic and would certainly be disputed. (Cottrell

23   Preliminary Decl., ¶ 66). To obtain such a result at trial, Plaintiff would have to prove that each Class

24

25   [9] These factors are "substantially similar to those articulated" in Federal Rule of Civil Procedure

26   23(e)(2). *See Student A v. Berkeley Unified Sch. Dist.*, No. 17-cv-02510-JST, 2021 U.S. Dist. LEXIS
     250505, at *5 n. 2 (N.D. Cal. Jul. 8, 2021); *see also* ECF No. 81, p. 9.

27

28
     PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
     AND PAGA REPRESENTATIVE ACTION SETTLEMENT
     *Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1    Member worked off the clock for at least one minute during each COVID-19 check and for two

2    minutes while waiting to clock back in, and that Defendants acted knowingly or in bad faith. (*Id.*). As

3    the Court has noted, Plaintiff's "complete success" is "not a guaranteed outcome, particularly given

4    the defendants' pending motions to dismiss." (*See* ECF No. 81, p. 10).

5          Proceeding in litigation would also come with significant expense. If the Action were to go to

6    trial, the fees and costs would certainly exceed the fees and costs requested here. (Cottrell Preliminary

7    Decl., ¶ 73). Litigating the class-action claims would require substantial additional preparation and

8    discovery, depositions of experts, the presentation of percipient and expert witnesses at trial, as well

9    as the consideration, preparation, and presentation of voluminous documentary evidence and the

10   preparation and analysis of expert reports. (*Id.*). When weighed against the uncertainty of success on

11   the merits and maintaining class-action status through trial, "the value of the [S]ettlement is

12   significant," and, "[w]hen viewed against the risk of little or no recovery, this [S]ettlement is fair."

13   (*See* ECF No. 81, p. 10). Moreover, the Settlement provides relief to the Settlement Class Members

14   now, "before costly and protracted litigation." (*Id.*). Accordingly, the first four *Hanlon* factors, which

15   weigh the settlement amount and strength of Plaintiff's case against the risks and costs of continued

16   litigation, favor final approval.

17   **XV.    THE PARTIES ENGAGED IN EXTENSIVE DISCOVERY AND NEGOTIATED**

18   **THE SETTLEMENT AT ARM'S LENGTH WITH THE ASSISTANCE OF AN**

19   **EXPERIENCED MEDIATOR.**

20         The amount of discovery completed prior to reaching a settlement is important because it bears

21   on whether the parties and the Court have sufficient information before them to assess the merits of

22   the claims. *See, e.g.*, *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617, 625 (N.D. Cal. 1979); *Lewis v.*

23   *Starbucks Corp.*, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008). Informal discovery may also

24   assist parties with "form[ing] a clear view of the strengths and weaknesses of their cases." *Monterrubio*

25   *v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013). Here, the parties engaged in extensive

26   information-gathering that has enabled both sides to assess the claims and potential defenses in this

27

28
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1    action, including discovery, amendments to the complaints, mediation, and arm's-length negotiations.

2    (Cottrell Preliminary Decl., ¶ 68). This allowed the parties to accurately assess the legal and factual

3    issues that would arise if the case proceeded to trial. (*Id.*). Class Counsel's liability and damages

4    evaluation was premised on a careful and extensive analysis of Defendants' policies and practices

5    relating to Class Members' pay. (*Id.* at ¶ 70). Indeed, Plaintiff's counsel reached the Settlement "only

6    after obtaining discovery sufficient to allow a robust damages assessment." (ECF No. 81, p. 9).

7    Facilitated by experienced mediator, Gail Andler, the parties used this information and discovery to

8    fairly resolve the litigation. (Cottrell Preliminary Decl., ¶ 71).

9        Courts routinely presume a settlement is fair where it is reached through arm's-length

10   bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at

11   *14 (N.D. Cal. Apr. 1, 2011). Furthermore, where counsel are well-qualified to represent the proposed

12   class in a settlement based on their extensive class-action experience and familiarity with the strengths

13   and weaknesses of the action, as here, courts find this factor to support a finding of fairness. *Wren*,

14   2011 WL 1230826, at *10; *Carter v. Anderson Merchandisers, LP*, 2010 WL 1946784, at *8 (C.D.

15   Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

16       Here, the Settlement was a product of non-collusive, arm's-length negotiations. (Cottrell

17   Preliminary Decl., ¶ 78-79). Plaintiff is represented by experienced and respected class-action

18   litigators who feel strongly that the proposed Settlement achieves an excellent result for the Class

19   Members. (*Id.* at ¶¶ 5–7, 80; ECF No. 81, p. 8). Accordingly, the fifth (extent of discovery completed)

20   and sixth (experience and views of counsel) *Hanlon* factors weigh in favor of final approval.[10]

21   **XVI.   THE PAGA ALLOCATION IS REASONABLE.**

22       Under the Settlement, Aggrieved Employees release certain PAGA claims between October

23   26, 2020 and June 1, 2023. (Settlement, ¶ 20(b); *see also* "Released PAGA Claims," *supra* Section

24   II.C). Courts have recognized that PAGA settlements must be viewed in light of the PAGA's public

25   _____

26   [10] The final *Hanlon* factor (reaction of the class members) also favors final approval, as no Class Members have objected to the Settlement, and no Class Members have opted out.

27

28   PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
     AND PAGA REPRESENTATIVE ACTION SETTLEMENT
     *Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1  purpose, which is augmenting the State's enforcement capabilities, encouraging compliance with

2  Labor Code provisions, and deterring noncompliance with California's labor laws. *See, e.g., Vargas*

3  *v. Cent. Freight Lines, Inc.*, No. 16-cv-00507-JLB, 2017 U.S. Dist. LEXIS 157976 (S.D. Cal. Sep. 25,

4  2017); *Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 U.S. Dist. LEXIS

5  137272, (N.D. Cal. Aug. 25, 2017); *Jordan v. NCI Grp., Inc*., No. EDCV 16-1701 JVS (SPx), 2018

6  U.S. Dist. LEXIS 25297, at *5 (C.D. Cal. Jan. 5, 2018) ("The Court will approve the PAGA settlement

7  upon a showing that the settlement terms are fundamentally fair, adequate, and reasonable in light of

8  PAGA's policies and purposes.").

9      Plaintiff performed an in-depth analysis of data provided by Defendants and the underlying

10  state-law provisions to develop Defendants' potential exposure. (Cottrell Preliminary Decl., ¶ 28–29.)

11  Based on records provided by Defendants at mediation, and based on representations made by counsel

12  at mediation, Plaintiff calculated 5,164 pay periods where PAGA violations could have occurred. (*Id*.

13  at ¶ 36.) Based on Plaintiff's testimony and data, Plaintiff calculated Defendants' total exposure for

14  PAGA claims is approximately $2,521,677.50. (*Id*. at ¶ 39). The Settlement here allocates $75,000 for

15  the release of PAGA claims. (*Id.* at ¶ 34). This recovery is fair and reasonable in light of the purposes

16  of the PAGA and authority finding similar PAGA settlements to warrant approval. *See Hartley v. On*

17  *My Own, Inc.*, 2020 U.S. Dist. LEXIS 154315, 2020 WL 5017608, *4 (E.D. Cal. Aug. 25, 2020)

18  (approving settlement at 3.47% of verdict value of PAGA penalty, resulting in average payment per

19  employee of $61); *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 972–74 (N.D.Cal.

20  2019) (citing cases reflecting approval of settlements at 0.2% to 1.1% of verdict value of PAGA

21  penalty); *Gilmore v. McMillan-Hendryx Inc*., No. 1:20-cv-00483-HBK, 2022 U.S. Dist. LEXIS 11032,

22  at *9 (E.D. Cal. Jan. 20, 2022) (recognizing the inherent risks and costs in any litigation matter and

23  approving a PAGA settlement that amounted to approximately 4.2% of the total exposure calculated

24  by plaintiff).

25      Here, the PAGA settlement amount assumes that Plaintiff prevails on liability and proves the

26  violations at the levels described above for every single Aggrieved Employee and every pay period.

27

28
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1    (Cottrell Preliminary Decl., ¶¶ 37–40). Plaintiff faces risks in proving his claims in this manner. (*Id.*

2    at ¶¶ 72–76). In light of these risks, $75,000.00 constitutes a material percentage of the total damage

3    exposure and is a reasonable overall settlement sum. (*Id.*).

4    **XVII.  THE BEST PRACTICABLE NOTICE WAS PROVIDED TO THE CLASS**

5        **MEMBERS IN ACCORDANCE WITH THE PROCEDURE APPROVED BY THE**

6        **COURT.**

7        Pursuant to the Court's October 9, 2023 preliminary approval order, Phoenix sent the Court-

8    approved Settlement Notice to the Class Members in accordance with the terms of the Settlement.

9    (Cottrell Final Decl., ¶ 7; Phoenix Decl. ¶¶ 3-7). The notices were sent via U.S. Mail and email, and

10   the Settlement Administrator re-mailed any Settlement Notices returned as non-deliverable but with

11   forwarding addresses, and re-mailed the Settlement Notice to any new address obtained by way of

12   skip-tracing. (Pheonix Decl., ¶ 6; Settlement Agreement, ¶ 22(f)).

13       Notice of a class action settlement is adequate where the notice is given in a "form and manner

14   that does not systematically leave an identifiable group without notice." *Mandujano v. Basic Vegetable*

15   *Products, Inc.*, 541 F.2d 832, 835 (9th Cir. 1976). The notice should be the best "practicable under the

16   circumstances including individual notice to all members who can be identified through reasonable

17   effort." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993). Sending individual

18   notices to settlement class members' last-known addresses constitutes the requisite effort. *Grunin v.*

19   *Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975); *Langford v. Devitt*, 127 F.R.D. 41, 45

20   (S.D.N.Y. 1989) ("[N]otice mailed by first class mail has been approved repeatedly as sufficient notice

21   of a proposed settlement.").

22       Phoenix followed all of the procedures set forth in the Court-approved notice plan. (*See* ECF

23   No. 81, p. 11). Reasonable steps have been taken to ensure that all Class Members received the

24   Settlement Notice. Ultimately, of the 538 notices distributed via U.S. Mail, zero notices (0%) were

25   undeliverable following skip-tracing and other techniques. (Phoenix Decl. ¶ 7; *supra* Section II.A).

26   Moreover, the dissemination of notice via email in addition to U.S. Mail increased the likelihood that

27

28

1  Class Members successfully received the notice. The Settlement Notices provided reasonable

2  estimates of Class Members' recovery. (Phoenix Decl., Ex. A). Accordingly, the notice process

3  satisfies the "best practicable notice" standard.

4  **XVIII. PLAINTIFF'S PROPOSED SERVICE AWARD IS REASONABLE AND**

5  **SHOULD BE APPROVED.**

6  Named plaintiffs in class-action litigation are eligible for reasonable service awards. *See*

7  *Staton*, 327 F.3d at 977.[11] Such awards "are intended to compensate class representatives for work

8  done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the

9  action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*

10  *v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citation omitted). Courts have broad

11  discretion to approve service awards for class representatives (*see In re Mego Fin. Corp. Sec. Litig.*,

12  213 F.3d 454, 463 (9th Cir. 2000)), which "are fairly typical in class action cases." Rodriguez, 563

13  F.3d at 958. In evaluating the appropriateness of service awards, courts may consider "relevant factors

14  includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which

15  the class has benefitted from those actions … the amount of time and effort the plaintiff expended in

16  pursuing the litigation … and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F. 3d at 977

17  (citation omitted).

18  Here, Plaintiff respectfully requests a service award of $10,000, a reasonable award intended

19  to compensate him for the critical role he played in this case, including responding to discovery, the

20  time and effort undertaken in helping secure the result obtained on behalf of the Class Members, and

21  the significant reputational risk Plaintiff took by publicly affiliating himself with litigation against his

22  employer. (Cottrell Final Decl., ¶ 10; Settlement Agreement, ¶ 2(aa); Declaration of Rito Lopez

23  ("Lopez Decl."), filed in support of Plaintiff's Motion for Preliminary Approval of Class Action and

24

---

25  [11] "Courts routinely approve incentive awards to compensate named plaintiffs for the services they
provided and the risks they incurred during the course of the class action litigation." *Van Vranken v.*

26  *Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work
in class action).

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

PAGA Representative Action Settlement (ECF No. 56-3), ¶¶ 5–12). Notwithstanding these risks, Plaintiff remained in the case and saw it through to its excellent outcome, while agreeing to a general release of claims. This substantial sacrifice supports the service award sought here. *See Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM (JCx), 2012 WL 10274679, at *18 (C.D. Cal. Nov. 13, 2012); *Millan v. Cascade Water Services, Inc.*, No. 1:12-cv-01821-AWI-EPG, 2016 WL 3077710, at *12 (E.D. Cal. June 2, 2016) (reasoning that service awards "are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their present or former employers.").

Furthermore, perseverance in pursuing litigation on behalf of the Class over the course of a lengthy period of time supports the approval of a reasonable service award. "When litigation has been protracted, an incentive award is especially appropriate." *In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 471 (C.D. Cal. 2014); *Trujillo v. City of Ontario*, No. EDCV 04-1015-VAP (SGLx), 2009 WL 2632723, at *1, 5 (C.D. Cal. Aug. 24, 2009). Here, the litigation has been pending for over two years. Plaintiff was prepared to persevere through further litigation and trial if the Settlement had not been reached. The "duration" factor weighs in favor of the requested service award.

In addition, in evaluating proposed service awards, courts compare the overall settlement benefits and the range of recovery available to the class members to the representative plaintiff's proposed service award.[12] Here, the $10,000 amount of the proposed service award is modest in comparison to the overall benefits of the Settlement and recovery to the Class, representing approximately 0.5% of the total funds that Defendants will expend to settle this lawsuit. (Cottrell Final Decl. ¶ 10). The modest amount of the requested service award in relation to the excellent settlement amount further supports the award. The service award should also be approved because the Settlement

---

[12] *See, e.g., Staton*, 327 F.3d at 976–77; *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). The purpose of the inquiry is to ensure that the service awards have not compromised the ability of the representative plaintiffs to act in the best interest of the class. *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1    Notices disseminated to the Class Members outlined the service award and no Class Members

2    objected. *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528-29 (C.D. Cal. 2004). Finally,

3    Defendants do not oppose the requested payment as a reasonable service award. (Settlement, ¶¶ 27,

4    30(b)(i)).

5        This Court and others in this district often approve amounts similar to that requested here. *See*

6    *Villafan*, 2021 U.S. Dist. LEXIS 249763 at *18 (Beeler, M.J.) (approving $10,000 service award);

7    *Soto v. O.C. Commc'ns, Inc.*, No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving

8    $15,000.00 and $10,000.00 service awards in recent hybrid FLSA/Rule 23 settlement); *Guilbaud v.*

9    *Sprint/United Mgmt. Co., Inc.*, No. 3:13-cv-04357-VC, Dkt. No. 181 (N.D. Cal. Apr. 15, 2016)

10   (approving $10,000.00 service payments for each class representative in FLSA and California state

11   law representative wage-and-hour action); *see also Van Liew v. North Star Emergency Servs., Inc.*,

12   No. RG17876878 (Alameda Co. Super. Ct., Dec. 11, 2018) (approving $15,000.00 and $10,000.00

13   service awards, respectively, to class representatives in California Labor Code wage-and-hour class

14   action).

15       Accordingly, Plaintiff's requested service award is reasonable and should be approved.

16   **XIX.   THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE AND**

17   **SHOULD BE APPROVED.**

18       In a certified class action, the Court may award reasonable attorneys' fees and costs that are

19   authorized by the parties' agreement." *Villafan*, 2021 U.S. Dist. LEXIS 249763, at * 20 (quoting Fed.

20   R. Civ. P. 23(h)). Here, pursuant to the Settlement, Class Counsel requests a Fee Award of 33 1/3%

21   of the Gross Settlement Amount of $1,700,000.00 (*i.e.*, $566,666.67) plus actual costs $14,013.85.

22   (Settlement, ¶¶ 2(e), (m), Cottrell Final Decl. ¶13). Defendants do not oppose the requested award.

23   (*Id.* at ¶ 27).

24       When, as here, "counsel recovers a common fund that confers a 'substantial benefit' on a class

25   of beneficiaries, counsel is 'entitled to recover their attorney's fees from the fund.'" *Villafan*, 2021

26   U.S. Dist. LEXIS 249763 at *21 (quoting *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997,

27

28

1006 (9th Cir. 2002)). In common-fund cases like the instant action, courts may calculate a fee award

under either the 'lodestar' or 'percentage of the fund' method. *Villafan*, 2021 U.S. Dist. LEXIS 249763

at *21 (quoting *Hanlon*, 150 F.3d at 1029). "If the court applies the percentage method, it then typically

calculates the lodestar as a cross-check to assess the reasonableness of the percentage award."[13]

*Villafan*, 2021 U.S. Dist. LEXIS 249763 at *22.

The Ninth Circuit considers the following factors in awarding a percentage of the common

fund as attorneys' fees: (1) the results achieved; (2) the risk of litigation; (3) the contingent nature of

the fee and the financial burden carried by the plaintiffs; and (4) awards made in similar cases. *See*

*Vizcaino v. Microsoft Corp.,* 290 F. 3d 1043, 1048–50 (9th Cir. 2002). All of these factors support the

requested award here.

### 1.    AWARDS IN SIMILAR CASES SUPPORT PLAINTIFF'S REQUESTED AWARD.

Federal and state courts in California (including this Court) routinely approve payments of

attorneys' fees amounting to one-third or more of the common fund in comparable wage-and-hour

class actions. *See, e.g., Villafan*, 2021 U.S. Dist. LEXIS 249763 at *20 (Beeler, M.J.) (approving

award of one-third of total settlement amount); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th

Cir. 2003) (affirming 33-percent fee award); *Soto*, No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct.

23, 2019) (approving attorneys' fees of one-third of the gross settlement in recent hybrid FLSA/Rule

23 settlement); *Regino Primitivo Gomez v. H&R Gunlund Ranches, Inc.*, 2011 WL 5884224 (E.D.

---

[13] When a district court exercises diversity jurisdiction over a case consisting of exclusively California claims, as here, California substantive law applies to the calculation of the attorney-fee award. *See Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478–79 (9th Cir. 1995) (finding state law to be applicable in "in determining not only the right to fees, but also the method of calculating the fees."); *see also Rodriguez v. Disner*, 688 F.3d 645, 653 n. 6 (9th Cir. 2012) ("If … we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees"). Here, Plaintiff's claims arise exclusively from California law. Accordingly, the Court should apply the method for calculating attorneys' fees as set forth by California jurisprudence. *See, e.g., Laffitte v. Robert Half Int'l, Inc.,* 1 Cal. 5th 480, 503–06 (2016) (percentage method with a lodestar crosscheck is appropriate in common-fund cases).

1    Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund); *Wren,* 2011 WL

2    1230826 (approving attorneys' fee award of just under 42% of common fund).

3         "Although 25% [of the common fund] is the benchmark for a reasonable fee award, in most

4    common fund cases, the award exceeds that benchmark." *Booher v. Jetblue Airways Corp.*, No. 4:15-

5    cv-01203-JSW, 2023 U.S. Dist. LEXIS 71342, at *3 (N.D. Cal. Mar. 24, 2023); *see also Pokorny v.*

6    *Quixtar, Inc.*, No.  C 07-0201 SC, 2013 U.S. Dist. LEXIS 100791, at *4 (N.D. Cal. Jul. 18, 2013)

7    ("The Ninth Circuit uses a 25% baseline in common fund class actions, and in most common fund

8    cases, the award exceeds that benchmark, with a 30% award the norm absent extraordinary

9    circumstances that suggest reasons to [adjust] the percentage.") (internal quotation marks omitted).

10   Plaintiff's requested award falls within the typical range of common-fund attorneys' fee awards in the

11   Ninth Circuit of 20% to 33 1/3% of the total settlement value. *See Vasquez v. Coast Valley Roofing*,

12   266 F.R.D. 482, 491–92 (E.D. Cal. 2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir.

13   2000)); *Hanlon*, 150 F.3d at 1029; *Staton*, 327 F.3d at 952.

14        Accordingly, the fourth *Vizcaino* factor supports the requested award.

15                    **2.    THE EXCELLENT RESULTS ACHIEVED, CONTINGENT**

16                          **NATURE OF THE FEE, AND BURDEN ON PLAINTIFF AND**

17                          **CLASS COUNSEL SUPPORT THE REQUESTED AWARD.**

18        Given the excellent result achieved in this case and the effort expended to achieve it, 33 1/3%

19   is warranted. Here, there was no guarantee of compensation or reimbursement. (Cottrell Preliminary

20   Decl., ¶ 86). Instead, counsel undertook all the risks of this litigation on a completely contingent-fee

21   basis. (*Id.*). Plaintiff's counsel incurred the risk of non-recovery after a substantial investment of time,

22   money, and resources, and have done so since the inception of the Action without any payment or

23   compensation. (*Id.*). Defendants' vigorous defense further confronted Class Counsel with the prospect

24   of recovering nothing or close to nothing for their commitment to and investment in the case. (*Id.*).

25   This is no small burden for any firm. (*Id.*).

26        Nevertheless, Plaintiff and Class counsel committed themselves to developing and pressing

27

28
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1   Plaintiff's claims to enforce the employees' rights and maximize the class recovery. (Cottrell

2   Preliminary Decl., ¶ 87). The challenges that Class Counsel had to confront and the risks they had to

3   fully absorb on behalf of the Class are precisely the reasons for multipliers in contingency-fee cases.

4   *See, e.g.*, *Noyes v. Kelly Servs., Inc.*, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008); Posner, Economic

5   Analysis of the Law, 534, 567 (4th ed. 1992) ("A contingent fee must be higher than a fee for the same

6   legal services paid as they are performed… because the risk of default (the loss of the case, which

7   cancels the debt of the client to the lawyer) is much higher than that of conventional loans").

8       Attorneys who litigate on a wholly or partially contingent basis expect to receive significantly

9   higher effective hourly rates in cases where compensation is contingent on success, particularly in

10  hard-fought cases where, like in the case at bar, the result is uncertain. (Cottrell Preliminary Decl.,

11  ¶ 88). In the legal marketplace, a lawyer who assumes a significant financial risk on behalf of a client

12  rightfully expects that his or her compensation will be significantly greater than if no risk was involved

13  (*i.e.,* if the client paid the bill monthly), and that the greater the risk, the greater the "enhancement."

14  (*Id.*). Adjusting court-awarded fees upward in contingent-fee cases to reflect the risk of recovering no

15  compensation whatsoever for hundreds of hours of labor simply makes those fee awards consistent

16  with the legal marketplace, and in so doing, helps to ensure that meritorious cases will be brought to

17  enforce important public interest policies and that clients who have meritorious claims will be better

18  able to obtain qualified counsel. (*Id.*).

19      Despite all of these risks, Plaintiff and Class Counsel achieved an excellent result for the Class

20  Members. As noted above, the Settlement provides for an average recovery of approximately

21  $1,898.36 per Settlement Class Member. (*See supra* Sections I, II). This average recovery is greater

22  than that achieved in *Villafan*, in which this Court awarded an attorneys' fee award of one-third of the

23  settlement fund based, in part, on the results obtained and the risks inherent in contingent

24  representation. *Villafan*, 2021 U.S. Dist. LEXIS 249763 at *24 (finding that "[a]n upward adjustment

25  of the benchmark is warranted in this case based on the results achieved [and] the contingent nature

26  of the representation"). The Court should reach the same conclusion here and find that the excellent

27

28
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1    results achieved and contingent nature of Class Counsel's representation support the requested fee

2    award.

3    **3.   THE REACTION OF THE CLASS SUPPORTS THE REQUESTED**

4    **AWARD.**

5    "It is established that the absence of a large number of objections to a proposed class action

6    settlement raises a strong presumption that the terms of a proposed class settlement action are

7    favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523,

8    528–29 (C.D. Cal. 2004). Thus, where no members of the class object to a proposed fee award that is

9    communicated in the notice, such absence of objections supports an increase in the benchmark rate.

10   *See Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 U.S. Dist. LEXIS 44852, at *17 (N.D. Cal.

11   Apr. 21, 2011) (Beeler, M.J.) (citing *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1048

12   (N.D. Cal. 2008)).

13   Here, Settlement Notices, which disclosed the potential fee award of $566,666.67, were sent

14   via regular mail, to 538 Class Members on November 29, 2023. (Cottrell Final Decl., ¶ 7; *see also*

15   Phoenix Decl., ¶ 5). The notice period ended on January 13, 2024. (Cottrell Final Decl., ¶ 7). Not one

16   Class Member has objected to the Settlement, and no Class Members have requested exclusion.

17   (Phoenix Decl., ¶¶ 8-9). The lack of objections by Class Members to the Settlement and the disclosed

18   fee award demonstrates the Class Members' approval of the result in this case and further bolsters

19   Class Counsel's reasonable request for fees.[14]

20   **4.   A LODESTAR CROSSCHECK (IF APPLIED) SUPPORTS THE**

21   **REQUESTED AWARD.**

22   Both federal and California courts have the discretion to employ (or decline to employ) a

23   "lodestar cross-check" on a request for a percentage of the fund fee award. However, as both the Ninth

24

25   [14] *See Cunha v. Hansen Nat. Corp.*, No. 08-1249-GW(JCx), 2015 WL 12697627, at *7 (C.D. Cal.
     Jan. 29, 2015) ("[N]ot a single class member has objected to the settlement and/or fee/expense

26   application. This dearth of opposition perhaps speaks most loudly in favor of approving the fee and
     expense requests.").

27

28   PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
     AND PAGA REPRESENTATIVE ACTION SETTLEMENT
     *Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1   Circuit in *Vizcaino* and the California Supreme Court in *Laffitte v. Robert Half Int'l, Inc.,* 1 Cal. 5th

2   480 (2016) have made clear, a cross-check is not required. *Vizcaino*, 290 F. 3d at 1050 & n.5 (noting

3   that while the "primary basis of the fee award remains the percentage method," lodestar "may" be

4   useful, but that it is "merely a cross check" and "it is widely recognized that the lodestar method

5   creates incentives for counsel to expend more hours than may be necessary on litigating a case");

6   *Laffitte*, 1 Cal. 5th at 505; *see also Lopez v. Youngblood*, No. cv-F-07-0474 DLB, 2011 WL 10483569,

7   at *14 (E.D. Cal. Sept. 2, 2011) ("A lodestar cross check is not required in this circuit, and in a case

8   such as this, is not a useful reference point."). While Plaintiff submits that a cross-check is not

9   necessary in this case, even if the Court were to employ one, the cross-check supports increasing the

10  benchmark rate here.

11      Class Counsel's accompanying declaration (Cottrell Final Decl.) provides a summary of the

12  lodestar, time and hourly rates, and descriptions of the nature of work performed. (Cottrell Final Decl.

13  ¶¶ 12-13, Ex. A). Class Counsel's rates have been found reasonable and consistent with the market by

14  this Court, as well as in numerous cases in this district. *See Villafan*, 2021 U.S. Dist. LEXIS 249763

15  at *23 (Beeler, M.J.) (finding SWCK's rates to be "normal and customary (and thus reasonable) for

16  lawyers of comparable experience doing similar work"); *Thieriot*, 2011 U.S. Dist. LEXIS 44852 at

17  *17 (Beeler, M.J.) (finding SWCK's rates reasonable and citing *Cherry, et al. v. The City College of*

18  *San Francisco*, Docket No. C 04-4981 WHA, ECF No. 673 (Apr. 13, 2006 order) (finding SWCK's

19  rates to be reasonable and consistent with the market)). Class Counsel has spent over 641.6 hours

20  litigating this case and the related PAGA case settled herewith, for a current lodestar of $463,669.50,

21  not including all the work remaining to bring the Settlement to a close, which Class Counsel estimates

22  will increase the current lodestar to approximately $490,000.00. (Cottrell Final Decl. ¶ 11). The

23  requested fee award represents a 1.22x multiplier of the current lodestar, and a 1.15x multiplier of the

24  estimated lodestar including all work remaining to bring the Settlement to a close. (*Id.*).

25      This multiplier falls well within the customary range for common fund cases like this one

26  where class counsel has taken the case on a contingency-fee arrangement. *See Villafan*, 2021 U.S.

1  Dist. LEXIS 249763 at *23 (Beeler, M.J.) (approving multiplier of 1.9 and finding that it fell "within
2  the range of multipliers that courts approve"); *Vizcaino*, 290 F.3d at 1051 & n.6 (affirming multiplier
3  of 3.65 in a common fund case, and noting that vast majority of common fund cases result in a
4  multiplier of between one and four); *Cifuentes v. Ceva Logistics U.S., Inc.*, No. 3:16-cv-01957-H-
5  DHB, 2017 U.S. Dist. LEXIS 176279, at *23 (S.D. Cal. Oct. 23, 2017) (approving one-third fee award
6  to SWCK representing a multiplier of 3 and citing *Thieriot*); *Thieriot*, 2011 U.S. Dist. LEXIS 44852
7  at *19 (Beeler, M.J.) (approving one-third fee award representing a 1.94 multiplier and citing
8  *Vizcaino*); *Bolton v. United States Nursing Corp.*, No. C 12-4466 LB, 2013 U.S. Dist. LEXIS 150299,
9  at *13 (N.D. Cal. Oct. 18, 2013) (approving fee award representing a 1.5 multiplier and citing
10 *Vizcaino*); *In re Infospace, Inc.*, 330 F. Supp. 2d 1203, 1212 (W.D. Wash. 2004) ("When applying the
11 lodestar method in common fund cases, a multiplier ranging from one to four is typically applied.");
12 *Spann v. J.C. Penney Corp.*, No. SACV120215FMOKESX, 2016 WL 5844606, at *14 (C.D. Cal.
13 Sept. 30, 2016) (applying a 3.07 multiplier to award $13,500,000.00 in attorneys' fees).

14        Accordingly, the lodestar crosscheck, if applied, further supports the requested fee award.

15        **XX.    CLASS COUNSEL'S REQUESTED COSTS SHOULD BE APPROVED.**

16        In addition to reasonable attorneys' fees, Class Counsel is entitled to the reimbursement of
17 their reasonable costs. *See* Fed. R. Civ. P. 23(h); *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th
18 Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to
19 paying clients in non-contingency matters.); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299
20 (N.D. Cal. 1995) (approving reasonable costs in class action settlement); *Cunha*, 2015 WL 12697627,
21 *5 ("[A] private plaintiff, or [its] attorney, whose efforts create, discover, increase or preserve a fund
22 to which others also have a claim is entitled to recover from the fund the costs of [its] litigation ….").

23        Here, Class Counsel's current costs total $14,013.85. (Cottrell Final Decl. ¶ 13). Class
24 Counsel's costs include reasonable out-of-pocket expenditures. The expenses incurred in this litigation
25 to date are described in the Cottrell Final Decl. (Cottrell Final Decl., ¶¶ 13, Ex. B). These expenses
26 are of the type typically billed by attorneys to paying clients in the marketplace and include such costs

27

28

1    as mediation fees, court costs, notice costs, copying and printing costs, travel expenses, and

2    computerized research. (*Id.*). These costs are routinely found to be reasonable and awarded

3    reimbursement by courts in the Ninth Circuit. *See, e.g., In re Immune Response Securities Litig.*, 497

4    F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (awarding reimbursement for expenses for meals, hotels, and

5    transportation; photocopies; telephone; filing fees; messenger and overnight delivery; online legal

6    research; and mediation fees, which it found to be "reasonable and necessary"); *Villafan*, 2021 U.S.

7    Dist. LEXIS 249763 at *24 (Beeler, M.J.).

8        All of the requested costs were reasonable and necessary for the successful prosecution of the

9    Action, and pursuant to the terms of the Settlement, Defendants do not object to Plaintiff's request for

10   costs. (Cottrell Final Decl. ¶ 13; Settlement, ¶¶ 27, 30(b)(i)). Further, no Class Member has objected

11   to the request for costs. (Cottrell Final Decl. ¶ 13). Class Counsel therefore requests reimbursement of

12   costs in the amount of $14,013.85.

13   **XXI.  CONCLUSION**

14       For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of

15   the Settlement, in accordance with the schedule set forth in the Proposed Order submitted herewith.

16

17   Date: February 1, 2024                    Respectfully submitted,

18                                             */s/ Andrew D. Weaver*
                                               Carolyn Hunt Cottrell
19                                             Caroline N. Cohen
                                               Andrew D. Weaver
20                                             SCHNEIDER WALLACE
                                               COTTRELL KONECKY LLP
21

22                                             *Attorneys for Plaintiff and the Putative Class*

23

24

25

26

27

28   PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
     AND PAGA REPRESENTATIVE ACTION SETTLEMENT
     *Rito Lopez v. TestAmerica Laboratories, Inc., et al., Case No. 3 :21-cv-08652-LB*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court, Central District of California, by using the Court's CM/ECF system on February 1, 2024. Service will be accomplished on all parties by the Court's CM/ECF system.

Dated: February 1, 2024

*/s/ Andrew D. Weaver*
Andrew D. Weaver